UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| DRYWALL ACOUSTIC LATHING AND INSULATION LOCAL 675 PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>MOLSON COORS BREWING COMPANY, et al.,<br><br>                Defendants. | Civil Action No. 1:05-cv-00294-KAJ<br><br>CLASS ACTION |

[Caption continued on following page.]

THE PLUMBERS NATIONAL PENSION FUND'S OPPOSITION TO THE MOLSON COORS INVESTORS GROUP'S MOTION FOR LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL

ROSENTHAL, MONHAIT, GROSS
  & GODDESS, P.A.
NORMAN M. MONHAIT (#1040)
CARMELLA P. KEENER (#2810)
Citizens Bank Center, Suite 1401
919 North Market Street
Wilmington, DE 19801
Telephone: 302/656-4433
302/658-7567 (fax)
ckeener@rmgglaw.com

[Proposed] Liaison Counsel

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
LAURA M. ANDRACCHIO
401 B Street, Suite 1600
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

**JULY 26, 2005**

| | |
|---|---|
| BRENT W. KLOS, Individually and On Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>   vs.<br><br>MOLSON COORS BREWING COMPANY, et al.,<br><br>                     Defendants. | Civil Action No. 1:05-cv-00317-KAJ<br><br><u>CLASS ACTION</u> |
| DAVID SILVER, Individually and On Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>   vs.<br><br>MOLSON COORS BREWING COMPANY, et al.,<br><br>                     Defendants. | Civil Action No. 1:05-cv-00324-KAJ<br><br><u>CLASS ACTION</u> |

The Plumbers National Pension Fund (the "Plumbers National Pension Fund"), respectfully submit this opposition to the competing motion for lead plaintiff filed by Metzler Investment GmbH, for account of its funds MI-FONDS 208 and MI-FONDS 705 ("Metzler"), and Drywall Acoustic Lathing and Insulation Local 675 Pension Fund ("Local 675") (collectively, the "Molson Coors Investors Group").

## I.  INTRODUCTION

Of the two competing movants, the Plumbers National Pension Fund is the most adequate plaintiff because they alone: (i) have the largest financial interest in this litigation; *and* (ii) meet the typicality and adequacy requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Moreover, the Plumbers National Pension Fund is preferred by the Private Securities Litigation Reform Act of 1995 ("PSLRA") because it is an institutional investor with the resources and sophistication to manage and supervise class counsel. *See* 15 U.S.C. §78u-4(a)(3)(B); H.R. Conf. Rep. No. 104-369 at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.

Although the Plumbers National Pension Fund recognize that Metzler and Local 675 claim a facially larger financial interest, they should not be appointed lead plaintiff because they cannot adequately represent the class in this action. To begin with Metzler, a German investment advisor, claims over $2 million of the group's total alleged loss of $2,753,798. However, Metzler has failed to timely establish that it has any financial interest in the relief sought in this case, or that it was authorized by the "Fonds" under applicable German law to seek lead plaintiff status. For this reason alone, Metzler cannot be appointed lead plaintiff in this action. *See, e.g., In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002) (investment advisors lack standing to claim their client's financial interest).

Metzler also appears to have failed to comply with the certification requirements set forth by the PSLRA, as it does not certify that it has disclosed *all* of the transactions it made in Molson securities during the Class Period, but rather creatively certifies only for account of "MI-FONDS 208 and MI-FONDS 705."[1] *See* 15 U.S.C. §78u-4(a)(2)(iv); Sianni Declaration at Ex. C. Metzler's failure to meet the PSLRA's most basic requirements is indicative of a lead plaintiff who is either incapable of and/or not sufficiently interested in actively directing a securities class action. *See, e.g., Ravens v. Iftikar*, 174 F.R.D. 651, 661 (N.D. Cal. 1997) (Congress enacted the PSLRA to eliminate mere "figureheads" with no actual control or desire to supervise the litigation).

Finally, Metzler does not meet the requirements of Rule 23 because as a foreign investment advisor it is subject to unique defenses that will be exploited by defendants to the detriment of the entire class should Metzler be appointed as lead plaintiff. Given that Metzler is a German entity, controlled by German law, defendants will argue at the class certification stage, that any judgment rendered by this Court against Metzler would not be res judicata. Given the fact that courts regularly refuse to certify classes when they are represented by foreign plaintiffs from countries that do not recognize "opt-out" class action judgments, defendant's argument would likely succeed. *See Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 995 (2d Cir. 1975); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 352 (D. Md. 2003).

