## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DRYWALL ACOUSTIC LATHING AND INSULATION LOCAL 675 PENSION FUND, Individually And On Behalf of All Others Similarly Situated, | : : : : |
| Plaintiff, | : : |
| vs. | : : : |
| MOLSON COORS BREWING COMPANY, PETER H. COORS, W. LEO KIELY, III, CHARLES M. HERINGTON, FRANKLIN W. HOBBS, RANDALL OLIPHANT, PAMELA PATSLEY, WAYNE SANDERS, ALBERT C. YATES, TIMOTHY V. WOLF, PETER SWINBURN, DAVID G. BARNES and PETER M.R. KENDALL, | : : : : : : : : : |
| Defendants. | : : |

Case No. 1:05-cv-0294 (KAJ)

[Caption continues on next page]

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE MOLSON COORS INVESTORS GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD COUNSEL

**MURRAY FRANK & SAILER LLP**
Eric J. Belfi
275 Madison Avenue
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**LAW OFFICES OF
MICHAEL A. SWICK PLLC**
Michael A. Swick
One William Street, Ste. 555
New York, NY 10004
Telephone: (212) 920-4310
Facsimile: (212) 584-0799

**Plaintiff's Counsel**

Dated: August 2, 2005

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
Seth D. Rigrodsky (#3147)
Ralph N. Sianni (#4151)
919 N. Market Street, Suite 411
Wilmington, Delaware 19801
Telephone: (302) 984-0597
Facsimile: (302) 984-0870
--and--
**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Andrei V. Rado
One Pennsylvania Plaza - 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**Proposed Lead Counsel**

BRENT W. KLOS, Individually And On Behalf of
All Others Similarly Situated,

                                 Plaintiff,

        vs.

MOLSON COORS BREWING COMPANY,
PETER H. COORS, W. LEO KIELY, III,
CHARLES M. HERINGTON, FRANKLIN W.
HOBBS, RANDALL OLIPHANT, PAMELA
PATSLEY, WAYNE SANDERS, ALBERT C.
YATES, TIMOTHY V. WOLF, PETER
SWINBURN, DAVID G. BARNES and PETER
M.R. KENDALL,

                             Defendants.

Case No. 1:05-cv-0317 (KAJ)

---

DAVID SILVER, Individually and On Behalf of
All Others Similarly Situated,

                                 Plaintiff,

        vs.

MOLSON COORS BREWING COMPANY,
PETER H. COORS, W. LEO KIELY III,
CHARLES M. HERINGTON, FRANKLIN W.
HOBBS, RANDALL OLIPHANT, PAMELA
PATSLEY, WAYNE SANDERS, ALBERT C.
YATES, TIMOTHY V. WOLF, PETER
SWINBURN, DAVID G. BARNES and PETER
M.R. KENDALL,

                             Defendants.

Case No. 1:05-cv-0324 (KAJ)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

INTRODUCTION .......................................................................................................... 1

POINT I. PLUMBERS & PIPEFITTERS MUST SUBMIT "PROOF" OF
INADEQUACY TO REBUT THE PRESUMPTION IN FAVOR OF THE MOLSON
COORS INVESTORS GROUP ....................................................................................... 4

POINT II. METZLER HAS DOCUMENTED ALL OF ITS RELEVANT
TRANSACTIONS ........................................................................................................... 5

POINT III. METZLER INVESTMENT HAS AUTHORITY TO SERVE AS A LEAD
PLAINTIFF ..................................................................................................................... 6

POINT IV. METZLER IS NOT SUBJECT TO UNIQUE DEFENSES AND CAN
MORE THAN ADEQUATELY REPRESENT
THE INTERESTS OF THE CLASS ............................................................................... 7

A.    The Res Judicata Issue, Even if It Were  Viable, is Not "Unique" to Metzler. ................... 9

B.    There is No Res Judicata Issue ............................................................................................. 11

C.    There Is No Res Judicata Issue Pursuant to Fed. R. Civ. P. 17 ............................................ 15

D.    Metzler Can More than Adequately Represent
       the Interests of Class Members ........................................................................................... 16

POINT V. LOCAL 675 IS NOT SUBJECT TO A UNIQUE DEFENSE ......................... 16

POINT VI. METZLER AND LOCAL 675 ARE AN IDEAL LEAD PLAINTIFF
GROUP ........................................................................................................................... 17

CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*A.F.I.K. Holding SPRL v. Fass,*
  216 F.R.D. 567 (D.N.J. 2003) ..................................................................................18

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.,*
  No. 04-0265, 2004 U.S. Dist. LEXIS 10200 (E.D. Pa. June 3, 2004) ........................18

*Ansari v. New York University,*
  179 F.R.D. 112 (S.D.N.Y. 1998) .............................................................................14

*Bersch v. Drexel Firestone, Inc.,*
  519 F.2d 974 (2d Cir. 1975) ....................................................................................14

*Blechner v. Daimler-Benz AG,*
  No. 04-CV-331 (JJF) (D. Del. Sept. 16, 2004) ............................................................8

*Blue Chip Stamps et al v Manor Drug Stores,*
  421 U.S. 723, 44 L. Ed. 2d 539, 95 S. Ct. 1917 (1975) ............................................15

*In re Cable & Wireless, PLC, Sec. Litig.,*
  217 F.R.D. 372 (E.D. Va. 2003) ............................................................................8, 9

*Casden v. HPL Techs., Inc.,*
  No. C-02-3510, 2003 U.S. Dist. LEXIS 19606 (N.D. Cal. Sept. 29, 2003) ................15

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) .......................................................................4, 5, 6, 18

*In re China Life Insurance Co. Ltd. Sec. Litig.,*
  No. 04-CV-2112 (S.D.N.Y. Sept. 14, 2004) ...............................................................8

