# EXHIBIT G

 GRIESA, S.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROY VAN BROEKHUIZEN, Individually and on Behalf of All Others Similarly Situated, | : |
| Plaintiff, | :    Civil Action No.: 04cv2112 (TPG) |
| vs. | : |
| CHINA LIFE INSURANCE COMPANY LIMITED, WANG XIANZHANG, LONG YONGTU, CHAU TAK HAY, MIAO FUCHUN and WU YAN. | : |
| Defendants. | : |

| | |
|---|---|
| CRAIG SCHUTTE, Individually and on Behalf of All Others Similarly Situated, | : |
| Plaintiff, | :    Civil Action 04cv2278 (TPG) |
| vs. | : |
| CHINA LIFE INSURANCE COMPANY LIMITED, WANG XIANZHANG, LONG YONGTU, CHAU TAK HAY, MIAO FUCHUN and WU YAN, | : |
| Defendants. | : |

| | |
|---|---|
| SIMON ZAPOLOTSKY, Individually and on Behalf of All Others Similarly Situated, | : |
| Plaintiff, | :    Civil Action 04cv2346 (SAS) |
| vs. | : |
| CHINA LIFE INSURANCE COMPANY LIMITED, WANG XIANZHANG, LONG YONGTU, CHAU TAK HAY, MIAO FUCHUN and WU YAN, | : |
| Defendants. | : |

[Caption continues on next page]

## [PROPOSED] ORDER OF CONSOLIDATION AND APPOINTMENT OF LEAD PLAINTIFFS AND PLAINTIFFS' CO-LEAD COUNSEL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/1/03

DAVID KAMMERER, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

vs.

CHINA LIFE INSURANCE COMPANY
LIMITED, WANG XIANZHANG, LONG
YONGTU, CHAU TAK HAY, MIAO
FUCHUN and WU YAN,

                Defendants.

Civil Action 04cv2821 (RJH)

---

CARA WILSON, Individually and on Behalf
of All Others Similarly Situated,

                Plaintiff,

vs.

CHINA LIFE INSURANCE COMPANY
LIMITED, WANG XIANZHANG, LONG
YONGTU, CHAU TAK HAY, MIAO
FUCHUN and WU YAN,

                Defendants.

Civil Action 04cv3218 (TPG)

---

RONALD WEAVER, Individually and on
Behalf of All Others Similarly Situated,

                Plaintiff,

vs.

CHINA LIFE INSURANCE COMPANY
LIMITED, WANG XIANZHANG, LONG
YONGTU, CHAU TAK HAY, MIAO
FUCHUN and WU YAN,

                Defendants.

Civil Action 04cv3352 (TPG)

[Caption continues on next page]

| | | |
|---|---|---|
| THURMAN DALE HAMMETT, Individually and on Behalf of All Others Similarly Situated, | : : : : | |
| Plaintiff, | : : | Civil Action 1:04cv3430 (TPG) |
| vs. | : : | |
| CHINA LIFE INSURANCE COMPANY LIMITED, WANG XIANZHANG, LONG YONGTU, CHAU TAK HAY, MIAO FUCHUN and WU YAN, | : : : : : : | |
| Defendants. | : | |
| MICHAEL FUSARELLI, Individually and on Behalf of All Others Similarly Situated, | : | |
| Plaintiff, | : : | Civil Action 1:04cv3550 (TPG) |
| vs. | : : | |
| CHINA LIFE INSURANCE COMPANY LIMITED, WANG XIANZHANG, LONG YONGTU, CHAU TAK HAY, MIAO FUCHUN and WU YAN, | : : : : : | |
| Defendants. | : | |
| RICHARD B. CHURCHVILLE, On Behalf of Himself and All Others Similarly Situated, | : : | |
| Plaintiff, | : : | Civil Action 1:04cv3693 (JGK) |
| vs. | : : | |
| CHINA LIFE INSURANCE COMPANY LIMITED, WANG XIANZHANG, LONG YONGTU, CHAU TAK HAY, MIAO FUCHUN and WU YAN, | : : : : : | |
| Defendants. | : | |

WHEREAS, on March 16, 2004, plaintiff in the action captioned *Broekhuizen v. China Life Insurance Co. Ltd.*, No. 04cv2112 (S.D.N.Y.) (the "*Broekhuizen* Action"), filed with this Court a class action complaint brought on behalf of purchasers of the securities of China Life Insurance Company Limited ("China Life") between December 22, 2003 and February 3, 2004, alleging violations of the Securities Exchange Act of 1934 ("Exchange Act");

WHEREAS, eight additional similar actions related to the *Broekhuizen* Action were subsequently filed with this Court (collectively, with the *Broekhuizen* Action, the "Actions");

WHEREAS, pursuant to Section 21D (a)(3)(A) of the Exchange Act, as amended by the Private Securities Law Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4(a)(3)(A), the plaintiff in the *Broekhuizen* Action caused notice to be published on the *Business Wire* on March 16, 2004, which informed class members of their right to seek appointment as Lead Plaintiff;

WHEREAS, on May 17, 2004, Sau Ki Ho, Chung Shing Tommy Ho, Deyi Shi, and Guoxin Jiang (the "Ho Group"), pursuant to Section 21D of the PSLRA, timely filed a motion seeking consolidation of the Actions, appointment as Lead Plaintiff, and approval of the Ho Group's selection of Lerach Coughlin Stoia & Robbins LLP as Lead Counsel;

WHEREAS, on May 17, 2004, Joseph Franich and Cheryl De Geus, Peter Makhlouf, Bassam Hanafi, Dan Seago, and Peggy Klauer (the "Franich Group"), pursuant to Section 21D of the PSLRA, timely filed a motion seeking consolidation of the Actions, appointment as Lead Plaintiff, and approval of the Franich Group's selection of Milberg Weiss Bershad & Schulman LLP and Chitwood & Harley LLP as Co-Lead Counsel;

