UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| DRYWALL ACOUSTIC LATHING AND INSULATION LOCAL 675 PENSION FUND, Individually and On Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>vs.<br><br>MOLSON COORS BREWING COMPANY, et al.,<br><br>              Defendants. | Civil Action No. 1:05-cv-00294-KAJ<br><br>CLASS ACTION |

[Caption continued on following page.]

**SUPPLEMENTAL SUBMISSION OF THE PLUMBERS NATIONAL PENSION FUND IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF ITS SELECTION OF LEAD AND LIAISON COUNSEL**

| | |
|---|---|
| ROSENTHAL, MONHAIT, GROSS<br>  &amp; GODDESS, P.A.<br>NORMAN M. MONHAIT (#1040)<br>CARMELLA P. KEENER (#2810)<br>Citizens Bank Center, Suite 1401<br>919 North Market Street<br>Wilmington, DE 19801<br>Telephone: 302/656-4433<br>302/658-7567 (fax)<br><br>[Proposed] Liaison Counsel | LERACH COUGHLIN STOIA GELLER<br>  RUDMAN & ROBBINS LLP<br>WILLIAM S. LERACH<br>DARREN J. ROBBINS<br>LAURA M. ANDRACCHIO<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Telephone: 619/231-1058<br>619/231-7423 (fax)<br><br>[Proposed] Lead Counsel for Plaintiffs |

**NOVEMBER 4, 2005**

| | |
|---|---|
| BRENT W. KLOS, Individually and On Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>vs.<br><br>MOLSON COORS BREWING COMPANY, et al.,<br><br>            Defendants. | Civil Action No. 1:05-cv-00317-KAJ<br><br><u>CLASS ACTION</u> |
| DAVID SILVER, Individually and On Behalf of All Others Similarly Situated,<br><br>            Plaintiff,<br><br>vs.<br><br>MOLSON COORS BREWING COMPANY, et al.,<br><br>           Defendants. | Civil Action No. 1:05-cv-00324-KAJ<br><br><u>CLASS ACTION</u> |

The Plumbers National Pension Fund (the "Plumbers Fund") respectfully submits this supplemental submission in accordance with the directive of the Court at the October 28, 2005 oral argument on the motions for appointment as Lead Plaintiff and approval of selection of Lead and Liaison Counsel (the "October 28, 2005 Hearing").[1]

I. **PRELIMINARY STATEMENT**

At the October 28, 2005 Hearing, and in all of its prior briefing, the Plumbers Fund raised numerous concerns about the appropriateness of appointing Metzler Investment GmbH ("Metzler") as a lead plaintiff to represent the interests of the Class in this action. Specifically, questions were asked about Metzler's authority and standing to bring this action since it is an investment advisor based in Germany that has not made an adequate showing that it is authorized to act on behalf of its clients, the actual owners of the accounts that Metzler is seeking to represent here. Moreover, concerns about Metzler's foreign status and the *res judicata* effect of any judgment in this action were also discussed.

Although the Plumbers Fund believes that these issues on their own are a sufficient basis for denying Metzler's motion, the Plumbers Fund, as directed by the Court at the October 28, 2005 Hearing, has now discovered additional factual information which further demonstrates Metzler's inadequacy to serve as lead plaintiff. For example, although numerous representations have been made by Metzler that it has provided the Court with all of its transactions in shares of Molson Coors which relate to this action, as set forth herein in more detail, ***at least one*** of its funds, the Metzler International Growth Fund, has ***at least one***

---

[1] References to the Transcript of the October 28, 2005 Hearing, a copy of which is attached hereto as Exhibit A, are referred to as "Tr. at ___."

undisclosed trade of Molson Coors stock (and possibly others) that was never disclosed. As such, its full and complete financial interest in this action is unknown.

Moreover, the Court also questioned whether the arguments that the Plumbers Fund raised concerning Metzler had "any basis in reality" (Tr. at 39) *i.e.*, would these issues really be raised by defendants at the class certification stage of the case? As set forth herein, issues regarding a proposed class representative's adequacy and typicality are routinely litigated between plaintiffs and defendants, especially when the proposed class representative is an investment advisor similar to Metzler. *See e.g., In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002).