Metzler's lawyers throw in Local 675, an American pension fund, as a member of the group in a desperate attempt to compensate for Metzler's defects. Local 675, however, does nothing to cure Metzler's deficiencies. In fact, the addition of Local 675 definitively

---

[1] "Class Period" refers to the period July 22, 2004 to April 27, 2005.

demonstrates that it is not Metzler or Local 675 that is overseeing this litigation, but rather their lawyers. Metzler's counsel has not offered a scintilla of evidence to suggest that Metzler and Local 675 were aware at the time their lawyers made the lead plaintiff application that they were seeking appointment as lead plaintiff jointly, which reveals the group is nothing more than a random assemblage of plaintiffs cobbled together by their lawyers. *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999) ("'To allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation.'") (citation omitted); *In re Donnkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) ("To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than the lawyers seek the lead plaintiff.").

Moreover, and just like Metzler, Local 675 is subject to unique defenses as defendants will argue that it is atypical because ***it did not purchase any of its Molson shares on the open market***, but instead received all of its shares of Molson in the merger pursuant to vote/exchange. *See* Declaration of Ralph N. Sianni in Support of the Motion of the Molson Coors Investors Group for Consolidation, Appointment as Lead Plaintiff and for Approval of Its Selection of Lead Counsel ("Sianni Decl."), Ex. C

At bottom, neither Metzler or Local 675 can properly serve as lead plaintiff – putting the two together in one group does nothing to change this fact. The Plumbers National Pension Fund, a single, domestic institutional investor that satisfies the requirements of Rule 23, should be appointed as lead plaintiff and its selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as lead counsel and Rosenthal, Monhait,

Gross & Goddess, P.A. ("Rosenthal Monhait") as liaison counsel for the class should be approved.

## II. ARGUMENT

### A. The Plumbers National Pension Fund Is "The Most Adequate Plaintiff"

The Plumbers National Pension Fund is the only movants that satisfies both components required of a lead plaintiff under the PSLRA: (1) the largest financial interest in the litigation; and (2) satisfaction of the adequacy and typicality requirements of Rule 23. As set forth in its moving papers, the Plumbers National Pension Fund suffered over $1 million of losses as a result of its purchases of over 57,000 shares of Molson common stock during the Class Period. *See* Declaration of Carmella P. Keener in Support of Motion of Plumbers & Pipefitters National Pension Fund for Consolidation, Appointment as Lead Plaintiff and Approval of its Selection of Lead and Liaison Counsel ("Keener Decl."), Ex. C.

The Plumbers National Pension Fund also satisfies both the typicality and adequacy requirement of Rule 23. The Plumbers National Pension Fund's claims are typical because they arise from defendants' fraudulent and artificial inflation of Molson's stock price during the Class Period – the same course of conduct and the same operative facts which damaged the entire class. The Plumbers National Pension Fund is adequate because it and it's chosen counsel are qualified and competent, and its interests are not antagonistic to those of the class. *See In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002) (finding that the submissions of Lerach Coughlin's lawyers "stand out in the breadth and depth of its research and insight").

The Plumbers National Pension Fund is also an institutional investor. The PSLRA prefers the appointment of institutional investors, like the Plumbers National Pension Fund, because it has the resources and sophistication to manage and supervise class counsel. *See*

- 4 -

15 U.S.C. §78u-4(a)(3)(B); H.R. Conf. Rep. No. 104-369 at 34 ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class action."). Moreover, the Plumbers National Pension Fund has substantial experience serving as a fiduciary and overseeing the efforts of counsel, having successfully recovered hundreds of millions of dollars for defrauded investors. The Plumbers National Pension Fund also has the resources and ability to actively oversee this litigation and assure the best possible result for the class. Accordingly, the Plumbers National Pension Fund is the most adequate plaintiff and should be appointed as lead plaintiff in this litigation.

### B. The Molson Coors Investors Group Should Not Be Appointed as Lead Plaintiff Because Metzler Does Not Have a Financial Interest in the Relief Sought in This Case

The issue of "financial interest in the relief sought" is the fundamental principle underlying the lead plaintiff provisions of the PSLRA. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). As Judge Whyte succinctly stated in *McKesson*, "[o]ne's 'interest' in a litigation is rather directly tied to what one might recover." *In re McKesson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997 (N.D. Cal. 1999) (citation omitted). Indeed, the Ninth Circuit's *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002), decision confirms that "the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of *their financial stake in the controversy*." See also 15 U.S.C. §78u-4(a)(3)(B)(iii).