*In re Corinthian Colleges, Inc. S'holder Litig.,*
  No. CV-04-5025 R(CWx) (C.D. Cal. Nov. 1, 2004) .....................................................1

*Cromer Finance Ltd. v. Berger,*
  205 F.R.D. 113 (S.D.N.Y. 2001) .............................................................................14

*In re DJ Orthopedics, Inc.,*
  No. 01-CV-2238, 2003 U.S. Dist. LEXIS 21534 (S.D. Cal. Nov. 16, 2003) ................9

*In re DaimlerChryslerAG Sec. Litig.,*
  No. 00-993 (D. Del. Jan. 8, 2003) ............................................................................13

*EZRA Charitable Trust v. Rent-Way, Inc.,*
  136 F. Supp. 2d 435 (W.D. Pa. 2001) ........................................................................7

*Gluck v. CellStar Corp.*,
　　976 F. Supp. 542 (N.D. Tex. 1997) ...................................................................5

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
　　No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004) ....7, 8, 16

*Landry v. Price Waterhouse Chartered Accountants*,
　　123 F.R.D. 474 (S.D.N.Y. 1989) ...................................................................10

*Lehocky v. Tidel Techs., Inc.*,
　　220 F.R.D. 491 (S.D. Tex. 2004)...................................................................9

*Lemanik v McKinley Allsopp, Inc*,
　　125 F.R.D. 602 (SDNY 1989) ...................................................................15

*In re Levi Strauss & Co., Sec. Litig.*,
　　No. C-03-05605-RMW (N.D. Cal. Mar. 29, 2004) ........................................1

*In re Lloyd's Am. Trust Fund Litig.*,
　　No. 96 Civ. 1262, 1998 U.S. Dist. LEXIS 1199 (S.D.N.Y. Feb. 4, 1998) ...........11, 12

*In re McKesson HBOC, Inc. Sec. Litig.*,
　　126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................17

*In re Merck & Co., Inc. Sec. Litig.*,
　　Civ. Action No. 02-3185 (MLC) (D.N.J. Nov. 27, 2002) ............................................8

*Monetary Management Group of St Louis, Inc v Kidder Peabody & Co*,
　　604 F. Supp. 764 (ED Mo 1985).................................................................15

*In re Network Associates Sec. Litig.*,
　　76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...................................................7, 17

*In re Nortel Networks Corp. Sec. Litig.*,
　　No. 01 Civ. 1855 2003 U.S. Dist. LEXIS 15702 (S.D.N.Y. Sept. 5, 2003) .............8, 9

*In re Nvidia Corp. Sec. Litig.*,
　　No. C-02-0853-CW (N.D. Cal. June 11, 2002) ............................................1

*Odette v Shearson, Hammill & Co*,
　　394 F. Supp. 946 (SDNY 1975)....................................................................15

*In re Olsten Corp. Sec. Litig.*,
　　3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...........................................................5

*In re Rent-Way Sec. Litig.*,
　　218 F.R.D. 101 (W.D. Pa. 2003) ...............................................................7

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003)............................................................14

*Smith v. Suprema Specialities, Inc.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ......................................................7

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ...........................................2, 8, 10

*In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*,
   209 F.R.D. 353 (S.D.N.Y. 2002) ..........................................................7

*In re U.S. Finance Sec. Litig.*,
   69 F.R.D. 24 (S.D. Cal. 1975) .......................................................12, 13

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
   216 F.R.D. 248 (S.D.N.Y. 2003) ..........................................................6

## STATUTES

15 U.S.C. § 78u-4(a)(3)(II) ...................................................................5, 11

Fed. R. Civ. P. 17 ...................................................................................15

Fed. R. Civ. P. 23 ...................................................................................14

Fed. R. Civ. P. 23(b)(3)......................................................................11, 12

Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C.
   § 78u-4 *et seq* ....................................................................................1

## PRELIMINARY STATEMENT

Class members Metzler Investment GmbH ("Metzler"), for account of its funds MI-FONDS 208 and MI-FONDS 705, and Drywall Acoustic Lathing and Insulation Local 675 Pension Fund ("Local 675") (collectively, with Metzler, the "Molson Coors Investors Group") respectfully submit this Reply Memorandum of Law in further support of their motion for: (1) consolidation of the above-captioned actions; (2) appointment as Lead Plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4 *et seq.*; and (3) approval of their selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") as Lead Counsel, pursuant to the PSLRA, and in opposition to the lead plaintiff/lead counsel motion of Plumbers & Pipefitters National Pension Fund ("Plumbers & Pipefitters").

## INTRODUCTION

The Molson Coors Investors Group's financial interest in this litigation is nearly three times that of the Plumbers & Pipefitters. The Plumbers & Pipefitters do not dispute this fact. Instead, they raise several arguments against Metzler's fitness to serve as a lead plaintiff, all of which are premised on Metzler's status as a foreign (German) institution. At the outset, we note that ***Metzler has been found to be adequate and has been appointed as lead, or co-lead, plaintiff in four securities class actions, and has never been rejected on adequacy grounds***, even in the face of arguments that are identical to the ones raised against it here. *See In re Levi Strauss & Co., Sec. Litig.*, No. C-03-05605-RMW (N.D. Cal. Mar. 29, 2004) (Order attached as Exhibit A); *In re Nvidia Corp. Sec. Litig.*, No. C-02-0853-CW (N.D. Cal. June 11, 2002) (Order attached as Exhibit B); *In re Corinthian Colleges, Inc. S'holder Litig.*, No. CV-04-5025 R(CWx) (C.D. Cal. Nov. 1, 2004) (Order attached as Exhibit C); *South Ferry LP #2 v. Killinger*, Master File No. CV04-1599C (W.D. Wash. Nov. 30, 2004) (Order attached as Exhibit D). There is no

reason why this Court's decision should be different than that of the other courts that have

considered Metzler's motion and found it to be adequate and typical.[1]