WHEREAS, on May 17, 2004, Robert & Rena Cheng, Yung Dong Wong, Yun Lan Jiang, Bei Jiang, and Yan Yi Wang (the "Cheng Group"), pursuant to Section 21D of the PSLRA

timely filed a motion seeking consolidation of the Actions, appointment as Lead Plaintiff, and approval of the Cheng Group's selection of Schiffrin & Barroway, LLP as Lead Counsel and Wechsler Harwood LLP as Liaison Counsel;

WHEREAS, on August 5, 2004, the Cheng Group withdrew its motion, and is no longer seeking consolidation of the actions, appointment as Lead Plaintiff, and approval of its selection of Lead and Liaison Counsel;

WHEREAS, on May 17, 2004, Jimmy Chien, Ching-Ti Chien, and Jong-Yuan Chang (the "Chien Group"), pursuant to Section 21D of the PSLRA, timely filed a motion seeking consolidation of the Actions, appointment as Lead Plaintiff, and approval of the Chien Group's selection of Vianale & Vianale LLP and Gainey & McKenna as Lead Counsel;

WHEREAS, on May 17, 2004, Ilazar and Chiang-Tilung Abraham, Diane and John Lacey, Jerzy SLomka and Caneene G. Thoreson (the "Abraham Group"), pursuant to Section 21D of the PSLRA, timely filed a motion seeking consolidation of the Actions, appointment as Lead Plaintiff, and approval of the Abraham Group's selection of Stull Stull & Brody and Weiss & Yourman as Lead Counsel;

WHEREAS, on May 17, 2004, David Kammerer, Michael Collins, and Lai Ping Mang (the "Kammerer Group"), pursuant to the PSLRA, timely filed a motion seeking consolidation of the Actions, appointment as Lead Plaintiff, and approval of the Kammerer Group's selection of Abbey Gardy, LLP, Strauss & Troy, and Waite Schneider Bayless & Chesley as Co-Lead Counsel;

WHEREAS, on August 17, 2004, the Kammerer Group withdrew its motion, and is no longer seeking consolidation of the actions, appointment as Lead Plaintiff, and approval of its selection of Lead and Liaison Counsel;

2

WHEREAS, the motions for lead plaintiff and lead counsel were fully briefed and this Court having heard the argument of counsel for all persons seeking appointment as lead plaintiff on August 18, 2004,

NOW, THEREFORE, IT IS HEREBY ORDERED:

## CONSOLIDATION

1.    The above-captioned actions are consolidated pursuant to Fed. R. Civ. P. 42(a) (the "Consolidated Action");

## MASTER DOCKET AND MASTER FILES

2.    A Master File is hereby established for this proceeding.  The Master File shall be Civil Action No. 04cv2112 (TPG).  The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket.

3.    An original of this Order shall be filed by the Clerk in the Master File.

4.    The Clerk shall mail a copy of this Order to Counsel of record in the Consolidated Action.

## CAPTION OF CASE

5.    Every pleading filed in the Consolidated Action shall have the following caption:

| | |
|---|---|
| IN RE CHINA LIFE INSURANCE COMPANY LIMITED SECURITIES LITIGATION | Civil Action No. 04cv2112 (TPG). |

## NEWLY-FILED OR TRANSFERRED ACTIONS

6.    This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that might properly be consolidated as part of the Consolidated Action.

7.    When a case arising out of the same subject matter of the Consolidated Action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

3

(a)    File a copy of this Order in the separate file for such action;

(b)    Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly filed or transferred case and to any new defendant(s) in the newly-filed or transferred case; and

(c)    Make the appropriate entry in the Master Docket for the Consolidated Action.

8.    Each new case that arises out of the subject matter of the Consolidated Action that is filed in this Court or transferred to this Court, shall be consolidated with the Consolidated Action and this Order shall apply thereto, unless a party objects to consolidation, as provided for herein, or any provision of this Order, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application. Nothing in the foregoing shall be construed as a waiver of the Defendants' right to object to consolidation of any subsequently-filed or transferred, related action.

## APPOINTMENT OF LEAD PLAINTIFFS AND CO-LEAD COUNSEL

9.    The Franich Group and the Ho Group's motions are granted, and all other motions for appointment as lead plaintiff are denied. Sau Ki Ho, Chung Shing Tommy Ho, Deyi Shi, Guoxin Jiang, Joseph Franich, Cheryl De Geus, Peter Makhlouf, Bassam Hanafi, Dan Seago, and Peggy Klauer are hereby appointed Lead Plaintiffs in the Consolidated Action pursuant to Section 21D (a) (3) (E) of the PSLRA.

10.    Milberg Weiss Bershad & Schulman, LLP and Lerach Coughlin Stoia Geller Rudman & Robbins LLP are hereby appointed Co-Lead Counsel for plaintiffs in the Consolidated Action, and for the proposed Class. Co-Lead Counsel shall assume and exercise the following powers and responsibilities:

(a)    To coordinate the briefing and argument of motions;

4

    (b)    To coordinate the conduct of written discovery proceedings;

    (c)    To coordinate the examination of witnesses in depositions;

    (d)    To coordinate the selection of counsel to act as spokesperson at pre-trial conferences;

    (e)    To call meetings of plaintiffs' counsel as they deem necessary and appropriate from time to time;

    (f)    To conduct all settlement negotiations with counsel for the Defendants;

    (g)    To coordinate and direct the preparation for trial and the trial of this matter, and to delegate work responsibilities to selected counsel as may be required;

    (h)    To receive orders, notices, correspondence and telephone calls from the Court on behalf of all plaintiffs, and to transmit copies of such orders, notices, correspondence and memoranda of such telephone calls to plaintiffs' counsel; and

    (i)    To supervise any other matters concerning the prosecution or resolution of the Consolidated Action.

11.    With respect to scheduling and/or procedural matters, Defendants' counsel may rely upon all agreements with Co-Lead Counsel.

12.    No pleadings or other papers shall be filed or discovery conducted by any plaintiff except as directed or undertaken by Co-Lead Counsel.

13.    Chitwood & Harley LLP and Murray, Frank & Sailer LLP shall also participate as counsel for plaintiffs and the proposed Class.