Lastly, Metzler has still not provided any documentary evidence, such as a client agreement, that demonstrates its authority to seek appointment as a lead plaintiff. As previously explained, aside from providing Metzler with authority to act on its behalf in legal matters, any agreement should necessarily provide Metzler with explicit permission to seek appointment as lead plaintiff or some indication from its clients that they have authorized Metzler to litigate this case on their behalf. Absent such explicit permission, or knowledge on behalf of Metzler's clients, there can be no assurances that Metzler will able to fulfill its fiduciary obligations to the class. Indeed, as far as Plumbers Fund's counsel can tell from a review of the dockets in the cases listed in Metzler's papers, Metzler has never before been certified as a class representative and has never achieved any recovery for any class of investors.

In light of all of these concerns regarding Metzler, the Plumbers Fund respectfully submits that Metzler's motion should be denied. Alternatively, as the movant with the next largest financial interest (and as a movant who is also otherwise adequate and typical), the Plumbers Fund, who recently achieved a $150 million recovery for the class in the securities

class action against TXU Corp., respectfully requests that the Court appoint it as a co-Lead Plaintiff and its counsel as co-Lead Counsel, an arrangement that has been *sua sponte* proposed by other courts in situations such as the one present here.

II.     **ARGUMENT**

     A.     **METZLER HAS NOT SATISFIED THE PSLRA'S REQUIREMENTS FOR APPOINTMENT AS LEAD PLAINTIFF**

          1.     **Metzler Has Failed to Disclose All of Its Transactions During the Class Period**

One of the most fundamental requirements in seeking to serve as a representative of a class in a securities class action is for a movant to file a certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv). Once this information is provided, the Court is then able to determine which of the competing movants represents the "largest financial interest."

An examination of the certification filed in support of Metzler's motion, and of the subsequently-filed Declaration of Metzler Investment GMBH in Support of the Motion of the Molson Coors Institutional Investors Group for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (the "Metzler Declaration"), dated July 29, 2005, makes this analysis by the Court exceedingly difficult, if not at all impossible.

Indeed, the full scope of Metzler's financial interest remains unknown because, to this day, not all of its trades have been disclosed, despite numerous representations that they have been.[2] As set forth in the attached Halbjahresberichte (half-year or semi-annual

---

[2] Specifically, paragraph 3 of the Metzler Declaration states that "none of Metzler's other funds transacted in Molson securities." This representation was repeated by Metzler's

reports) (attached hereto as Exhibit B), Metzler's International Growth Fund purchased (or held) 3,000 shares of Molson Coors stock from the beginning of 2005 through the end of the first quarter of 2005.[3] *See also* Declaration of Sylvia Sum, filed as Exhibit E hereto (translating the relevant section of the Half Year Report). Those shares are not disclosed anywhere on Metzler's certification or in its Declaration. Indeed, no reference is made anywhere to *any* shares being purchased by Metzler's International Growth Fund or any funds other than MI-Fonds 208 or MI-Fonds 705.[4] Thus, since there can be no assurances that all of Metzler's purchases or sales have been fully disclosed, it is simply impossible to accurately determine what its financial interest in this litigation is.

Aside from all of the other critical concerns that have been raised about Metzler's adequacy to serve as a lead plaintiff, its failure to comply with this most basic requirement, so that the Court should be able to accurately determine its financial interest, is also a basis for denying its motion.

### 2. Defendants Routinely Raise Questions About a Proposed Class Representative's Adequacy and Typicality to Serve as a Class Representative

In response to this Court's inquiry, the arguments articulated in open court and in Plumbers' other submissions attacking the adequacy of Metzler to serve as a lead plaintiff

---

counsel at the October 28, 2005 Hearing as well: "We've also included a paragraph three of the affidavit that none of Metzler's other funds transacted in Molson securities." Tr. at 55.

[3] Regardless of whether those shares were purchased on the open market or held throughout the merger, they are covered by this action and, in accordance with the explicit terms of the PSLRA, were required to have been disclosed.