Investment managers such as Metzler, however, have no financial stake in the litigation. *Network Assocs.*, 76 F. Supp. 2d at 1030 (denying investment advisor's motion). Therefore, even if this case were to yield a 100% recovery for plaintiffs, Metzler would receive *nothing*. See *McKesson*, 97 F. Supp. 2d at 997 (finding that financial interest is "directly tied" to potential recovery); *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d

627, 634-36 (D.N.J. 2002) (court reduced an investment advisor's claimed loss to the difference between its claimed interest and that which the advisor actually had suffered); *Turkcell*, 209 F.R.D. at 357-58 (limiting investment advisor's loss to the .35% fee it earned on the total assets it invested). To appoint a movant who lacks an actual financial interest in the relief sought would be contrary to one of the fundamental principles of the PSLRA, which is to appoint as lead plaintiff, those "class members with large amounts at stake." H.R. Conf. Rep. 104-369, at 34.

In *Suprema*, the district court addressed whether an investment advisor like Metzler, could be appointed as lead plaintiff on behalf of entities for whom it claimed to make investment decisions. 206 F. Supp. 2d at 634. The court found that, "[a]lthough on the surface it appear[ed]" that the investment advisor had suffered the greatest financial loss, ***the investment advisor was not entitled to lead plaintiff status because it did not suffer the loss it claimed*** and for instance, submit evidence that it received permission to prosecute the litigation on its clients' behalf. *Id.* at 633-34. Importantly, in denying the investment advisor's motion, the *Suprema* court reduced the claimed losses by $1,790,000 – from $2.1 million to $310,000 – representing the difference between its claimed financial interest based on its clients' losses, and those losses the advisor actually suffered. *Id.* at 636.

Here, like the investment advisor in *Suprema*, Metzler failed to timely provide any competent evidence that it is anything more than a figurehead plaintiff aggregating losses suffered not by itself, but by other legal entities with which it has some unsubstantiated relationship with under German law. No competent evidence was timely provided that would allow this Court to conclude with any level of comfort that: (i) Metzler suffered any loss of its own; or (ii) that the contours of the legal relationship between Metzler and MI-FONDS 208 and MI-FONDS 705 allow Metzler to assert a claim on their behalf and in a

accordance with German law. Absent this information, Metzler has failed to establish it has a financial interest and the authority to seek appointment as lead plaintiff in this case.

### C. The Molson Coors Investors Group Should Not Be Appointed Lead Plaintiff Because Metzler's Certification Does Not Comply with the Requirements Set Forth by the PSLRA

Courts are to strictly construe and apply the PSLRA's jurisdictional prerequisites, including its certification requirement. *See, e.g., Haung v. Acterna Corp.*, 220 F.R.D. 255, 258 (D. Md. 2004) (denying an unopposed lead plaintiff motion *sua sponte* because the movants "failed to satisfy the notice requirements of the PSLRA"); *Coopersmith v. Lehman Bros.*, 344 F. Supp. 2d 783, 789 (D. Mass. 2004). The PSLRA requires that a plaintiff seeking to serve as a representative party on behalf of a class provide a sworn certification which sets forth, among other things, "all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(iv). A review of the certification filed by Metzler, reveals that it failed to meet this requirement.

Metzler's certification only accounts for shares of Molson traded in MI-FONDS 208 and MI-FONDS 705, as opposed to identifying all of the transactions Metzler made in Molson shares during the Class Period. *See* Sianni Decl., Ex. C. It is quite likely that Metzler sold Molson Coors shares short or made millions of Euros in profits in other Fonds or accounts, requiring it to be rejected as lead plaintiff in this case. Regardless of the outcome of its other transactions in Molson Coors, Metzler has failed to certify that it has specifically identified each and every one of its transactions in Molson shares during the Class Period rendering its certification deficient on its face. *See* 15 U.S.C. §78u-4(a)(2)(iv).

The Court should not permit Metzler to correct these deficiencies because permitting Metzler to correct its certification now would render the statutory mandates of the PSLRA

irrelevant and would require additional time and effort, undermining Congress' directive that courts expedite the lead plaintiff process. *See In re Williams Sec. Litig.*, No. 02-CV-72-H(M), Order at 10 (N.D. Okla. July 8, 2002) (rejecting a movant whose original certification "failed to provide sufficient information for the Court to analyze the basis for its claimed financial interest") (Declaration of Carmella P. Keener, Esquire in Support of the Plumbers & Pipefitters National Pension Fund's Opposition to Motion of the Molson Coors Investors Group for Consolidation, Appointment as Lead Plaintiff and for Approval of Its Selection of Lead and Liaison Counsel ("Keener Opp. Decl."), Ex. A; *Enron*, 206 F.R.D. at 440 ("the statute evidences Congress' intent to expedite the [lead plaintiff] process"); *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 215 (D.D.C. 1999) ("Congress envisioned that courts still would play an independent, gatekeeping role to implement the PSLRA."). The fact is, by allowing Metzler to submit a certification that fails to comply with the basic requirements set forth by the PSLRA, both Metzler and Local 675 have already definitively demonstrated they cannot adequately monitor this litigation.