Plumbers & Pipefitters erroneously argues that Metzler is inadequate because: (i) it is an

asset manager that lacks a financial interest in this matter and represents other funds who have

not authorized it to pursue this motion on their behalf; (ii) that it failed to disclose all of its

transactions in the relevant securities because only two funds are identified as having transacted

in Molson securities; (iii) that it is subject to a unique defense because an order of this Court

would purportedly not have a *res judicata* effect in Germany, where Metzler is based; and (iv)

that it is too far away to make an effective lead plaintiff. These arguments lack merit and have

been rejected by other courts under similar circumstances because: (i) Metzler has attorney-in-

fact authority to represent the funds under its management in litigation; (ii) it has disclosed all of

the transactions in Molson securities undertaken by any of its funds; (iii) since Metzler is a party

here, any judgment in this Court would bind it in Germany. [2] Moreover, the issue of whether a

proposed lead plaintiff should be selected based on the preclusive effect of a hypothetical

judgment in any forum country where a class member may reside is not only irrelevant, but

would be an issue, if at all, even if an American were seeking appointment over a worldwide

class; (iv) even assuming, *arguendo*, that a judgment here will not have *res judicata* effect in

Germany, which Plumbers & Pipefitters has not established, this is not a "unique" defense,

because the class definition of each of the above-captioned actions includes foreign purchasers of

---

[1]  Where Metzler's motion was not granted, it was because it lacked the largest financial interest. As conceded by Plumbers & Pipefitters, Metzler and Local 675 have the largest financial interest here: "the [Plumbers & Pipefitters] recognize that Metzler and Local 675 claim a facially larger financial interest." Plumbers & Pipefitters Opp. Mem. at 1.

[2] *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) ("Concerns respecting the *res judicata* impact, are *not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court*.").

Molson securities. If there truly were a *res judicata* issue, which there is not, it would be a class-wide issue; (v) moreover, there is no *res judicata* issue because defendant Molson is a Delaware incorporated, Colorado-based company whose stock trades on the New York Stock Exchange, where it was purchased by Metzler. Because Molson has no connection with Germany, the likelihood that Molson would need to assert the *res judicata* effect of a judgment from this Court in Germany, is extremely remote.  Moreover, because Molson has no corporate presence in Germany, it is unlikely that *in personam* jurisdiction could be asserted in Germany against Molson and its officers and directors (who are not German citizens); (vi) Plumbers & Pipefitters' cited authority is inapplicable because those cases involved foreign institutions that purchased the stock of foreign companies on foreign exchanges. The real issue in those cases was subject matter jurisdiction, which is not at issue here; and (vii) the argument that  Metzler Investment is "too far"away lacks merit. Foreign investors are routinely appointed as lead plaintiffs. Metzler is a $20 billion institution with worldwide operations that can more than adequately perform its duties as a lead plaintiff in this litigation.[3]

Plumbers & Pipefitters also attacks Local 675, arguing that it is subject to a unique defense because it received Molson shares in the Coors-Molson merger rather than on the open market. This is a frivolous argument. The actions expressly allege claims, *inter alia*, on behalf of "former shareholders of Molson Inc. ("Molson") who received shares of Molson Coors Brewing Company ("Molson Coors" or the "Company") as a result of the February 9, 2005 merger of Molson by and into the Adolph Coors Company ("Coors")." *Drywall Acoustic Lathing and Insulation Local 675 Pension Fund v. Molson Coors Brewing Co.,* No. 05-CV-294 (D. Del. filed May 13, 2005) at ¶ 1. The argument that Local 675 is atypical calls into question Plumbers &

---

[3] The erroneous factual contentions raised by Plumbers & Pipefitters are addressed in a declaration submitted by Metzler herewith ("Metzler Decl.").  The Metzler Declaration is attached to this brief.

Pipefitters' understanding of this action. This argument appears in the introduction to Plumbers & Pipefitters' opposition brief, but is not discussed in the body of its brief and should be summarily rejected.

The introduction, but not the body, of Plumbers & Pipefitters' opposition brief also appears to make the argument that Local 675 and Metzler are not an appropriate group. This is a baseless argument. While some decisions have rejected aggregations of many small investors -- mainly in cases from the early days following the passage of the PSLRA in 1995 -- there is no authority for the rejection of two institutional investors, each with substantial losses, moving jointly, on the ground that they do not form a proper group. In any event, Metzler's financial interest of *$2,055,240* is, on its own, more than double that of Plumbers & Pipefitters' interest of *$1,000,818*.

Plumbers & Pipefitters' baseless arguments and rhetoric cannot detract from the unassailable facts on the record: the Molson Coors Investors Group is comprised of two institutional investors whose financial interest of $2,753,798 is almost three times greater than that of Plumbers & Pipefitters and that are unquestionably adequate and typical and should be appointed as lead plaintiffs pursuant to the PSLRA and *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). Plumbers & Pipefitters' attempts to complicate what is, based on this record, a very straightforward application of unambiguous statutory language and Third Circuit precedent should be rejected.