## SERVICE OF PLEADINGS ON OTHER PARTIES

14. All papers shall be served on all counsel for all defendants and upon plaintiffs' Co-Lead Counsel, Milberg Weiss Bershad & Schulman LLP and Lerach Coughlin Stoia Geller

Rudman & Robbins LLP, and plaintiffs' counsel Chitwood & Harley LLP, and Murray, Frank & Sailer LLP.

## MISCELLANEOUS

15. Counsel in any related action that is consolidated with the Consolidated Action shall be bound by this Order.

**IT IS SO ORDERED**

DATE _Sept. 14_, 2004

THE HONORABLE THOMAS P. GRIESA
UNITED STATES DISTRICT JUDGE

6

# EXHIBIT H

02-323
(14)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
IN RE VIVENDI UNIVERSAL, S.A.,                        :
SECURITIES LITIGATION                                 :        02 Civ. 5571 (HB)
                                                      :
                                                      :        **ORDER**
                                                      :
                                                      :
------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

   WHEREAS a telephone conference was held on November 1, 2002 with counsel from
Milberg Weiss Bershad Hynes & Lerach LLP and Abbey Gardy, LLP to discuss the selection of
lead plaintiff and lead counsel; it is hereby

   ORDERED that the Miami Group (consisting of the Retirement System for General
Employees of the City of Miami Beach, Oliver M. Gerard, Francois R. Gerard, Prigest S.A. and
Tocqueville Finance S.A.) and the Pearson-Doniger Family (consisting of two sisters and their
respective family members – Beatrice Doniger, Bruce Doniger, Grandchildren's Trust by Bruce
Doniger Trustee, Alison Doniger, Michael Doniger, Edward B. Brunswick, and Ruth Pearson
Trust Pearson Trustee) are appointed co-lead plaintiffs, and; it is further

   ORDERED that Milberg Weiss Bershad Hynes & Lerach LLP and Abbey Gardy, LLP are
appointed co-lead counsel, and; it is further

   ORDERED that co-lead counsel submit to the Court on or before November 17, 2002, a
stipulated plan to resolve any differences that may arise amongst members of the co-lead
plaintiffs.

**SO ORDERED.**
New York, New York
November 1, 2002

                                    U.S.D.J.

# EXHIBIT I

ON
THE DOCKET

NOV 27 2002

WILLIAM T. WALSH, CLERK

By_____

11/27   02-288 (56)

FILED

NOV 2 7 2002

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

IN RE MERCK & CO., INC.           :CIVIL ACTION NO. 02-3185 (MLC)
SECURITIES LITIGATION             :
                                  :    ORDER
                                  :
                                  :
_____   :

       This matter coming before the Court on (1) the separate

motions by (a) Grantham Mayo Van Oterloo & Company Pelican Fund,

Yok-Tseng Hsu, Mark Kolber, Khusal Mehta, Lorraine Pure, and

Jerry Robertson (collectively "Grantham Mayo Fund"), (b) Union

Investment GmbH ("Union"), (c) BankNorth Investment Management

Group ("BankNorth"), and (d) Louisiana School Employees

Retirement System and Louisiana Municipal Police Employees

Retirement System (collectively "Louisiana Retirement System"),

each seeking appointment as lead plaintiff, approval of proposed

lead plaintiff's selection of lead counsel, and consolidation of

all related cases in the above-captioned action, pursuant to

Section 21D(a)(3)(B) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. § 78u-4, (2) the motion by

Amalgamated Bank as Trustee for the Longview Collective

Investment Fund ("Amalgamated Bank") seeking appointment as lead

plaintiff and approval of proposed lead plaintiff's selection of

lead counsel, pursuant to Section 21D(a)(3)(B) of the Exchange

Act, and (3) the motion by Jackie Herbst ("Herbst") for

appointment as lead plaintiff, approval of proposed lead

plaintiff's selection of lead counsel, and consolidation of all

related actions in the above-captioned docket number, pursuant to

both Section 21D(a)(3)(B) of the Exchange Act and Section
27(a)(3)(B) of the Securities Act of 1933 ("Securities Act"), 15
U.S.C. § 77k; and the Court having already consolidated all
related cases in the above-captioned action (Order entered 9-19-
02); and BankNorth Investment and Louisiana Retirement System
having withdrawn their motions by filing Notices of Withdrawal on
September 5, 2002 and November 13, 2002, respectively (nos. 15-1
and 54-1 on the docket); and the Court having heard oral argument
in this matter on October 17, 2002 ("10-17-02 Oral Argument");
and the Court having considered the papers submitted by the
parties in support of and in opposition to each motion, including
supplemental briefing following the 10-17-02 Oral Argument; and
for the reasons stated on the record on October 17, 2002, the
Court finding that: (1) Union moved timely to be appointed lead
plaintiff pursuant to Section 21D(a)(3)(A)(i)(II) of the Exchange
Act, (2) Union's financial interest of $42.9 million is the
largest financial interest of the relief sought by the putative
class pursuant to Section 21D(a)(3)(B)(iii)(1)(bb) of the
Exchange Act, and exceeds the $4.96 million financial interest of
movant Amalgamated Bank the $950,000 financial interest of
movant Grantham Mayo Fund, and the $54,000 financial interest of
movant Herbst, (3) Rolf Drees had authority to execute a
certification on behalf of Union, and, in accordance therewith,
Union is committed to actively prosecuting this litigation on
behalf of the putative class, (4) Union's claims are typical of

2

the claims of the putative class, and Union is an adequate class representative and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure pursuant to Section 21D(a)(3)(B)(iii)(1)(cc) of the Exchange Act, and (5) Union is the most adequate plaintiff to serve as lead plaintiff and is not subject to unique defenses that render Union incapable of adequately representing the class pursuant to Section 21D(a)(3)(B)(iii)(11)(bb) of the Exchange Act; and good cause appearing;

IT IS THEREFORE on this 26th day of November, 2002 that the motion by Union for appointment as lead plaintiff, approval of its selection of lead counsel (nos. 9-1 and 9-2 the docket) be and hereby is **GRANTED**; and

IT IS FURTHER ORDERED that the motion by Union for consolidation (no. 9-3 on the docket) be and hereby is **DENIED AS MOOT**; and