[4] Metzler Investment Growth Fund does not appear to be either MI-Fonds 208 or MI-Fonds 705 since neither one of those funds has reported any trade for a similar 3,000 shares of Molson Coors stock.

are very "real[]"[5] and are routinely raised by defendants at the class certification stage. Although Metzler has yet to be proposed as a class representative in any of the cases in which it is currently serving as a lead plaintiff, other courts have been confronted with deciding these issues for other proposed class representatives. For example, in *Turkcell*, the court refused to certify an investment advisor as a class representative who did not invest any of its own assets alongside that of its clients. *See* 209 F.R.D. at 357; *see also In re Merrill Lynch Sec. Litig.*, 191 F.R.D. 391 (D.N.J. 1999) (denying motion for class certification where proposed class representatives were not typical or adequate of the class); *Bank v. Electronic Payment Services, Inc.*, 1997 U.S. Dist. LEXIS 21021, *52 (D. Del. Dec. 30, 1997) (denying certification of a proposed class representative who "has not and cannot satisfy the typicality prerequisite in Rule 23(a)(3)"). Thus, not only is there a very real chance that defendants' counsel will vigorously argue against the certification of Metzler as a class representative, but in light of the holdings of courts that have considered these issues, they would be remiss in their duties to their clients if they did not advance such arguments.

        **3.    Metzler Has Still Not Demonstrated Its Clients' Knowledge of this Lawsuit or That It Has Been Explicitly Authorized to Seek Appointment as Lead Plaintiff**

To date, Metzler has not provided any indication that its clients know about or authorized this litigation.[6] Metzler has also failed to provide an investment agreement for

---

[5]    "In short, I want to know whether the prediction that Mr. Rosenfeld is giving to me, that when it comes to it, Mr. Richards [counsel for defendants] will be making the same arguments with more force, has any basis in reality, given what has gone before. That's not to say it couldn't happen, but is there really a record of anything that would indicate that that is the case." Tr. at 39

[6]    In order for an investment advisor to have standing, "the transactions must have been executed as if by a single person. Moreover, the advisor must be the attorney in fact for his

any of the funds that it purports to represent granting it the explicit "right to institute legal action on their behalf, including serving as lead plaintiff in this action."[7] Metzler Declaration ¶4.

Nevertheless, even if an investment agreement would be produced which would provide Metzler with general legal authority to act on behalf of the funds (and no such agreement has been produced), it is unreasonable to assume that such authority would extend to Metzler's right to sue in a securities class action on behalf of the funds. Indeed, the United States Supreme Court has described class action lawsuits as a "nontraditional form of litigation," *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 402 (1980), such that Metzler's active participation in a class action is certainly beyond the contemplated scope of any legal authority that the funds might have assigned to Metzler. Moreover, the law in Germany provides that the party that loses the litigation is required to pay the reasonable court costs and attorneys' fees of the victor. *See "The Legal Theory Of Attorney Fee Shifting: A Critical Overview"* Thomas D. Rowe, Jr., 1982 Duke L.J. 651, n.9. That being the case, any lawsuit that Metzler initiated on behalf of its clients in Germany could potentially expose its clients

---

clients, and he ***must be granted both unrestricted decision-making authority and the specific right to recover on behalf of its clients***." *See In re eSpeed, Inc. Sec. Litig.*, 05-cv-2091 (S.D.N.Y. July 13, 2005) (emphasis added).

[7] Moreover, it is unclear if the original certification filed in support of Metzler's motion was properly authorized within Metzler. That certification was signed by Stefan Gayk and Stefanie Buchmann and stated, among other things, that "[a]s Deputy Director and Legal Counsel, we have been duly authorized by Metzler to commence litigation against Molson Coors . . . ." Subsequently, Metzler filed a Declaration signed by Matthias Plewnis and Stefanie Buchmann in which they stated that "[a]s authorized signatories, we are fully authorized to represent the Funds in all legal actions that arise from their investments, including serving as lead plaintiff in this action." Declaration at ¶5. This change in signatories raises a serious concern that Stefan Gayk, the original (and first) signatory of the certification, was not necessarily an "authorized signatory" when he sought to act on Metzler's behalf in indicating Metzler's interest in serving as a lead plaintiff.

to an assessment of costs and fees. Thus, it is highly unlikely that Metzler's clients would knowingly give it "carte blanche" authority to pursue litigation on its behalf.