### D. The Molson Coors Investors Group Does Not Meet the Requirements of Rule 23 Because It Is Subject to Unique Defenses

#### 1. Defendants Will Argue that Any Judgment Achieved by Metzler in This Court Would Not Be Res Judicata

The appointment of Metzler would not only undermine the fundamental principles of the PSLRA -- that the lead plaintiff have the largest financial interest in the outcome of the case -- it would also subject the Molson Coors Investors Group – and more importantly the entire class – to unique defenses that will be exploited by defendants should the group be appointed as lead plaintiff.

Specifically, defendants will argue that any judgment achieved by Metzler, a German company, is not res judicata. *See In re DaimlerChrysler AG Sec. Litig.*, No. 00-993

- 8 -

Declaration of Rolf Sturner, at 1 (D. Del. Jan. 8, 2003) ("it is highly unlikely that a German court would recognize as binding against those German shareholders any judgment entered in a U.S. class action") (Keener Opp. Decl., Ex. B). Rule 17(a) states, in pertinent part that "[e]very action shall be prosecuted in the name of the real party in interest." "The function of Rule 17(a) 'is simply to ***protect the defendant against a subsequent action by the party actually entitled to recover***, and to insure generally that the judgment will have its proper effect as *res judicata*.'" *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 712 (9th Cir. 1992) (citation omitted). In other words, if the party bringing the suit is not the real party in interest, the actual real party in interest could later bring a separate suit. Since Metzler is not the real party in interest, the legal entities which actually suffered the loss could later bring another lawsuit against the same defendants, for the same wrongdoing, based on the same "losses" Metzler is claiming. Given the uncertainties in the intersection between German and U.S. law and the ambiguities related to the legal relationship of the "Fonds" and Metzler under German law, it would be inappropriate to appoint Metzler lead plaintiff in this action.

Moreover, courts regularly refuse to certify classes when they are represented by foreign plaintiffs from countries that do not recognize "opt-out" class action judgments. *Bersch*, 519 F.2d at 995; *Royal Ahold*, 219 F.R.D. at 352. In *Bersch*, a securities class action, the court refused to certify a class containing foreign plaintiffs because countries of plaintiffs' origins, ***including Germany***, "would not recognize a United States judgment in favor of the defendant as a bar to an action by their own citizens, even assuming that the citizens had in fact received notice that they would be bound unless they affirmatively opted out of the plaintiff class." 519 F.2d at 996.

Similarly, in *Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998), the court considered the res judicata effect of a class action judgment in a foreign plaintiff's home

country in denying class certification. The court reasoned that "[i]f the foreign court would refuse to recognize the preclusive effect of such an action, this fact, although not dispositive, counsels against a finding that the class action is superior to other forms of litigation." *Id.* at 116.

Recognizing the risk to all absent class members at the class certification stage of appointing a foreign investor as lead plaintiff, the court in *Royal Ahold* refused to appoint a foreign applicant as sole lead plaintiff. 219 F.R.D. at 352. Here, there is even less reason to subject the class to the risks of appointing Metzler given that the Plumbers National Pension Fund, a U.S. based pension fund which invested in Molson Coors on the U.S. securities market, is seeking to be appointed lead plaintiff and has none of the jurisdictional issues facing Metzler.

### E. Metzler Resides Too Far Away to Be an Effective Lead Plaintiff

Metzler is located in Germany, which is not even remotely close to this District. Metzler is so far away from the Court, that it will likely be prevented from making necessary appearances in this Action. This will impact Metzler's ability to serve as an adequate lead plaintiff. Courts recognize the potential difficulty of appointing foreign movants as the sole lead plaintiff. For example, in *Network Assocs.*, 76 F. Supp. 2d at 1029, Judge Whyte refused to appoint two European financial institutions, like Metzler, as lead plaintiff because of the practical problems a foreign investor faces when serving as lead plaintiff. The Court ultimately held:

> Finally, both ING and KBC are foreign organizations. They are distant. They were the only candidates not to attend the lead plaintiff hearing even though the Court requested all candidates to do so by order dated October 13, 1999. The distances involved and some differences in business culture would impede their ability to manage and to control American lawyers conducting litigation in California. At trial, the representative plaintiff would normally testify and attend. In a long trial, it would be

obviously difficult for ING and KBC to attend in its entirety. The Court certainly does not say that a foreign investor could never qualify. But these factors, when added to the others set forth above, reinforce the Court's conclusion that neither KBC nor ING can fairly and adequately represent the class.