## POINT I.

### PLUMBERS & PIPEFITTERS MUST SUBMIT "PROOF" OF INADEQUACY TO REBUT THE PRESUMPTION IN FAVOR OF THE MOLSON COORS INVESTORS GROUP

As the Third Circuit has held, pursuant to the PSLRA, once the court has identified the movant with the largest financial interest that has made a *prima facie* showing of adequacy and

typicality, the presumption that such movant should be appointed lead plaintiff "may be rebutted **only upon proof** by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) *quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). (emphasis added). Thus, class members assailing the adequacy of a competing lead plaintiff movant must do so with proof, not speculation. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) ("speculative and hypothetical" attacks against a lead plaintiff movants' application are insufficient to rebut the presumption); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 547 (N.D. Tex. 1997) ("speculative assertions are insufficient" to demonstrate a movant's inadequacy). As detailed below, each of the Plumbers & Pipefitters' contentions are either legally insufficient or speculative, falling short of the required "proof." *Id.*

## POINT II.

## METZLER HAS DOCUMENTED ALL OF ITS RELEVANT TRANSACTIONS

Metzler's transactions are set forth in its certification, attached with the opening papers. *See* Exhibit C to the Declaration of Ralph Sianni. For convenience, we attach that certification hereto as Exhibit E. Plumbers & Pipefitters argues that not all of the transactions are detailed because Metzler's certification "only" accounts for trades in the MI-FONDS 208 and MI-FONDS 705. This argument is illogical and is in fact wrong. Only those two funds are identified because they are the Metzler funds that transacted in Molson securities. *See* Metzler Decl.¶ 3. Plumbers & Pipefitters also states that "it is quite likely that Metzler sold Molson Coors shares short or made millions of Euros in profits on other Fonds or accounts." Plumbers & Pipefitters Opp. Mem. at 7. This statement lacks any evidentiary support whatsoever and simply untrue. *See*

Metzler Decl.¶ 3.  Paragraph 8 of Metzler's certification states unequivocally that, "Since the beginning of the Class Period, Metzler has made the transactions in Molson Coors Brewing Company listed in Schedule A attached hereto…" Exhibit E. Metzler's certification fully complies with the PSLRA.[4]

## POINT III.

## METZLER INVESTMENT HAS
## AUTHORITY TO SERVE AS A LEAD PLAINTIFF

Metzler Investment manages over $20 billion for a number of funds and "has full and complete authority and discretion to purchase and sell securities for each of the Funds, and to institute legal action on their behalf, including serving as lead plaintiff in this action." Metzler Decl. ¶ 4. The signatories of Metzler's original PSLRA certification are "fully authorized to represent the Funds in all legal actions that arise from their investments, including serving as lead plaintiff in this action." *Id.* at ¶ 5.  Metzler also has in-house counsel and other professional advisors to assist its management in overseeing and directing its choice of lead counsel. *Id.* at ¶¶ 6-7. Accordingly, Metzler is exactly the type of substantial institutional investor, with institutional resources and a large financial loss, that Congress had in mind in creating the Lead Plaintiff position under the PSLRA.  *See In re Cendant Corp. Litig.*, 264 F.3d at 274.

Courts uniformly appoint investment managers or advisors who demonstrate the requisite authority as lead plaintiffs. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 255 (S.D.N.Y. 2003) ("[W]hen the investment advisor is also the attorney-in-fact for its clients,

---

[4] By contrast, as discussed in the Molson Coors Investors Group's opposition, Plumbers & Pipefitters' certification contains an illegible signature that is not accompanied by any identification and does not state the signatorie's position at the fund from which his/her authority could be adduced. According to Plumbers & Pipefitters, the court should not allow a movant to correct a defective certification because it "would render the statutory mandates of the PSLRA irrelevant and would require additional time and effort…" Plumbers & Pipefitters Opp. Mem. at 7-8.

with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name."); *EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 442 (W.D. Pa. 2001) (advisor demonstrated authority by submitting a declaration establishing "attorney-in-fact authority"); *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 106-09 (W.D. Pa. 2003) (same); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043, at *24-25 (N.D. Ohio May 12, 2004) (same).[5] Metzler has demonstrated the requisite authority. *See* Metzler Decl. ¶¶ 4-5.

The decisions relied on by Plumbers & Pipefitters are distinguishable because the investment managers or advisors in those cases did not evidence the requisite authority. *See Smith v. Suprema Specialities, Inc.*, 206 F. Supp. 2d 627, 634-35 (D.N.J. 2002) (advisor's motion denied because "it has not submitted any evidence that it received permission to move on its clients' behalf."); *In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353, 357-58 (S.D.N.Y. 2002) (same). *See* Metzler Decl. ¶¶ 4-5.

While in *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1030 (N.D. Cal. 1999), relied on by Plumbers & Pipefitters, the court denied the motion of an investment advisor, it was not because of its status as such. Rather, the advisor's motion was denied because it "had access to information not generally known to the investing public." *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017 at 1029. That holding has no application here.

## POINT IV.

## METZLER IS NOT SUBJECT TO UNIQUE DEFENSES AND CAN MORE THAN ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS

Plumbers & Pipefitters' arguments regarding Metzler's inadequacy stem from Metzler's status as a foreign institution. However, there is no obstacle to appointing foreign institutions as

---

[5] Indeed, as already discussed, Metzler itself has previously been appointed as lead plaintiff. *See* Exhibits A-D.

lead plaintiffs in securities class actions and no rule against certification of classes that include foreign members. *See Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) ("It is evident there is no per se rule against the certification of a class whose members are both foreign and American investors. Nor is there a prohibition against having a mix of foreign and American investors serve as class representatives."). Foreign investors are routinely appointed as lead plaintiffs and/or class representatives. *See, e.g., Blechner v. Daimler-Benz AG*, No. 04-CV-331 (JJF) (D. Del. Sept. 16, 2004) (Order attached as Exhibit F) (Judge Farnan appointed two Austrian institutions as lead plaintiff); *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855, 2003 U.S. Dist. LEXIS 15702, at *12-13 (S.D.N.Y. Sept. 5, 2003) (Canadian institution appointed class representative); *In re Goodyear Tire & Rubber Co. Secs. Litig.*, 2004 U.S. Dist. LEXIS 27043, at *24-25 (Austrian asset manager appointed lead plaintiff: "[t]he . . . attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm . . . is insupportable."); *In re China Life Ins. Co. Ltd. Sec. Litig.*, No. 04-CV-2112 (S.D.N.Y. Sept. 14, 2004) (Order attached as Exhibit G) (Chinese citizens appointed as lead plaintiffs); *In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571 (S.D.N.Y. Nov. 1, 2002) (Order attached as Exhibit H) (appointing, among others, two French institutions as lead plaintiffs); *In re Merck & Co., Inc. Sec. Litig.*, Civ. Action No. 02-3185 (MLC) (D.N.J. Nov. 27, 2002) (Order attached as Exhibit I) (German institution appointed lead plaintiff). As already noted, Metzler itself has been appointed a lead plaintiff in four securities class actions. *See* Exhibits A-D.  Plumbers & Pipefitters' specific contentions are addressed below.[6]