IT IS FURTHER ORDERED that Union's selection of Bernstein, Litowitz, Berger & Grossman, LLP as Lead Counsel and Liaison Counsel be and hereby is **APPROVED**; and

IT IS FURTHER ORDERED that Union and its counsel will consult with movant Herbst and Herbst's counsel on matters particular to the Securities Act of 1933 class action claims asserted in Herbst's complaint, including preparation of a consolidated amended complaint, motion practice, discovery, and settlement negotiations; and

IT IS FURTHER ORDERED that the motion by Grantham Mayo Fund for appointment as lead plaintiff and approval of proposed lead plaintiff's selection of lead counsel (nos. 5-1 and 5-2 on the docket) be and hereby is **DENIED WITH PREJUDICE**; and

IT IS FURTHER ORDERED that the motion by Amalgamated Bank for appointment as lead plaintiff and approval of proposed lead plaintiff's selection of lead counsel (nos. 7-1 and 7-2 on the docket) be and hereby is **DENIED WITH PREJUDICE**; and

IT IS FURTHER ORDERED that the motion by Amalgamated Bank

4

for consolidation (no. 7-3 on the docket) be and hereby is **DENIED AS MOOT**; and

IT IS **FURTHER ORDERED** that the motion by Herbst for appointment as lead plaintiff and approval of proposed lead plaintiff's selection of lead counsel (no. 17-2 on the docket) be and hereby is **DENIED WITH PREJUDICE**; and

IT IS **FURTHER ORDERED** that the motion by Herbst for consolidation (no. 17-1 on the docket) be and hereby is **DENIED AS MOOT**; and

IT IS **FURTHER ORDERED** that the motion by BankNorth for appointment as lead plaintiff, approval of proposed lead plaintiff's selection of lead counsel, and consolidation (nos. 11-1, 11-2, and 11-3 on the docket) be and hereby is **DENIED AS MOOT**; and

IT IS **FURTHER ORDERED** that the motion by Louisiana Retirement System for appointment as lead plaintiff, approval of proposed lead plaintiff's selection of lead counsel, and consolidation (nos. 13-1, 13-2, and 13-3 on the docket) be and hereby is **DENIED AS MOOT**; and

IT IS **FURTHER ORDERED** that an Amended Consolidated Class Action Complaint shall be filed within 60 days of the entry of this order.

_____

MARY L. COOPER
United States District Judge

5

# EXHIBIT J

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re DaimlerChrysler AG Securities Litigation  :

:   Master File No. 00-0993 (JJF)

:

:

## DECLARATION OF PROFESSOR DR. BURKHARD HESS

I, Prof. Dr. Burkhard Hess, declare as follows:

### A. Introduction and Summary

1.    I was born in Worms (Germany) in 1961 and studied law at the Universities of Wuerzburg, Lausanne (Switzerland) and Munich from 1981- 1986. I passed the first state examination in 1987, the second state examination in 1992. In 1990, I received the degree of Doctor of Law (Dr. jur.) *summa cum laude* from the University of Munich. Between 1990 and 1995 I was Assistant Professor at the University of Munich. From 1995 until 1996 I served as Professor on the Faculty of Law at the University of Erlangen. In December 1996, I completed my habilitation degree at the University of Munich. Since October 1996, I have held a Chair of Civil and Procedural Law, Conflict of Laws, and International Litigation at the University of Tuebingen. In 1999, I was invited to the Renmin University in Beijing as a guest professor. The professorship was sponsored by the Ford Foundation. From October 2000 until October 2002, I served as the Dean of the Faculty. In 2002, I was awarded a grant to research comparative European enforcement laws by the European Commission.

2.    I have specialized in Private and Public International Law since 1990, dealing in particular with issues relating to trans-national litigation and European Procedural Law. I have published a number of articles on this subject: Abuse of Procedural Law in Austria and Germany, in: Taruffo (ed.) Abuse of Procedure (1999); Entschädigung für NS-Zwangsarbeit vor US-amerikanischen und

deutschen Zivilgerichten[1], in: Die Aktiengesellschaft 1999, pg. 145 – 155; in 2000, Die Anerkennung eines class action settlement in Deutschland[2], in: Juristenzeitung 2000, 373 - 382; Judicial Discretion, General Report for the Ghent Conference of the International Association for Procedural Law (in print); Sammelklagen im Kapitalmarktrecht[3], Die Aktiengesellschaft 3/2003.

3.   In connection with this declaration I have studied the declaration of Prof. Dr. Rolf Stürner of January 8, 2003, and conferred with plaintiffs' counsel on the nature of the current litigation.

4.   The plaintiffs have asked me to comment on the issues of German Private and Procedural Law addressed in Prof Stürner's declaration.   Based on my understanding of German Constitutional, Procedural, and Private Law, I conclude (1) that a judgment in the pending litigation will, in all likelihood, be recognized and enforced by any German court; and (2) that negative preclusive effects of a judgment (to the members of the class) also will be recognized if minimum constitutional and procedural standards are maintained.

5.   My opinion is in two parts: In the first part, I discuss generally the preconditions for a recognition and enforcement of United States judgments in Germany according to Sec. 328 German Code of Civil Procedure (ZPO). In the second part, I discuss the recognition of "negative preclusive effects" of such a judgment according to German private and procedural law.

## B. The Recognition and Enforcement of a
## US Class Action Judgment in Germany

6.   The recognition of a foreign decision in Germany creates a *res judicata* effect against a subsequent action in a German court involving identical parties and claims.   According to Sec. 328 ZPO, a foreign judgment cannot be not recognised in Germany if one of the following conditions exist:

"(1) where the courts of the country to which the foreign court belongs do not have personal jurisdiction over the defendants;

(2) where the documents instigating the proceedings were not served on the defendant in accordance with law or in such a timely manner that he could defend himself and he made no appearance and he pleads this fact;

---

[1] "Litigation for Compensation for Forced and Slave Labour in US and German Courts."

[2] "The Recognition and Enforcement of a U.S. Class Action Settlement in Germany."

[3] "Securities Class Actions in German Procedural Law."