### 4. Alternatively, the Court should Appoint Co-Lead Plaintiffs and Co-Lead Counsel

In light of all of the serious concerns that have been raised about the appointment of Metzler as a lead plaintiff,[8] if the Court nevertheless finds it appropriate to grant Metzler's motion, Plumbers respectfully submits that the Court should, at the very least, appoint Plumbers as a co-lead plaintiff and its counsel as co-lead counsel. In similar instances of where lead plaintiff movants with the largest claimed financial interest have had concerns raised about their ability to best serve the class, courts have appointed a competing movant as a co-lead plaintiff and their counsel as co-lead counsel. *See Pirelli Armstrong Tire Corp. v. LaBranche & Co.*, 03 Civ. 8264 (RWS) (S.D.N.Y. May 27, 2004) (appointing competing movants as co-lead plaintiffs and their counsel as co-lead counsel because the court was concerned about the ability of the investor with the largest financial interest to adequately represent the class); *see also Malasky vs. IAC/Interactive,* 04 Civ. 7447 (RJH) (S.D.N.Y. Mar. 7, 2005) (same), *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, 2000 U.S.

---

[8] Indeed, if Metzler is not certified at the class certification stage of the litigation – a very real possibility – the class will be left without a leader and will suffer as a result. The risk to the class is perhaps best illustrated by the recent decision in *In re Sonus Networks, Inc. Sec. Litig.*, Civ. A. No. 02-11315, 2005 U.S. Dist. LEXIS 16910 (D. Mass. Aug. 12, 2005), where the district court certified the case as a class action with Anthony Scibelli as the *sole* class representative. Subsequent thereto, it was revealed that Scibelli had been convicted of crimes. On April 15, 2005, defendants submitted a memorandum and supporting affidavits arguing that Scibelli should be removed as class representative. The court agreed, decertifying the class and stating, "this case now lacks a lead plaintiff and class representative." A class action cannot be maintained without a "representative[] party [who] will fairly and adequately represent the interests of the class." *See* Fed. R. Civ. P. 23(a)(4). The class should not be subjected to the same risk here. Therefore, for the benefit of the class, Metzler should not be entrusted as the *sole* lead plaintiff.

Dist. Lexis 5481 (D. N.J. Apr. 24, 2000) (same) and *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) (same). Moreover, two other recent cases in the Southern District of New York, *In re JAKKS Pacific, Inc.*, 04-cv-8807 (KMK) (S.D.N.Y. May 11, 2005)(attached hereto as exhibit C) and *Broekhuizen v. China Life*, 04 Civ. 2112 (TPG) (S.D.N.Y. Sept. 14, 2004) (attached hereto as exhibit D), not only reached this same conclusion, but also appointed the same two law firms who are representing the movants in this action as co-lead counsel: Lerach Coughlin and Milberg Weiss.[9]

## III.  CONCLUSION

For the reasons set forth above, in the Plumbers Fund's prior submissions and as stated in oral argument at the October 28, 2005 Hearing, the motion of the Plumbers Fund should be granted in full. Alternatively, the Court should appoint the Plumbers Fund as a co-lead plaintiff and its counsel as co-Lead Counsel.

DATED:  November 4, 2005            ROSENTHAL, MONHAIT, GROSS
                                    & GODDESS, P.A.


                                    /s/ Carmella P. Keener
                                    Carmella P. Keener (DSBA No. 2810

                                    Citizens Bank Center, Suite 1401
                                    919 North Market Street
                                    Wilmington, DE  19801
                                    Telephone: 302/656-4433
                                    302/658-7567 (fax)

                                    [Proposed] Liaison Counsel

---

[9]   For the reasons discussed at the October 28, 2005 Hearing, any assertion that Dry Wall should be appointed as a co-lead plaintiff should be rejected out of hand ("I'm looking at Metzler. I'm looking at Plumbers." Tr. at 12). Moreover, there is nothing in the record which demonstrates that Dry Wall was even aware that it had been put forward with Metzler as a co-lead plaintiff. Plumbers, by contrast, has agreed to move forward with Metzler, if necessary, to ensure that the interests of the Class are sufficiently protected.

- 9 -

                LERACH COUGHLIN STOIA GELLER
                  RUDMAN & ROBBINS LLP
                WILLIAM S. LERACH
                DARREN J. ROBBINS
                LAURA M. ANDRACCHIO
                655 West Broadway, Suite 1900
                San Diego, CA 92101
                Telephone: 619/231-1058
                619/231-7423 (fax)

                LERACH COUGHLIN STOIA GELLER
                  RUDMAN & ROBBINS LLP
                ELISE J. COHEN
                9601 Wilshire Blvd., Suite 510
                Los Angeles, CA 90210
                Telephone: 310/859-3100
                310/278-2148 (fax)

                [Proposed] Lead Counsel for Plaintiffs