*Id.* at 1030. The analysis in *Network Assocs.* applies equally here, where Metzler is not only a foreign plaintiff, but also an investment advisor with no real financial interest in the litigation.

## III. CONCLUSION

For the foregoing reasons and those discussed in its opening brief, the Plumbers National Pension Fund respectfully requests that the Court grant its motion for appointment as lead plaintiff and approve its selection of Lerach Coughlin as lead counsel and Rosenthal Monhait as liaison counsel for the class.

DATED: July 26, 2005                    Respectfully submitted,

                                        ROSENTHAL, MONHAIT, GROSS
                                          & GODDESS, P.A.


                                            /s/ CARMELLA P. KEENER
                                        _____
                                        NORMAN M. MONHAIT (#1040)
                                        CARMELLA P. KEENER (#2810)

                                        Citizens Bank Center, Suite 1401
                                        919 North Market Street
                                        Wilmington, DE  19801
                                        302/656-4433
                                        ckeener@rmgglaw.com

                                        [Proposed] Liaison Counsel

- 12 -

        LERACH COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
        WILLIAM S. LERACH
        DARREN J. ROBBINS
        LAURA M. ANDRACCHIO
        401 B Street, Suite 1600
        San Diego, CA 92101
        Telephone: 619/231-1058
        619/231-7423 (fax)

        LERACH COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
        ELISE J. COHEN
        9601 Wilshire Blvd., Suite 510
        Los Angeles, CA 90210
        Telephone: 310/859-3100
        310/278-2148 (fax)

        [Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Molson Coors\BRF00023043.doc

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on this 26th day of July, 2005, I electronically filed THE PLUMBERS & PIPEFITTERS NATIONAL PENSION FUND'S OPPOSITION TO MOTION OF THE MOLSON COORS INVESTORS GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following:

John D. Hendershot, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Seth D. Rigrodsky, Esquire
Ralph D. Sianni, Esquire
Brian D. Long, Esquire
Milberg Weiss Bershad & Schulman LLP
919 N. Market Street, Suite 441
Wilmington, DE 19801

Paul A. Fioravanti, Jr.
Prickett, Jones & Eliott, P.A.
1301 King Street, P.O. Box 1328
Wilmington, DE 19899

In addition, the undersigned counsel has caused copies of the foregoing documents to be electronically sent to the following:

Charles J. Piven, Esquire
Law Offices of Charles J. Piven, P.A.
The World Trade Center-Baltimore
401 E. Pratt Street, Suite 2525
Baltimore, MD 21202

Michael A. Swik, Esquire
Law Offices of Michael A. Swick, PLLC
One Williams Street, Suite 900
New York, NY 10004

Elise J. Cohen, Esquire
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
9601 Wilshire Blvd., Suite 510
Los Angeles, CA 90210

William S. Lerach, Esquire
Darren J. Robbins, Esquire
Robbins LLP
401 B Street, Suite 1600
San Diego, CA 92101

| | |
|---|---|
| Steven G. Schulman, Esquire<br>Peter E. Seidman, Esquire<br>Andrei V. Rado<br>Milberg Weiss Bershad & Schulman LLP<br>One Pennsylvania Plaza<br>New York, NY 10119 | Eric Belfi, Esquire<br>Murray, Frank & Sailer LLP<br>275 Madison Avenue, Suite 801<br>New York, NY 10016 |

Marc A. Topaz, Esquire
Richard A. Miniskas, Esquire
Tamara Skvirsky, Esquire
Schiffrin & Barroway, LLP
280 King of Prussia Road
Radnor, PA 19087

Stephen A. Weiss, Esquire
Eric T. Chaffin, Esquire
Seeger Weiss LLP
1 William Street
New York, NY 10014-2502


/s/ Carmella P. Keener
Carmella P. Keener (DSBA No. 2810)
Rosenthal, Monhait, Gross & Goddess, P.A.
919 N. Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
ckeener@rmgglaw.com