---

[6] Even in cases where a foreign movant was potentially subject to a unique defense, courts have resolved it by appointing a domestic movant together with the foreign movant. *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 378 (E.D. Va. 2003) (appointing a domestic institution as lead plaintiff together with a foreign movant after declining to appoint the foreign movant as sole lead plaintiff because it purchased the stock of a foreign company on a foreign exchange and may have been subject to unique jurisdictional defenses). Here, the combination of Metzler and Local 675 (a domestic union pension fund) similarly obviates any

### A.    The Res Judicata Issue, Even if It Were Viable, is Not "Unique" to Metzler.

A "unique" defense is one that applies only to the proposed representative and threatens to sidetrack the litigation with issues inapplicable to the class in general. *See In re DJ Orthopedics, Inc.*, No. 01-CV-2238, 2003 U.S. Dist. LEXIS 21534, at *15-17 (S.D. Cal. Nov. 16, 2003). Metzler's status as a foreign entity does not subject it to a unique defense because foreign purchasers are part of the putative class. Each of the complaints in the above-captioned actions include foreign purchasers. Whether or not there is a *res judicata* issue that may hamper class certification does not hinge on whether the lead plaintiff or class representative is domestic or foreign. If defendants were to raise the *res judicata* issue at all, and, as discussed below it is an issue that has been rejected by the vast majority of courts, the argument would be that the class should not be certified because of the international reach of the class, not because of the proposed representative's citizenship. *See, e.g., In re Nortel Networks Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 15702, at * 20-21. Whatever the likelihood of the issue arising at all, it will not be made less likely to arise if Plumbers & Pipefitters were appointed lead plaintiff instead of Metzler and Local 675. Thus, the purported defense is not "unique" to Metzler and cannot be a reason to deny its application. *See In re DJ Orthopedics, Inc.*, 2003 U.S. Dist. LEXIS 21534, at *15-16 ("[D]efendants do not articulate what 'unique' defenses might apply to plaintiff LSERS that would not apply to other subclass members . . . there is nothing to indicate that LSERS's purchase of stock after the price fell distinguishes it from other Putative-Knowledge Subclass members who, by definition, also had information about DJO's decline in sales before making their purchases."); *Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502 (S.D. Tex. 2004) (holding

---

potential issue that could arise from Metzler's status as a German institution. Of course, unlike the foreign institution in *Cable & Wireless*, Metzler purchased the stock of an American company on an American exchange.

that a defense that can be made against other class members is not unique: "[T]he Court believes the defense of lack of reliance upon Defendants' disclosures can be made against all class members. Stauffer and Keeler are not unique in this regard.").

Not only is the *res judicata* issue not unique to Metzler, if it applies at all, the *res judicata* issue can only affect ***absent*** class members -- undoubtedly, a class member would be bound by the judgment of a U.S. court in an action that it spearheaded as a lead plaintiff and/or class representative:

> Concerns respecting the ***res judicata*** impact of any judgment in favor of defendants, which have been the focus of decisional discussion of the difficulties inherent in certifying transnational classes, are ***not an issue with respect to the selection of Lead Plaintiffs, since those persons will clearly be bound by the judgment of the court***.

*Takeda* 67 F. Supp. at 1139 (emphasis added).

Because Plumbers & Pipefitters seeks to represent the putative class, which includes foreign purchasers, its attacks against foreign purchasers evidences a willingness to abandon the interests of other class members to suit its goals on this motion. If Plumbers & Pipefitters truly believes that the *res judicata* issue is a serious one (the Molson Coors Investors Group does not) it is likely to abandon foreign purchasers and cannot adequately represent the putative class as presently constituted. As discussed below, there is no *res judicata* issue.[7]

---

[7] Moreover, the concern about a unique defense is that it will consume the proposed class representative and distract it from litigating on behalf of the class as a whole. *See Landry v. Price Waterhouse Chartered Accountant*s, 123 F.R.D. 474, 476 (S.D.N.Y. 1989) ("Each of these plaintiffs would be required to devote considerable time to rebut the claim that their purchases were based not on the integrity of the market, but on non-public information that they received . . . . Clearly, this situation would prejudice absent class members.") By contrast, the argument that a judgment in this action may not be given preclusive effect in a subsequent foreign proceeding is, by definition, an issue that could only arise, if at all, after a judgment in this action is rendered. Thus, the issue could not possibly distract the lead plaintiff/class representative it this litigation.

**B.**    <u>There is No Res Judicata Issue</u>

Plumbers & Pipefitters has not established that a *res judicata* effect will not be given to this Court's judgment in Germany. Molson is a Delaware incorporated domestic brewer headquartered in Golden, Colorado. Molson shares trade over the New York Stock Exchange. Molson does not have significant assets and operations in Germany and its stock does not trade on a German exchange. This Court plainly has subject matter jurisdiction over these claims, and Plumbers & Pipefitters does not argue otherwise. However, given the absence of contacts in Germany, it is highly questionable whether a German court would have subject matter jurisdiction over a parallel case filed there or in personal jurisdiction over the Molson defendants.[8]  It is also exceedingly unlikely that a German citizen would re-litigate the United States securities law claims against Molson in a German court, even if there was no jurisdictional problems.  If a judgment was won in a German court, the winner would need to enforce the judgment in the United States, where where this Court's judgment would be given appropriate *res judicata* effect.