(3) where the judgment conflicts with a German judgment or with an earlier recognizable foreign judgment or where the proceedings underlying the foreign judgment conflict with a German proceeding that began before the foreign proceeding;

(4) where recognition of the judgment would lead to a result that would clearly conflict with essential principles of German law, in particular where recognition would conflict with the German constitution (Basic Law: Grundgesetz);

(5) where reciprocity is not guaranteed."

7.   German courts generally adopt a liberal approach to the recognition and enforcement of foreign judgments. Ten years ago, in a landmark decision, the Federal Supreme Civil Court (BGH) stated, that as a matter of principle, United States judgments must (at least partially) be recognised in Germany. Differences between the procedural systems do not *per se* exclude the recognition of a United States judgment.

Bundesgerichtshof, June 4, 1992, BGHZ 118, 312 translated in 32 I.L.M. 1320 (1993); April 29, 1999, BGHZ 141, 286. This liberal approach is largely approved by the legal literature, cf. *Geimer*, Internationales Zivilverfahrensrecht (4th ed. 2002), n. 2945-2946; *Hay*, US-Zivilprozessrecht in: Assmann/Bungert (ed.), Handbuch des deutsch-amerikanischen Wirtschaftsrechts (2001), p. 617; *Schack*, Internationales Zivilverfahrensrecht (3rd ed. 2002), n. 864.; *Nagel/Gottwald*, Internationales Zivilprozessrecht (5th ed. 2002), § 7, n. 103, 175; *Stein/Jonas/Roth*, Commentary (21. ed. 1998), § 328 ZPO, n. 124.

8.   According to Sec. 328(1) ZPO, the recognition of a foreign judgement depends upon whether the rendering court had proper jurisdiction. Jurisdiction is determined pursuant to the "mirror test": Instead of analysing whether the rendering court had jurisdiction under its own laws, German courts determine the jurisdiction of the foreign court according to German legal standards.

*Behr*, Enforcement of United States Money Judgments in Germany, 13 JLCom 211, 219 (1994)

9.   In the case at bar, plaintiffs' claims are based on violations of United States securities laws. According to Sec. 32 ZPO, a plaintiff may bring a claim for securities liability to the court of the place where the tort occurred or to the court where the damage was sustained. The jurisdictional requirements of Sec. 32 ZPO are satisfied since the alleged damages were sustained in the United States. Moreover, as plaintiffs base their claims on the factual background of the "merger" between an American and a German company and as the plaintiffs base their claim upon their shareholders' rights, it is reasonable that litigation

relating to that merger is decided by the courts of the seat of one of these companies. A similar jurisdictional ground is to be found for shareholder suits in Sec. 306 German Law Regulating the Transformation of Companies.

*Assmann/Schütze*, Handbuch des Kapitalmarktrechts (2nd ed. 1997), § 29, n. 39.

10. The second precondition of Sec. 328 ZPO relates to the service of the complaint. According to this provision, service of the complaint must be effected only on <u>defendants</u>. As Prof. Stürner correctly points out, Germany does not permit simplified service by post from the United States upon defendants domiciled in Germany. Therefore, any recognition of a judgment would be refused if the German <u>defendants</u> were not served pursuant to the Hague Service Convention of Nov. 15, 1965, 20 U.S.T. 361 (1969). I presume that the complaint in this litigation was properly served upon the German defendants.

11. Sec. 328(2) ZPO, however, deals only with <u>the service of the complaint to the defendants.</u> It does not address the issue of whether third persons (the members of the class) must also be formally served with the complaint. As explained below, a lack of adequate notice of settlement or judgment to absent class members may impede German public policy. Nonetheless, lack of sufficient initial information to absent class members does not impede the recognition of a foreign judgment under Sec. 328 n° 2 ZPO.

12. The main impediment to the recognition of a United States judgment can be derived from Sec. 328 n° 4 ZPO. According to that provision, the recognition of a foreign judgment is precluded if the enforcement of that judgment would contravene domestic public policy. Public policy will be invoked to prevent the recognition of a United States judgment only in extreme cases in which fundamental values of the German legal system are involved. German case law and the literature clearly distinguish procedural and substantive public policy.

Cf. BGH, April 21, 1998, BGHZ 138, 331; *Nagel/Gottwald*, Internationales Zivilprozessrecht (5th ed. 2002), § 7, n. 177; *Schneider*, Class Actions - Rechtspolitische Fragen in den USA und Anerkennung in Deutschland (1999), 120; *Zöller/Geimer*, Commentary (23rd ed. 2002), n. 154.

13. Substantive public policy relates to punitive damages. In the landmark decision of 1992 referred to above, the BGH (Federal Supreme Civil Court) partially refused the recognition of a California judgment awarding $400,000 in punitive damages to a 14 year-old child who had been sexually molested.

BGHZ 118, 312, 334 - 345; *Stiefel/Stürner/Stadler*, The Enforceablity of Excessive U.S.Punitive Damage Awards in Germany, 39 AJCL 779 (1991).

Case 1:05-cv-02604-WDQ Document 32-8 Filed 08/02/2005 Page 24 of 33

10 Feb 03 21:15          Lst Prof. Hess              +49 7071 29 5944        S.3

In that case, the Supreme Court held that damages for pain and suffering can only be enforced in so far as they correspond to the amount that a German court would award in a similar case. The award of punitive damages, however, is fundamentally contrary to German public policy. German law adheres to a theory of awarding damages in which awards are exclusively restricted to reimbursing the victim for what he has lost. This theory is considered a fundamental principle of German law. Thus, the BGH enforced the California judgment only in part, excluding only that amount representing punitive damages. In 1999, the German legislator amended the code of private international law and explicitly precluded the award of punitive damage by German courts. In the legal literature, this provision is interpreted as a clear indication that the German Parliament approved and adopted the case law of the German Supreme Civil Court. Therefore, as a matter of principle, a German court would not recognize any judgment awarding punitive damages. However, the parts of a judgment relating to compensatory damages will be recognised and enforced in Germany[4]. Moreover, BGH case law applies only to plaintiffs seeking to enforce United States judgments against German defendants. In the event plaintiffs seek to enforce an award of punitive damages, they can do so in the United States, where they are represented as a class. The German defendants can in any event rely on a German court to recognize any United States judgment ensuing from the instant dispute, even if punitive damages have been awarded. Irrespective of whether punitive damages might be enforceable in a German court, it would not effect the *res judicata* effect of a United States judgment *vis à vis* members of the class.