Even in cases where the issue was theoretically tenable -- because the defendant company at issue was foreign and the securities traded on a foreign exchange -- the vast majority of courts have held that it will not impede class certification. The issue is whether Fed. R. Civ. P. 23(b)(3)'s requirement that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy" is defeated where "the class members would not be barred from relitigating their claims in foreign countries." *In re Lloyd's Am. Trust Fund Litig.,*

---

[8] Because Plumbers & Pipefitters argues that Metzler is inadequate it bears the burden of presenting "proof" that a German court would have jurisdiction over an action brought in Germany parallel to this action and establishing the foundation for a *res judicata* defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  It has not presented any <u>evidence</u> on either of these issues.

No. 96 Civ. 1262, 1998 U.S. Dist. LEXIS 1199, at *42 (S.D.N.Y. Feb. 4, 1998).[9] As discussed

below, the vast majority of courts have answered the question in the negative.  The same result

should apply here, especially because there is no articulated theory of how United States

securities law claims could be litigated in Germany or why anyone would even try.

     In *In re Lloyd's Am. Trust Fund Litig.*, the court held that any potential *res judicata* issue

can easily be resolved by the fashioning of "a proof-of-claim mechanism which would bind any

participating class member and thereby discourage relitigation in the hope of a more favorable

settlement." 1998 U.S. Dist. LEXIS 1199, at *44-45. In that case, not a securities case, a class

was certified even though, "up to ***two thirds*** of the plaintiff class would not be bound by a

judgment in [defendant's] favor." *Id.* at *42 (emphasis added). Although we do not know the

exact makeup of the class at issue at this pre-discovery phase of the litigation, it is likely that the

majority of class members in this action are American.

     In *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24 (S.D. Cal. 1975), the court rejected the *res*

*judicata*/superiority argument as a bar against class certification because any judgment in the

United States would at least be given weight in a subsequent proceeding and because it was

exceedingly unlikely that a successful lawsuit could be prosecuted abroad:

> Of even more significance than the enormous cost of such translations is the fact
> that "discovery," as it exists in the United States, is unknown abroad. . .
> Successful prosecution of this complex action, without discovery, would be
> impossible.
>
> Moreover, in the event later actions are instituted against Touche, the defenses of
> *res judicata* or collateral estoppel may be valid to the extent that the issues in the
> subsequent actions are common to those adjudicated in this action. In addition,
> assuming arguendo that a judgment of this or any other American court in
> defendant's favor technically might not be *res judicata* against a debenture holder

---

[9] The nature of the *res judicata*/class certification issue itself -- whether a class action is superior as required by Fed. R. Civ. P. 23(b)(3) -- further reiterates the point that the answer does not depend on the citizenship of the proposed class representative.

who took no affirmative steps in this action, it would be evidence in every country
and it could be utilized by Touche in defense of subsequent foreign lawsuits.

Thirdly, and of utmost significance, on the basis of plaintiffs' affidavits,
interrogatories propounded to defendant by plaintiffs and defendant's responses
thereto, Touche is not present in several of the countries relevant to this action
and, therefore, it is not amenable to suit by certain debenture holders. In those
countries where its presence is found, it is a corporation that would not be liable
for any unlawful acts committed by the Touche partnership in the United States.

*Id.* at 48-50. The same reasoning applies here -- Molson does not have corporate presence in

Germany and, even if a suit could properly be filed there, there is no reason for anyone to sue in

Germany given that Molson has no assets subject to enforcement of a judgment in Germany.

The cases Plumbers & Pipefitters relies on are readily distinguishable. *In re*

*DaimlerChryslerAG Sec. Litig.*, No. 00-993 (D. Del. Jan. 8, 2003), involved a German

corporation based in Germany. The reasoning and conclusions of the expert affidavit submitted

in that case on the jurisdictional and *res judicata* issues, which Plumbers & Pipefitters filed in

support of its position here, thus has no application here. Moreover, rather than concluding that

no *res judicata* effect will be given to a judgment of a U.S. court in Germany, the affidavit

establishes that a German court *will recognize* the judgment of this Court against the German

defendants if the notice provisions of the Hague Service Convention are followed: "[A] German

court will not recognize negative effects of a class action judgment or court confirmed settlement

in any subsequent actions against the Defendants *absent* the provision of notice to German

shareholders that complies strictly with the Hague Service Convention." Declaration of Carmella

Keener in Support of [Plumbers & Pipefitters] Opp. Exhibit B, 6 (affidavit of Rolf Storner)

(emphasis added).[10] Given the speculative nature of the argument and its legal irrelevancy to the

---

[10] The expert affidavit submitted by the other side in that case also concluded that
whether a German court would grant *res judicata* effect to a U.S. judgment in a class action turns
on whether proper notice is given pursuant to the Hague, a ministerial and routine matter that can
easily be complied with. *See* Exhibit J (Declaration of Prof. Dr. Burkhard Hess, ¶ 30).

lead plaintiff issue at hand, it should be rejected. *See Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y. 2001) (class certification opinion rejecting *res judicata*/superiority argument as speculative where it was not clearly established, with affidavits, that foreign courts would not recognize the judgment of a United States court).