14.   To date, no German court has decided whether a class action judgment may be recognized and enforced. This question relates to the procedural public policy which is, according to the language of Sec. 328 (4) ZPO, directly derived from constitutional standards, especially from the right to a fair trial and from the right to be heard (Art. 103 German Const.). According to the predominant opinion, a judgment awarding damages to a class must be recognised in Germany. In 1999, Prof. *Stiefel, Stürner and Stadler* stated:

"Most characteristics of American class actions that might contravene fundamental principles of German procedural law (for example due process requirements and the right for all plaintiffs to be heard etc.) restrict the procedural rights of the plaintiffs only, and therefore seem to be more

---

[4] On the other hand, the availability of punitive damages might convince numerous potential plaintiffs to opt for the pending class action instead of suing in Germany.

advantageous than disadvantageous to the German defendant. <u>It can hardly be argued that this might be a reason to deny recognition in Germany.</u>"

*Stiefel/Stürner/Stadler*, The Enforceablity of Excessive U.S.Punitive Damage Awards in Germany, 39 AJCL 779, 780 at Fn 4 (1991).

15.   The predominant German legal literature is of the same opinion. Most commentators, however, stress the need to protect the members of the class. The overwhelming majority of legal literature opines that a class action judgment can be recognised and enforced (like any other United States judgment) as far as the relationship between the defendants and the lead plaintiffs is concerned.

Cf. *Greiner*, Die Class Action im amerikanischen Recht und deutscher ordre public (1998), pg. 179 et seq.; *Dixon*, The Res Judicata Effect In England Of A US Class Action Settlement, 34 JCLQ 134, 148 et seq. (1997); *Herrmann*, Die Anerkennung US-amerikanischer Urteile unter besonderer Berücksichtigung des ordre public (2000), p. 178; *Hess*, Zur Anerkennung eines class action settlement in Deutschland, pg. 373, 377 et seq.; *Nagel/Gottwald*, Internationales Zivilprozessrecht (5th ed. 2002), § 7, n. 177; *Schneider*, Class Actions - Rechtspolitische Fragen in den USA und Anerkennung in Deutschland (1999), p. 120; *Zöller/Geimer*, Commentary (23rd ed. 2002), § 328 ZPO, n. 76, 76a; *Oberhammer/Reinisch*, Zwangsarbeiter vor deutschen Gerichten, IPRax 2001, 211, 213; *Spindler*, Anerkennung und Vollstreckung ausländischer Prozessvergleiche unter besonderer Berücksichtigung des class action settlement, (2001), p. 246; contrary opinion *Mann*, Die Anerkennungsfähigkeit von US-amerikanischen Class Action-Urteilen, NJW 1994, pg. 1187 s.; *Mark*, EuZW 1994, pg. 238, 240.

16.   In Professors *Stürner* and *Stiefel's* 1987 article, the professors considered whether representation of class members by lead plaintiffs in a class action might be incompatible with the fundamental German procedural principle that any person has a right to pursue his or her claim individually (principle of party disposition - *Dispositionsgrundsatz*). According to that principle, parties themselves must determine the subject matter and the unfolding of a lawsuit. Professors Stürner and Stiefel opine that a class action comes close to a „popular action" which is nevertheless in certain cases permissible in German procedural law. According to the opinion of some German legal scholars the predominance of lead plaintiffs and their counsel practically preclude represented plaintiffs from pursuing individual claims.

*Stürner/Stiefel*, Die Vollstreckbarkeit US-amerikanischer Schadensersatzurteile, Versicherungsrecht 1987, 829, 830 (the question of an infringement was left open); *Mann*, NJW 1994, 1187 s.; *Mark*, EuZW 1994, 238, 240.

17.  It is my understanding that Federal Rules of Civil Procedure 23 and 24 permit any represented party to participate in the proceedings, to object to a proposed settlement, and to opt out of the class. Given those procedural safeguards, any represented party may actively participate in the litigation. Those safeguards also satisfy the German standard of party disposition. As Professor Stürner clearly states in his January 8, 2003 declaration, representative actions exist in Germany as well — most commonly in the context of shareholders' suits. Some of these proceedings even allow the representation of absent plaintiffs by a court-appointed representative (Secs. 26, 308 German Law Regulating the Transformation of Companies, Secs. 306, 327a *et seq.* German Stock Corporation Law). Recently, legislation expanded the application of those proceedings to include a new mechanism allowing the „squeezing out" of shareholders. Last year, the German Federal Ministry of Justice presented the draft of a general law for representative actions for shareholders[5]. The representation of absent class members by lead plaintiffs can therefore not be characterized as an infringement of fundamental standards of German procedural law, and, accordingly, does not amount to an infringement of German public policy.

*Gottwald*, Class Actions auf Leistung von Schadensersatz, 91 Zeitschrift für Zivilprozess 1, 12 et seq. (1978); *Herrmann*, Die Anerkennung US-amerikanischer Urteile unter besonderer Berücksichtigung des ordre public (2000), p. 178; *Hess*, Juristenzeitschrift 2000, 373, 379; *Oberhammer/Reinisch*, Zwangsarbeiter vor deutschen Gerichten, IPRax 2001, 211, 213; *Spindler*, Anerkennung und Vollstreckung ausländischer Prozessvergleiche unter besonderer Berücksichtigung des class action settlement, (2001), p. 246; *Schneider*, Class Action, p. 179; Stein/Jonas/*Roth* § 328 ZPO, n. 141.

18.  Pursuant to Sec. 328 ZPO, a class action settlement will be recognised and enforced if the settlement is approved by the court or formally endorsed as a consent judgment. A consent judgment is subject to the same conditions as any other foreign judgment.