*In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343 (D. Md. 2003), also relied on by Plumbers & Pipefitters, is similarly distinguishable. The defendant there was a foreign corporation based in the Netherlands, and the lead plaintiff movant in question was foreign and purchased its shares on a foreign exchange. *Id.* at 351. The court was primarily concerned with subject matter jurisdiction: "Most troubling is the status of Union as a foreign purchaser or Royal Ahold stock on a foreign exchange . . . [f]oreign purchasers are subject to a significant jurisdictional defense." There is no jurisdictional issue here because Metzler purchased the shares of a U.S. company on the New York Stock Exchange. *See* Metzler Decl. ¶ 3. In *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 985 (2d Cir. 1975), the court denied class certification in an action against a foreign corporation stemming from a foreign offering where ***all of the shares*** "were sold in Canada and ***none was sold to Americans resident there***." *Id.* at 980 (emphasis added). These are not the facts before this Court. Moreover, the absence of *res judicata* was only one of five reasons, and a minor one at that, why the court affirmed the denial of class certification. *See id.* at 996. *Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998), is distinguishable because although a *res judicata* issue was noted, the court denied certification principally because the proposed class was composed of only 35 members and did not meet the threshold numerosity requirement of Fed. R. Civ. P. 23. *See id.* at 115 ("I find that joinder is not impracticable and, therefore, that Ansari has failed to satisfy the numerosity requirement of Rule 23(a)(1).")

**C.**    **There Is No Res Judicata Issue Pursuant to Fed. R. Civ. P. 17**

Plumbers & Pipefitters likewise argues that appointing Metzler would create *res judicata*

issues because it is not the real party in interest pursuant to Fed. R. Civ. P. 17. This argument,

which is related to its equally meritless "authority" argument discussed above, should be

rejected. Rule 17's real party in interest requirement is the same as the standing requirement, *i.e.*,

in securities actions, a purchaser is the real party in interest. The issue before this Court was

squarely addressed in *Casden v. HPL Techs., Inc.*, No. C-02-3510, 2003 U.S. Dist. LEXIS 19606

(N.D. Cal. Sept. 29, 2003), where the court appointed an investment advisor as lead plaintiff.

Rejecting the same arguments raised by Plumbers & Pipefitters, the court held as follows:

> FRCP 17(a) requires that all actions be prosecuted by the "real party in
> interest," which is determined by the substantive law that governs the
> cause of action. *Lemanik v McKinley Allsopp, Inc*, 125 F.R.D. 602, 607
> (SDNY 1989). Since the claims in this case concern causes of action under
> the Exchange Act, [it] governs who can be a real party in interest. Section
> 10(b) of the Exchange Act and Rule 10b-5 concern fraud "in connection
> with the purchase or sale of any security." The Supreme Court has found
> that private civil remedies under the Exchange Act are limited to those
> individuals who have actually purchased or sold such securities. . . *Blue
> Chip Stamps et al v Manor Drug Stores*, 421 U.S. 723, 736, 44 L. Ed. 2d
> 539, 95 S. Ct. 1917 (1975). *Investment advisors who make the decisions
> to purchase the securities qualify as purchasers within the meaning of
> 10b-5, regardless of whether they purchased securities for their own
> accounts or for the accounts of their customers*. *Lemanik*, 125 F.R.D. at
> 607; *see also Monetary Management Group of St Louis, Inc v Kidder
> Peabody & Co*, 604 F. Supp. 764, 766-67 (ED Mo 1985); *Odette v
> Shearson, Hammill & Co*, 394 F. Supp. 946, 959 (SDNY 1975) (noting
> that a "broker who purchases or sells as agent for his customer satisfies the
> purchaser-seller requirement").
>
> Fuller & Thaler meets these qualifications to be a real party in interest for
> this action. As an investment advisor, it actually consummated the
> purchases of the HPL securities for its clients, thus bringing it within the
> definition of "purchaser." Additionally, according to the declaration of Mr.
> Stanske, it had complete discretion over its clients' accounts and thus
> made the actual decision to purchase the HPL shares.

*Casden*, 2003 U.S. Dist. LEXIS 19606, at *29-32. *See* Metzler Declaration at 4. Metzler is the

party in interest for purpose of Rule 17.

-15-

D.    **Metzler Can More than Adequately**
**Represent the Interests of Class Members**

The argument that Metzler resides too far away does not carry any weight. Metzler is part of a sophisticated enterprise with vast resources and global operations and offices. It is committed to the prosecution of this action in the best interests of the class. Metzler Declaration ¶¶ 7-8. Representatives of Metzler Investment are prepared to travel wherever their presence will benefit the Class, and, when in-person visits are not required, can make themselves available *via* telephone, e-mail and video conference. *See In re Goodyear Tire & Rubber Co. Secs. Litig.*, 2004 U.S. Dist. LEXIS 27043, at *10 (rejecting the "too far away" argument where the movant's declaration stated that its representatives would be available to the Court and it is otherwise committed to the litigation). Plumbers & Pipefitters' attack against Metzler is archaic in light of the realities of today's modern communications and securities markets. *See id.* (appointing a German institution as lead plaintiff, holding that "to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy."). Metzler's pairing with Local 675 further blunts this argument.

## POINT V.

## LOCAL 675 IS NOT SUBJECT TO A UNIQUE DEFENSE

In the introduction to its opposition brief, Plumbers & Pipefitters agues that Local 675 is subject to a unique defense because it received Molson shares in exchange for shares of Coors in the Molson-Coors merger, as opposed to purchasing Molson shares on the open market. However, each of the above-captioned actions is brought on behalf of "former shareholders of Molson Inc. ("Molson") who received shares of Molson Coors Brewing Company ("Molson Coors" or the "Company") as a result of the February 9, 2005 merger of Molson by and into the Adolph Coors Company ("Coors")". *Drywall Acoustic Lathing & Insulation Local 675 Pension*

*Fund v. Molson Coors Brewing Co.*, No. 05-CV-294 (D. Del. filed May 13, 2005) at ¶ 1.[11] In addition, Plumbers & Pipefitters' brief in support of its motion quotes the same class definition. The argument that Local 675 is subject to a unique defense lacks merit and evidences Plumbers & Pipefitters' ignorance of the most basic allegations in this litigation. Indeed, Local 675's standing as a merger offered evidences that the Molson Coors Investors Group covers both significant components of the class, whereas Plumbers & Pipefitters may possibly lack the standing to represent the merger-related claims.