*Hess*, Juristenzeitschrift 2000, 373, 379; *Nagel/Gottwald*, Internationales Zivilprozessrecht (5th ed. 2002), § 7, n. 177; *Spindler*, Anerkennung und

---

[5]  Entwurf eines Gesetzes zur Neuordnung des Spruchstellenverfahren, http://www.bmj.bund.de/ger/service/gesetzgebungsvorhaben.

Vollstreckung auslländischer Prozessvergleiche unter besonderer Berücksichtigung des class action settlement, (2001), p. 246, 308 et seq.; *Zöller/Geimer*, Commentary (23rd ed. 2002), § 328 ZPO, n. 76, 76a.

19. Since Sec. 328 (1) ZPO refers only to "judgments," any recognition of a foreign settlement is excluded. Nonetheless, a foreign settlement can give rise to substantive legal rights. It can, for example, establish or re-establish legal relationships between parties or create legal claims. Moreover, German civil procedure permits the inclusion of third parties in settlements (Sec. 794 (1) n° 1 ZPO).

I therefore conclude that a judgment or settlement in this litigation, in all likelihood, will be recognized and enforced under Sec. 328 ZPO.

## C. The Recognition of Negative Preclusive Effects
## of a Judgment on Class Members

20. I presume that Professor Stürner's discussion of „negative preclusive effects" (Stürner Decl. Par. 3) concerns the *res judicata* effect of a Untied States judgment. If so, several groups of plaintiffs must be distinguished:

### 1. Represented plaintiffs, those that have affirmatively joined the class

21. If a German class member expressly participates in a settlement, either by opting into an opt-in class or filing a claim form seeking compensation in response to notice, they expressly accept the result of the United States action. It is my understanding that those plaintiffs are expressly bound by the settlement pursuant to Fed.R.Civ.P. 23(c). The binding nature of the settlement on those plaintiffs is a function of the *res judicata* effect of the United States Fed.R.Civ.P. This effect is recognized in Germany pursuant to Sec. 328 ZPO.

*Geimer*, Internationales Zivilverfahrensrecht, n. 2776, 2848; *Nagel/Gottwald*, Internationales Zivilverfahrensrecht, § 11, n. 111, 113, *Nelle*, Titel, Klausel und Vollstreckung im internationalen Rechtsverkehr (2000), pg. 299 - 301; different opinion: *Schack*, Internationales Zivilverfahrensrecht, n. 791 ss.

22. Even if one were to take the opposite view that Sec. 328 ZPO does not apply, the result would be the same, because a plaintiff who had affirmatively joined a United States class action would be precluded from asserting those same claims in Germany: Any such complaint would be dismissed since a German

court would view a plaintiff's affirmative joining of a United States class action as a substantial relinquishment of any of the claims subject to the settlement (§§ 397, 779 BGB). Indeed, a plaintiff's affirmative joining of a class action might be viewed by a German court of a procedural relinquishment of any related German law claims (§ 306 ZPO). In fact, a complaint filed under such circumstances might be refused for abuse of procedure.

23.    In summary, it is clear that the „negative preclusive effect" of a United States class action settlement or judgment would preclude further action by a plaintiff that has affirmatively joined the United States proceeding.

       *2. Absent Class Members*

24.    The binding effect of United States class actions on absent class members is disputed in German legal literature.  As Prof. Stürner correctly notes, the constitutional right of absent class members to be heard (Art. 103 German Const) may be impaired if the absent class members are not provided with adequate notice.

       Stürner Decl., Par. 3; *Herrmann,* Die Anerkennung US-amerikanischer Urteile, p.   180   et   seq.;   *Hess,*   Juristenzeitschrift   2000,   373,   379; *Oberhammer/Reinisch,*  IPRax 2001, 211, 213; *Spindler,* Anerkennung und Vollstreckung ausländischer Prozessvergleiche, p. 246; *Schneider,* Class Action, p. 179; Stein/Jonas/*Roth* § 328 ZPO, n. 141 (Verfahrenshandhabung des ausländischen Gerichts zum Schutz der repräsentierten Kläger sei entscheidend). The Stuttgart District Court, in its Nov. 24, 1999 decision, held as such. IPRax 2001, 240.

25.    The aforementioned authors and the Stuttgart District Court agree that recognition of a class action settlement or judgment, or the recognition of its preclusive effect, demands that effective service of notice be provided pursuant to Fed.R.Civ.P. 23. The Stuttgart District Court held that the putative classes defined in the so-called „Holocaust Litigation" did not preclude the assertion of similar claims in German courts since the United States classes were not certified and the putative class remained indefinite.

       Stuttgart District Court, Nov. 24, 1999, IPRax 2001, 240, 242 f.; contrary opinion *Oberhammer/Reinisch,* IPRax 2001, 211, 213.

26.    The concerns of the Stuttgart court are not present in a securities class action. First, the size of the class in the instant case is readily determinable.  To the extent the shares are held in the names of the shareholders, the Company necessarily has access to their addresses since German corporate law requires the Company to maintain their addresses in the Book of

Shareholders. Sec. 67 German Stock Corporation Law. The company also has access to the addresses of the owners of shares held in „street names" and is able to effectively communicate with those shareholders as is evidenced from invitations to shareholders meetings.  It thus seems probable that adequate notice can be provided.

27.     Similar to the procedural protections for absent class members in the United States, German law provides that it is necessary to provide notice to absent class members, in accordance with German law, so that German class members' right to be heard is ensured.  It is my understanding that the provisions of Fed.R.Civ.P. 23(c) provide that formal notice must be given. In the event absent class members are not provided with adequate notice, the decision or settlement is not binding. In this regard, the German and United States provisions protecting absent class are quite similar.

28.     German legislation and case law strictly require the service of documents under the Hague Service Convention if class members have their domicile or residence in Germany (20 U.S.T.S. 361, 1969).

29.     Pursuant to the holdings of the German Constitutional Court (and several Courts of Appeal), the designated German Central Authorities are normally required to assist American parties requesting the service of documents. Service of class action notice does not violate the *ordre public* provisions of Art. 13 of the Hague Service Convention, which does not even require an examination of the document to be served.