## POINT VI.

## METZLER AND LOCAL 675 ARE AN IDEAL LEAD PLAINTIFF GROUP

In the introduction to their opposition brief, Plumbers & Pipefitters accuses the Molson Coors Investors Group of being an attorney-driven aggregation, and cites actions that declined to appoint groups as lead plaintiffs. This attack must be rejected. Metzler and Local 675 are sophisticated institutional investors that knowingly filed a joint motion in order to lead this litigation to their, and the class', benefit. Plumbers & Pipefitters offers no evidence, or any reasoning, why the court should conclude that Metzler's and Local 675's joint motion is attorney-driven.

While some courts have declined to appoint large groups of unrelated small investors as lead plaintiffs, such as in *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, (N.D. Cal. 1999) (rejecting a group comprised of hundreds of movants), cited by Plumbers & Pipefitters, there is no authority for rejecting two institutional investors, each with a substantial financial interest in the litigation, as lead plaintiffs. Indeed, in the Third Circuit, the appointment of

---

[11] Merger offerees are regularly included as part of open-market fraud cases where stock has been issued as part of merger consideration. *See, e.g., In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1263 (N.D. Cal. 2000). A fraud on the market that inflates the price of the offeror's stock is no less injurious to those who receive such stock in a share-exchange than those who purchase the stock for cash on the open market.

groups, either individual or institutional, is routine. *See In re Cendant Corp. Litig.*, 264 F.3d 201 at 266 (Lead plaintiffs were three institutional investors. "The statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'"); *A.F.I.K. Holding SPRL v. Fas*s, 216 F.R.D. 567, 572 (D.N.J. 2003) (Ackerman, J.) (appointing group of unrelated individual movants); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200 (E.D. Pa. June 3, 2004) (same).

The Molson Coors Investors Group, which has demonstrated the largest financial interest in the litigation as well as its adequacy and typicality, is comprised of a domestic institutional investor and a foreign institutional investor and, therefore, is an ideal lead plaintiff that can represent all absent class members. Its motion should be granted in its entirety.

## CONCLUSION

For the reasons stated herein and in its prior submissions, the Molson Coors Investors Group respectfully requests that this Court: (1) consolidate the actions; (2) appoint it as Lead Plaintiff pursuant to § 21D(a)(3)(B); and (3) approve its selection of Milberg Weiss as Lead Counsel.

DATED:  August 2, 2005

Respectfully submitted,

**MILBERG WEISS BERSHAD**
**& SCHULMAN LLP**

By: /s/ Seth D. Rigrodsky
Seth D. Rigrodsky (#3147)
Ralph N. Sianni (#4151)
919 N. Market Street, Suite 411
Wilmington, Delaware  19801
Telephone: (302) 984-0597
Facsimile: (302) 984-0870

--and--

-18-

**MILBERG WEISS BERSHAD**
  **& SCHULMAN LLP**
Steven G. Schulman
Peter E. Seidman
Andrei V. Rado
One Pennsylvania Plaza - 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Proposed Lead Counsel*

**MURRAY FRANK & SAILER LLP**
Eric J. Belfi
275 Madison Avenue
New York, NY  10016
Telephone:  (212) 682-1818
Facsimile:  (212) 682-1892

**LAW OFFICES OF**
**MICHAEL A. SWICK PLLC**
Michael A. Swick
One William Street, Ste. 555
New York, NY  10004
Telephone:  (212) 920-4310
Facsimile:  (212) 584-0799

*Plaintiff's Counsel*

## TABLE OF ATTACHMENTS

| **Attachment** | **Document** |
| --- | --- |
| Tab 1 | Declaration Of Metzler Investment GMBH In Support of the Motion of the Molson Coors Institutional Investors Group For Consolidation, Appointment As Lead Plaintiff and Approval of Selection of Lead Counsel |
| Exhibit A | Order in: *Orens v Levi Strauss & Co., Sec. Litig.*, No. C-03-05605-RMW, Whyte, J. (N.D. Cal. Mar. 29, 2004) |
| Exhibit B | Order in: *In re Nvidia Corp. Sec. Litig.*, No. C-02-0853-CW, Wilken, J. (N.D. Cal. June 11, 2002) |
| Exhibit C | Order in: *In re Corinthian Colleges, Inc. S'holder Litig.*, No. CV-04-5025 R(CWx), Real, J. (C.D. Cal. Nov. 1, 2004) |
| Exhibit D | Order in: *South Ferry LP #2 v. Killinger*, Master File No. CV04-1599C, Coughenour, J. (W.D. Wash. Nov. 30, 2004) |
| Exhibit E | Metzler's Certification of Proposed Lead Plaintiff |
| Exhibit F | Order in: *Blechner v. Daimler-Benz AG*, No. 04-CV-331 (JJF), Farnan Jr., J. (D. Del. Sept. 16, 2004) |
| Exhibit G | Order in: *In re China Life Ins. Co. Ltd. Sec. Litig.*, No. 04-CV-2112, Griesa, J. (S.D.N.Y. Sept. 14, 2004) |
| Exhibit H | Order in: *In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571, Baer Jr., J. (S.D.N.Y. Nov. 1, 2002) |
| Exhibit I | Order in: *In re Merck & Co., Inc. Sec. Litig.*, Civ. Action No. 02-3185 (MLC), Cooper, J. (D.N.J. Nov. 27, 2002) |
| Exhibit J | Declaration of Professor Dr. Burkhard Hess |