30.     Contrary to the declaration of Prof. *Stürner*, I see no serious problem related to service of notice under the Hague Convention. Formal service will be affected by the local courts on request of the Central Authorities pursuant to Sec. 166 *et seq.* ZPO. Pursuant to Sec. 4 of the German Enabling Law of the Implementation of the Hague Convention on Service Abroad and the Taking of Evidence Abroad of Dec. 22, 1977 (Bundesgesetzblatt I 3105) the central German authority can itself provide service by post (Sec. 168 ZPO). To effect service, plaintiffs must meet the formal requirements of the Hague Convention, in particular the translation of the notice (which largely corresponds to the practice of American courts and plaintiffs' attorneys) and the use of the forms prescribed by the Convention. Additional notice via the Internet or the financial media is also permissible.  Lead plaintiffs can thereby conform with German service requirements securing the absent class members' right to be heard. Where absent class members effectively have the opportunity to participate in the American proceedings, no infringement of Art. 103 German Const. will have occurred.

31. German legal scholars' opinions vary regarding the *res judicata* effect of a United States class action judgment on absent class members who have been properly notified but have not expressly (or timely) „opted out." A portion of the literature argues that the rights of an absent class member cannot be affected by his failure to opt out of a United States class action. Since the foreign absent class member is not subject to the jurisdiction of the United States court, argue those scholars, American procedural law cannot impose an affirmative duty on a foreign absent class member to contact the United States court. Moreover, according to that view, by filing a claim in a foreign court, he or she conclusively opts out of the United States action.

So *Hess*, JZ 2000, 373, 378 f.; District Court Stuttgart, Nov. 24, 1999, IPRax 2001, 240, 241 - 242.

32. Other legal scholars conclude that requiring an absent class member to opt out of a United States class action by simple letter is not unduly burdensome and that to preserve their right to file an individual suit an absent class member must opt out. This view finds the opt out requirement a natural result of the circumstances of a collective action. Those holding this view conclude that if affirmatively opting out was not required, defendants' interests would not adequately be protected since defendants would have no notice as to the number of potential claims that might still be brought in a foreign court, resulting in the defendant being subject to additional actions. That an individual's right to file an individual suit may be limited by collective actions is well recognized in German courts, particularly in shareholders' actions. In the event absent class members are adequately informed about their rights and obligations, the result of a United States class action will be legally binding if domestic class members are provided with notice and have not timely exercised their right to opt out.

*Herrmann*, Anerkennung, 180 - 182; *Oberhammer/Reinisch*, IPRax 2001, 211, 213; *Spindler*, Anerkennung und Vollstreckung ausländischer Prozessvergleiche unter besonderer Berücksichtigung des class action settlement, (2001), pg. 246 *et seq.*

33. Although German legal literature is inconclusive on the particular issue of whether an absent class member must opt out to preserve a German claim, it makes little difference as to whether a United States class action judgment will be granted *res judicata* effect in a German court, since German law provides a means for adequate notice to be provided to absent class members. In light of the potential benefits to shareholders of a United States action (in particular the potential award of punitive damages) it is highly likely that most class

members will elect to participate in that action.  Given the absence of German substantive law as to whether an absent class member who has failed to timely opt out of a United States class action settlement or judgment will be bound by the result of that action it seems likely that the United States class action judgment will have a *res judicata* effect in Germany.  This is particularly true given the similarities between United States securities class actions and German collective shareholders' actions.  In my opinion, it is likely that a United States securities class action settlement or judgment will have a "negative preclusive effect" in a German court.

I declare under penalty of perjury of the laws of the United States of America that the aforestated is true and correct.

Tübingen, February 11, 2003

Prof. Dr. Burkhard Hess

# Curriculum Vitae
## Prof. Burkhard Hess

| | |
|---|---|
| **Family Name:** | Hess |
| **First Name:** | Burkhard |
| **Titles:** | Professor Doctor |
| **Date of Birth:** | 17 July 1961 |
| **Nationality:** | German |
| **Civil Status:** | Married to Stephanie Wiese-Hess (since 1993), |

Children:    Franziska Barbara, born 3/6/1996

Oskar Friedrich, born 3/30/2002.

**Education:**

| | |
|---|---|
| 1980 | Abitur (High school leaving certificate qualifying for admission to university) |
| 1981-1986 | Universities of Wuerzburg, Lausanne (Switzerland) and Munich |
| 1987 | Federal State of Bavaria |
| | Degree: First State Exam in Law (with distinction) |
| 1990 | Degree: Doctor Juris (J.S.D) University of Munich |
| | Faculty award for the Doctoral degree |
| 1992 | Federal State of Bavaria |
| | Degree: Second State Exam in Law(with distinction) |
| 1996 | University of Munich |
| | Habilitation Dr. Jur habil. |

**Professional Experience Record:**

| | |
|---|---|
| 1996 - to date | Professor of Law (Chair of Civil Law and Procedure, Private International Law and Transnational Litigation) Eberhard-Karls-University Tuebingen (Germany) |
| 2000 - 2002 | Dean of the Faculty of Law, University of Tuebingen |
| 1996 | Professor of Law at the University of Erlangen-Nuernberg |
| 1995-1996 | Professor of Law at the University of Erlangen-Nuernberg (interim appointment) |
| 1988-1995 | Assistant Professor working at the chair of Prof. Dr. Peter Schlosser (Civil Law and Procedure, International and Comparative Procedural Law, University of Munich |
| 1987 | Research Assistant of Prof. Dr. B. Simma  Public International Law and European Law (University of Munich) |
| | |
| August 2000: | Guest Professor (Comparative Procedural Law) Renmin University Beijing/China. |
| July 2002 | Offer of a professorship at Heidelberg University, Germany |
| August 2002 | Offer of a professorship at Munich University, Germany |
| December 2002 | Acceptance of the professorship at Heidelberg University. |

**Membership of Professional Bodies:**

Member of the board of the German Association of International Procedural Law

International Association of Procedural Law

German Association of Procedural Law

German Association of Civil Law

German Association of International Law

**Languages:** French, English