# EXHIBITS A - B

# EXHIBIT A

LEXSEE 2006 U.S. DIST LEXIS 2345

In re MERCK CO., INC., SECURITIES, DERIVATIVE & "ERISA" LITIGATION

Civil Action No. 05-1151 (SRC), 05-2367 (SRC)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

2006 U.S. Dist. LEXIS 2345

January 20, 2006, Decided
January 20, 2006, Filed

**NOTICE:** [*1] NOT FOR PUBLICATION

**SUBSEQUENT HISTORY:** Motion granted by, Complaint dismissed at *In re Merck & Co., Inc. Derivative & ERISA Litig.*, 2006 U.S. Dist. LEXIS 27861 (D.N.J., May 5, 2006)

**COUNSEL:** For JEROME HABER, STEVEN LEVAN, MARC NATHANSON, RICHARD REYNOLDS, Plaintiffs: DAVID A.P. BROWER, MARK LEVINE, COUNSEL NOT ADMITTED TO USDC-NJ BAR, STULL, STULL & BRODY, ESQS., NEW YORK, NY; PETER S. PEARLMAN, COHN, LIFLAND, PEARLMAN, HERRMANN & KNOPF, LLP, SADDLE BROOK, NJ; PAUL B. BRICKFIELD, BRICKFIELD AND DONAHUE, RIVER EDGE, NJ.

For MERCK & CO, INC., ALISE S. REICIN, ANNE M. TATLOCK, BERNARD J. KELLEY, CAROLINE DORSA, CELIA COLBERT, DAVID W. ANSTICE, HEIDI G. MILLER, JOHNNETTA B. COLE, JUDY C. LEWENT, KENNETH C. FRAZIER, LAWRENCE A. BOSSIDY, LINDA M. DISTLERATH, LLOYD C. ELAM, PER G.H. LOFBERG, PER WOLD-OLSEN, PETER S. KIM, RAYMOND V. GILMARTIN, RICHARD C. HENRIQUES, RICHARD T. CLARK, SAMUEL O. THIER, THOMAS E. SHENK, WILLIAM B. HARRISON, WILLIAM G. BOWEN, WILLIAM N. KELLEY, Defendants: ROBERT H. BARON, COUNSEL NOT ADMITTED TO USDC-NJ BAR, CRAVATH SWAINE & MOORE, LLP, NEW YORK, NY; ROBERTA KOSS, WILLIAM R. STEIN, COUNSEL NOT ADMITTED TO USDC- NJ BAR, HUGHES HUBBARD & REED, LLP, WASHINGTON, DC.

For ACE AMERICAN INSURANCE COMPANY, Defendant: WILLIAM D. WILSON, MOUND, COTTON & WOLLAN, NEWARK, NJ.

For ACE BERMUDA INSURANCE LTD., Defendant: DAREN [*2] S. MCNALLY, CONNELL FOLEY, LLP, ROSELAND, NJ.

For AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, NORTH ROCK INSURANCE CO. LTD., Defendants: PAUL C. VITRANO, ROSS, DIXON, & BELL, LLP, WASHINGTON, DC.

For ARCH REINSURANCE LTD., Defendant: BRETT L. MESSINGER, DUANE MORRIS, LLP, PHILADELPHIA, PA.

For AXIS REINSURANCE CO., AXIS SPECIALTY LTD., Defendants: JONATHAN S. REED, TRAUB, EGLIN, LIEBERMAN & STRAUS, LLP, EDISON, NJ.

For EDWARD SCOLNICK, Defendant: MARTIN L. PERSCHETZ, SUNG-HEE SUH, WILLIAM HAYWARD GUSSMAN, JR., COUNSEL NOT ADMITTED TO USDC-NJ BAR, SCHULTE, ROTH & ZABEL, LLP, NEW YORK, NY; LAWRENCE M. ROLNICK, SHEILA A. SADIGHI, LOWESTEIN SANDLER, PC, ROSELAND, NJ; SALLY ANNE MULLIGAN, LOWENSTEIN SANDLER, ROSELAND, NJ.

For FEDERAL INSURANCE CO., Defendant: STEVEN F. GOOBY, DLA PIPER RUDNICK GRAY CARY US LLP, EDISON, NJ.

For HOUSTON CASUALTY CO., Defendant: ANTHONY J. LAPORTA, WHITE & WILLIAMS, LLP, PARAMUS, NJ.

For MAX RE LTD., XL INSURANCE SWITZERLAND, Defendants: NATALIE GARCIA,

LANDMAN, CORSI, BALLAINE & FORD, PC, NEWARK, NJ.

For SR INTERNATIONAL BUSINESS INSURANCE CO. LTD., Defendant: JOANNA L. CROSBY, TRESSLER, SODERSTROM, MALONEY [*3] & PRIESS, ESQS., NEWARK, NJ.

For STEADFAST INSURANCE CO., ZURICH AMERICAN INSURANCE CO., Defendants: STEFANO V. CALOGERO, CUYLER BURK LLP, PARSIPPANY, NJ.

For TWIN CITY FIRE INSURANCE CO., Defendant: JOHN B. MULLAHY, TIMOTHY E. MCCARTHY, KAUFMAN BORGEEST & RYAN LLP, PARSIPPANY, NJ.

For XL INSURANCE (BERMUDA), Defendant: MARC B. ZINGARINI, WEBER, GALLAGHER, SIMPSON, STAPLETON & FIRES, LLP, CHERRY HILL, NJ; MICHAEL S. SAVETT, WEBER, GALLAGHER, SIMPSON, STAPLETON, FIRES & NEWBY, LLP, CHERRY HILL, NJ.

JUDGES: HONORABLE TONIANNE J. BONGIOVANNI, UNITED STATES MAGISTRATE JUDGE.

OPINIONBY: TONIANNE J. BONGIOVANNI

OPINION:

### LETTER OPINION AND ORDER

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon formal motion by Plaintiffs for the securities litigation (hereinafter Plaintiffs) seeking: (1) to strike 139 of 172 exhibits attached to the Declaration of Robert H. Baron in Support of Defendants' Motion to Dismiss the Corrected Consolidated and Fourth Amended Class Action Complaint (hereinafter "the Baron Declaration"), as well as the Memorandum of Law in Support of Defendants' Motion to Dismiss; or in the alternative (2) to have Defendants' Motion to Dismiss [*4] converted to a Motion for Summary Judgment pursuant to *FED. R. CIV. P. 12(b)* [Docket Entry # 35 for Civil Action No. 05-2367]. Defendants' object to Plaintiffs' Motion. For the foregoing reasons, Plaintiffs' Motion shall be DENIED.

*Plaintiffs' Motion in Summary*

Plaintiffs place at issue 139 of the 172 exhibits Defendants attached to the Baron Declaration in support of their Motion to Dismiss. n1 Plaintiffs argue that the 139 exhibits in question are extraneous and go beyond the contents of the complaint, in contradiction to *FED. R. CIV. P. 12(b)* and subsequent judicial holdings. Because these exhibits are neither explicitly referenced or quoted in Plaintiffs' Complaint, nor otherwise fall into any exception to *Rule 12(b)* and its progeny, Plaintiffs argue that the 139 exhibits should be stricken.

> n1 Plaintiffs' originating Motion had placed at issue 152 exhibits. Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion withdrew their objection to Exhibits 14, 15, 16, 17, 18, 19, 54, 55 and 56 (previously filed securities complaints against Merck). Additionally, Plaintiffs indicated that they would not object to the submission of Exhibits 23, 24, 25 and 33 (tort complaints filed against Merck) if Plaintiffs were permitted to submit Merck's answers to those complaints, which the Court shall so order. As such, the aforementioned exhibits are no longer at issue.

[*5]

Additionally, Plaintiffs argue that because Defendants' Memorandum of Law in support of their Motion to Dismiss is so laden with references to the 139 exhibits in question, that the Memorandum of Law should be stricken as well, and Defendants instructed to redraft their Memorandum of Law removing all references to the 139 exhibits.

Alternatively, should the Court not strike the 139 exhibits, this Court should convert Defendants' Motion to Dismiss to a Motion for Summary Judgment as so instructed under *FED. R. CIV. P. 12(b)*, and permit Plaintiffs to proceed with discovery so that they may properly respond to the convert Motion for Summary Judgment.

*Defendants' Opposition in Summary*

Defendants' object to Plaintiffs' Motion to Strike or alternatively, to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment. Defendants' argue that Plaintiffs' Motion to Strike was simply a diversionary tactic to obfuscate Defendants' contestation that Plaintiffs' Complaint is barred by the applicable statute of limitations, which is Defendants' basis for their Motion to Dismiss.

Defendants' substantively argue three separate bases [*6] to justify the submission of the 139 exhibits in question. First, Defendants argue that the exhibits are subject to mandatory judicial notice as public documents not being offered for the truth of their contents pursuant to *F.R.E. 201(d)*. Second, Defendants argue that the ex-

Case 1:05-cv-00294-GMS    Document 74-2    Filed 06/23/2006    Page 5 of 19

2006 U.S. Dist. LEXIS 2345, *                                                          Page 3

hibits may be considered by the Court because they are either explicitly quoted or referenced in the Complaint, or because the allegations in the Complaint are based upon the challenged exhibits. Defendants' third and final argument is that the exhibits in question are integral to Plaintiffs' Complaint as Plaintiffs' invoke the "fraud on the market doctrine" which allows a court to consider what was publicly available to the market at the time of the allegedly fraudulent conduct.

## The Law

### The 12(b)(6) Standard

In deciding a motion to dismiss under *FED. R. CIV. P. 12(b)(6)* all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998);* [*7] *Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984)*. In evaluating a *Rule 12(b)(6)* motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. See *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)*. If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984); Zynn v. O'Donnell, 688 F.2d 940, 941 (3d Cir. 1982)*.

### The Four Corners Doctrine

*FED.R.CIV.P. 12(b)* specifically circumscribes material that a court may consider in a motion to dismiss by stating, in pertinent part: "If, on a motion asserting the defense number (6) to dismiss, . . .matters outside the pleading are [*8] presented and not excluded by the court, the motion shall be treated as one for summary judgment . . ." As such, a court generally may not "consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)*. There are two exceptions to the general rule, however. Documents which are integral to the complaint and documents of which a court may take judicial notice.

### Documents Integral to the Complaint

The first exception to the four corners doctrine allows a court to consider documents that can be considered "integral" to the referencing complaint. Id. Integral documents are defined as documents which create the rights or duties that are the basis for the Complaint. *Id. at 1196*. A typical example is a civil action alleging contractual breach where the actual contract has not been annexed to the complaint. In such cases, the contract would be considered integral and a defendant filing a motion to dismiss under *Rule 12(b)(6)* would be permitted to attach the contract as an exhibit, which would then be considered for its truth by the court. See *Burlington Coat at 1426* (finding that where a complaint [*9] relied on certain data in support of claims alleged, but did not attach the source of the data, a court could consider that source if provided by defendants in a motion to dismiss).

### Judicial Notice of Public Records

The second exception to the four corners doctrine allows a court to "take judicial notice of public records." See *Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000)*, see also *In re ATI Tech., Inc. Sec. Litig., 216 F. Supp. 2d 418, 430 (E.D.Pa. 2002)*. Federal Rule of Evidence 201, et seq. is the cornerstone of judicial notice, and it states, in relevant part:

> Judicial Notice of Adjudicative Facts - F.R.E. 201(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Should a document be judicially noticed, said document "may only be considered for the limited purpose of showing that a particular statement [*10] was made by a particular person" and not "for the truth of the matters purportedly contained within those documents." *Oran at 289* (quoting *Kramer v. Time Warner, 937 F.2d 767, 774 (2d Cir. 1991))*. If a court were to consider and judicially notice documents for their truth it would be, in essence, authorizing a trial by public documents, impermissibly expanding the scope of a *Rule 12(b)(6)* motion. *In Re Viropharma, Inc., 2003 U.S. Dist. LEXIS 5623, 2003 WL 1824914 (E.D.Pa. 2003)*.

Courts have held "public records" to include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, or any "concededly authentic document upon which the complaint is based . . ." *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993)*. Additionally, courts have found public disclosure documents required by law to be filed with the SEC are capable of judicial notice (*Kramer v. Time Warner, 937 F.2d 767, 774 (2d Cir. 1991))*, as well

as opening and closing stock prices (*Ieradi v. Mylan Lab., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000)).

[*11] *Analysis*

This Court shall adopt the categorization of exhibits as illustrated in Plaintiffs' Declaration of Bruce D. Berstein, Exhibit 1.

### FDA Material (Exhibits 2, 7, 8, 10, 27, 28, 52, 53)

Plaintiffs' seek to strike all annexed exhibits related to FDA materials by Defendants in their Motion to Dismiss. Plaintiffs argue that the FDA material offered by Defendants should be stricken because they include: (1) transcripts of an FDA Advisory Committee Meeting which have not been identified as authentic; (2) extraneous FDA documents which are not official actions or decisions of the agency; (3) material submitted to the FDA by Defendants themselves; (4) scientists' opinions; and (5) documents offered for their truth.

Defendants counter that none of the FDA exhibits are being offered for their truth, but rather, as a demonstration that such statements were made by certain people. Additionally, Defendants argue that Exhibit 2 ("FDA Advisory Committee Briefing Document" dated February 8, 2001) is specifically referenced in Plaintiffs' Complaint, allowing for its consideration for not only its existence, but also for its truth.

The Court recognizes that there is a distinction [*12] between official releases by an administrative body and supporting documents which are submitted by other sources and merely considered by an agency in its decision-making process. Merely because the agency in question makes available those supporting documents that they then become "records and letters of official actions or decisions of government agencies and administrative bodies." See *Arizmendi v. Lawson*, 914 F.Supp. 1157, 1160 (E.D.Pa. 1996).

There are, however, fact specific exceptions ambuscading about in case law. See *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (court refusing to judicially notice an interparty written communication because it may be subject to disclosure under FOIA, indicating a different result has a FOIA request been made and granted); see also *Mullen v. Topper's Salon and Health Spa, Inc.*, 99 F.Supp.2d 553 (E.D.Pa. 2000) (an EEOC charge of discrimination by Plaintiff found to be an administrative filing was to be considered part of the public record) citing *Fosburg v. Lehigh University*, 1999 U.S. Dist. LEXIS 2833, 1999 WL 124458 at 2 (E.D.Pa. 1999); [*13] *In re Guidant Corp. Sec. Litig.*, 2004 U.S. Dist. LEXIS 22809, 2004 WL 2538374 at *9, n.20 (S.D.Ind. 2004) (medical device reports filed with the FDA considered on a motion to dismiss); *In re Viropharma, Inc.*, 2003 U.S. Dist. LEXIS 5623, 2003 WL 1824914 at *1 (E.D.Pa. 2003) (rejecting statements made by Viropharma to the FDA for their truth).

Additionally, it is undeniable that all of Defendants' FDA exhibits are readily viewable by the public when the appropriate web address is entered. The FDA commonly offers submissions it receives from outside sources, and offers them publicly which alleviates a need for a FOIA request.

A final consideration for the court is the Defendants plain assertion that none of the FDA exhibits they have exhibited are being offered for their truth, thereby limiting the impact the documents in question can make in the District Court's deliberation regarding Defendants' Motion to Dismiss. Because the exhibits will not be considered for their truth, and because supporting documentation to administrative agencies have been judicially noticed, this Court shall take judicial notice of all FDA exhibits propounded by Defendants, except for Exhibit 2, which shall be substantively adopted. [*14]

### Charts "Purporting" to Set Forth Insider Trading of Defendant Merck's Stock (Exhibits 35 though 51)

Plaintiffs next object to the charts by Defendants setting forth the insider trading transactions in Merck stock. Plaintiffs allege that these exhibits cannot fall under the SEC filing exception to a motion to dismiss because they are not SEC filings and because a third-party created them.

Defendants disagree and argue that the charts are summaries of information taken directly from the publicly available SEC Forms 4 and 5 for each listed individual. Defendants further argue that because the charts in question fall within the SEC filing exception, and because Plaintiffs utilize similar charts to summarize other Defendant Merck transactions in their Complaint, that the charts should be incorporated and should be considered for their truth. Lastly, Defendants argue that no third-party was employed by Defendants to create the charts, but rather, the name cited at the bottom of each chart is an online service used to obtain SEC Forms 4 and 5 for each charted individual.

*Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) states in plain terms that a court may [*15] take judicial notice of SEC filings. It is also without dispute that SEC Forms 4 and 5 are in fact SEC filings as contemplated by Oran. What remains at issue is whether the District Court can consider informational charts as "sources whose accuracy cannot reasonably be questioned" (F.R.E. 201(b)(2)) for purposes of judicial notice or, as Defendants would prefer the Court find, whether the information is "integral to" Plaintiffs' Complaint (*In re Burling-*

ton *Coat Factory Sec. Litig.*, 114 F.3d 1510 (3d Cir. 1997)), allowing for the charts substantive consideration by the District Court.

It is clear that Plaintiffs rely on a similar charting process to demonstrate Defendants' transactions in Merck stock in Plaintiffs' Complaint (See Complaint, P394(a)-(p)). Plaintiffs' also dedicate a five paragraph section of their Complaint on SEC filings to support a claim of scienter by Defendants regarding insider trading by Merck employees (Complaint, PP394-99). The fact that the SEC forms submitted by Defendants in their Motion to Dismiss are in chart summary form does not dissuade as they were not crafted by a third-party and as Plaintiffs [*16] will be permitted to challenge their veracity if they so choose.

As such, Defendants' charts may be substantively considered in support of their Motion to Dismiss as integral to Plaintiffs' theory of reliance as they purport comparable evidence previously offered by Plaintiffs in support of their civil action. *In re Sec. Litig. BMC Software, Inc.*, 183 F.Supp.2d 860, 884 (S.D.Tex. 2001) (allowing incorporation by reference of SEC Forms 4 and 5 though not explicitly mentioned in complaint because they are integral to plaintiff's allegations); *Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1352, n.3 (S.D.Cal. 1998) (taking judicial notice of SEC Forms 4 and 5 on a motion to dismiss).

***Scientific and Medical Literature, New Articles, Analyst Reports and Composite Charts (Exhibits 4, 9, 29-32, 57-72, 74-87, 90-99, 101-109, 111-113, 115-121, 123-140 and 142-172)***

Plaintiffs next contend that the 32 science/medical submissions, 40 news stories and 39 analyst reports should be stricken because these documents are not referenced in the Complaint, nor are they the types of documents considered to be public records.

Defendants argue that this Court may indeed [*17] take judicial notice of Exhibits 4, 9, 29-31, 60-72 and 74-87 specifically because they are available on Westlaw and Lexis, making them self-authenticating, and because they demonstrate inquiry notice by Plaintiffs in support of Defendants' contention in their Motion to Dismiss that the Plaintiffs' claims are time barred as being brought outside the applicable statute of limitations. Defendants also allege that the public information about Merck and VIOXX is integral to Plaintiffs' Complaint because Plaintiff invokes the "Fraud on the Market Doctrine" which allows courts to consider what was publicly available to the market at the time of the allegedly fraudulent conduct.

Law in the Third Circuit has recently crystalized which permits judicial notice of the newspaper articles submitted by Defendants, and by implication the science and medical literature and analyst reports as well. Specifically, in *Benak v. Alliance Capital Mgmt. L.P.*, 349 F.Supp.2d 882, 889 n.8 (D.N.J. 2004), the District Court had held that it would consider newspaper articles "notwithstanding their absence from the Complaint . . .[for purposes of inquiry notice]." The District Court dismissed [*18] the plaintiffs' complaint on defendants' motion to dismiss. The plaintiffs appealed. The decision of the Third Circuit ends the debate:

> "We review the District Court's decision to take judicial notice of certain facts for abuse of discretion. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1323. We see no basis to upset the District Court's decision to take judicial notice of newspaper articles supplied by appellees. The inquiry notice analysis is an objective one. Whether appellants read the articles or were aware of them is immaterial. They serve only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true. *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F.Supp.2d 416, 425 n.15 (S.D.N.Y. 2003) ('The Court may take judicial notice of newspaper articles for the fact of their publication without transforming the motion into one for summary judgment.'). There publication is 'not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned.' Fed. R. Evid. 201(b)(2); see *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) [*19] ('We take judicial notice that the market was aware of the information contained in news articles submitted by the defendants.')."

See *Benak v. Alliance Capital Mgmt. L.P.*, 2006 U.S. App. LEXIS 819, slip op., n.15 (3d Cir. 2006).

In light of the Third Circuit's recent determination, this Court shall take judicial notice of the 40 new stories submitted by Defendants in their Motion to Dismiss, and by implication shall also judicially notice the 32 science and medical submissions, the 39 analyst reports and the composite charts in question. This Court will not admit the exhibits for their truth, but rather, for the limited purpose of proving their existence with regards to Defen-

dants' assertions of inquiry notice for the purpose of their statute of limitations' defense, and in defense of Plaintiffs' Fraud on the Market assertions as conveyed in their (Plaintiffs) Complaint.

*Conclusion*

For the foregoing reasons, Plaintiffs' Motion to Strike Defendants' Exhibits to their Motion to Dismiss or alternatively, to convert Defendants' Motion to Dismiss to a Motion for Summary Judgment shall be denied. Defendants' Exhibits 2 and 35 though 51 shall be substantively considered [*20] as integral to Plaintiffs' Complaint and Defendants' Exhibits 4, 7 through 10, 27 through 32, 52 through 53, 57 through 72, 74 though 87, 90 through 99, 101 through 109, 111 through 113, 115 through 121, 123 through 140 and 142 through 172 shall be judicially noticed. n2

---

n2 As a necessary result of this Court's determination, Defendant Scolnick's Memorandum of Law in support of his Motion to Dismiss, as well as the Certification of Lawrence M. Rolnick and Baron's Exhibit 51 shall not be stricken.

---

20 JAN 06

**HONORABLE TONIANNE J. BONGIOVANNI**

**UNITED STATES MAGISTRATE JUDGE**

# EXHIBIT B

LEXSEE 1996 U.S. DIST. LEXIS 22506

GRACE COWIT, on behalf of herself and all others similarly situated, Plaintiff, v. ROBERTS PHARMACEUTICAL CORP., ROBERT A. VUKOVICH, ANTHONY MARIS AND ROBERT W. LOY, Defendants.

CIVIL ACTION NO. 95-1506(MLP)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

1996 U.S. Dist. LEXIS 22506; Fed. Sec. L. Rep. (CCH) P99,268

June 14, 1996, Decided
June 14, 1996, Filed: June 18, 1996, Entered

**NOTICE:** [*1] NOT FOR PUBLICATION

**DISPOSITION:** Defendants' Motion for dismissal granted in part and denied in part.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff stock purchaser, on behalf of herself and all others similarly situated, filed a claim alleging misrepresentation and fraud in connection with the purchase of stock in defendant corporation. Defendants, three principal financial offers, were also named as parties. Defendants filed a motion for dismissal of the purchaser's amended complaint under *Fed. R. Civ. P. 12(b)(6)* and for partial dismissal under *Fed. R. Civ. P. 9(b)*.

**OVERVIEW:** Defendants sought dismissal of the purchaser's claims on the basis that: (1) the complaint failed to allege an actionable misrepresentation or omission; (2) the purchaser failed to set forth any ground for alleging scienter for the alleged fraud; (3) the purchaser's claims lacked the specificity required under *Fed. R. Civ. P. 9(b)*. The court was reluctant to characterize many of the statements and omissions as misleading at this stage of the case. Many of the statements, required additional facts and a wider context to determine whether they were actionable as a matter of law. The court could not find that defendants' alleged statements and/or omissions were not actionable as a matter of law. Although several of the statements could constitute mere "puffing," others were not "so obviously unimportant" to a reasonable investor that they could not violate the securities laws. The court was not persuaded that the complaint suffered from a lack of particularity under *Fed. R. Civ. P. 9(b)*. As to whether statements by Wall Street analysts were actionable under Rule 9(b), the court found in favor of defendants and should grant the motion to dismiss based on these allegations.

**OUTCOME:** The court ordered that the motion of defendants for dismissal under *Fed. R. Civ. P. 9(b)* of that portion of the complaint based upon statements allegedly made to a Wall Street analysts be granted. The court further ordered that the motion of defendants for dismissal under *Fed. R. Civ. P. 12(b)(6)* be denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] A motion to dismiss a complaint under *Fed. R. Civ. P. 12(b)(6)* will be granted when, taking the allegations in the complaint and all reasonable inferences therefrom as true, the plaintiff can prove no set of facts, which would entitle him to relief. Legal conclusions in the guise of factual allegations, however, are not presumed to be true. The reviewing court may also consider any undisputedly authentic documents submitted with the motion if plaintiff's claims are based upon the documents.

*Securities Law > Liability > Secondary Liability > Controlling Persons > Defenses*
[HN2] See § 20(a) of the Securities Exchange Act, *15 U.S.C.S. § 78t(a)* (1988).

*Securities Law > Liability > Disclosures > Bespeaks Caution Doctrine*

Case 1:05-cv-00294-GMS    Document 74-2    Filed 06/23/2006    Page 11 of 19

1996 U.S. Dist. LEXIS 22506, *; Fed. Sec. L. Rep. (CCH) P99,268                                    Page 2

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Materiality > Questions of Fact & Law*

[HN3] In order to determine whether a plaintiff's allegations can survive a motion to dismiss, the court must analyze the statements of defendants and assess whether, in the context in which they were made, they were "material," that is, that they would have assumed actual significance in the deliberations of the reasonable shareholder. A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in deciding whether to purchase shares. Although materiality generally is a mixed question of law and fact to be decided by the trier of fact, only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are unactionable as a matter of law. The reviewing court must view a statement not in a vacuum but in the context of the entire document. The duty to read a statement in its setting has given rise to the "bespeaks caution" doctrine, which provides, when an offering document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the "total mix" of information the document provided investors.

*Securities Law > Liability > Disclosures > Bespeaks Caution Doctrine*
*Securities Law > Liability > Disclosures > Soft Information*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*

[HN4] Cautionary language, if sufficient, renders alleged omissions or misrepresentations immaterial as a matter of law in a security law case. The bespeaks caution doctrine merely restates the unremarkable proposition that while a misleading statement will not always lose its deceptive edge simply by joinder with others that are true, the true statements may discredit the other one so obviously that the risk of real deception drops to nil. As an analytical matter, the doctrine is equally applicable to allegations of both affirmative misrepresentations and omissions concerning soft information.

*Securities Law > Liability > Disclosures > Soft Information*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*
*Torts > Intentional Torts > Defamation > Defenses > Fair Comment & Opinion*

[HN5] The term soft information refers to statements of subjective analysis or extrapolation, such as opinions, motives, and intentions, or forward looking statements, such as projections, estimates, and forecasts. Opinions, predictions and other forward-looking statements are not per se unactionable under the securities laws. Rather, such statements of "soft information" may be actionable misrepresentations if the speaker does not genuinely and reasonably believe them.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Deceptive & Manipulative Devices*

[HN6] See Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.S. § 78j(b) (1981).

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Implied Private Rights of Action > Elements of Proof > Reliance > Justifiable & Reasonable Reliance*

[HN7] Securities Exchange Commission Rule 10b-5, promulgated under authority of § 10(b), makes it unlawful to make any untrue statement of a material fact or to omit to state a material fact such that prospective purchasers or sellers of securities are misled. 17 C.F.R. § 240.10b-5 (1992). Thus, to state a claim under § 10(b) and Rule 10b-5, a private plaintiff must plead (1) a false representation of (2) a material (3) fact; (4) the defendant's knowledge of its falsity and his intention that the plaintiff rely on it; (5) the plaintiff's reasonable reliance on defendant's false representation; and (6) the plaintiff's resultant economic loss. The plaintiff must plead under § 10 and Rule 10b-5 that defendants made material omissions and/or misrepresentations, that plaintiff reasonably relied on them, and that defendants acted with knowledge or recklessness.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*

[HN8] In securities actions, an omitted fact is deemed to be material if there is a substantial likelihood that, under

Case 1:05-cv-00294-GMS   Document 74-2   Filed 06/23/2006   Page 12 of 19

1996 U.S. Dist. LEXIS 22506, *; Fed. Sec. L. Rep. (CCH) P99,268

Page 3

all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. A defendant is not required to disclose all known information, but only information that is "necessary to make other statements not misleading." A court must evaluate whether the statement or omission was misleading at the time it was made. "Fraud by hindsight," in which a plaintiff tries to impose liability on management for unrealized economic predictions, is not actionable. Thus, the key issue in evaluating omissions is whether there is a substantial likelihood that the disclosure would have been viewed by the reasonable investor as having "significantly altered the 'total mix' of information" available to that investor.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*

[HN9] The whole discussion of growth of a company is plainly by way of loose prediction, and both the range of rates cited, as well as the time for their achievement, are anything but definite. No reasonable investor would rely on these statements, and they are certainly not specific enough to perpetrate a fraud on the market. Analysts and arbitrageurs rely on facts in determining the value of a security, not mere expressions of optimism from company spokesmen. The market gives the most credence to those predictions supported by specific statements of fact, and those statements are, of course, actionable if false or misleading.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Criminal Law & Procedure > Criminal Offenses > Fraud > Securities Fraud > Elements*
*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*

[HN10] Whether a particular statement or omission is "material" is a mixed question of law and fact, and the delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts is peculiarly for the trier of fact. Thus, dismissal of purported misrepresentations and omissions is generally reserved for circumstances where the alleged misrepresentations are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality.

*Securities Law > Liability > Securities Exchange Act of 1934 Actions > Express Liabilities > Misleading Statements > General Overview*

[HN11] When a company makes a public statement, it triggers a duty to include such information as would prevent the statements from misleading a reasonable investor.

*Business & Corporate Law > Corporations > Shareholders > Actions Against Corporations > Internal Corporate Affairs*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > General Overview*

[HN12] *Fed. R. Civ. P. 9(b)* requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage. Despite these stringent requirements, the courts should be sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud. They should also respect the general simplicity and flexibility of the Federal Rules of Civil Procedure. Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the particularity rule when factual information is peculiarly within the defendant's knowledge or control. Nevertheless, we also held that at the very least plaintiffs must allege that the necessary information lies within defendants' control.

**COUNSEL:** For GRACE COWIT, plaintiff: SAMUEL ROBBINS SIMON, BARRACK, RODOS & BACINE, ESQS., HADDONFIELD, NJ.

For ROBERTS PHARMACEUTICAL CORPORATION, ROBERT A. VUKOVICH, ANTHONY P. MARIS, ROBERT W. LOY, defendants: RICHARD LLOYD FRIEDMAN, GIORDANO, HALLERAN & CIESLA, P.C., MIDDLETOWN, NJ.

**JUDGES:** MARY LITTLE PARELL, United States District Judge.

**OPINIONBY:** MARY LITTLE PARELL

**OPINION:**

MEMORANDUM AND ORDER

**PARELL, District Judge**

This matter comes before the Court on motion of defendants for dismissal of the amended Complaint under *Fed. R. Civ. P. 12(b)(6)* and for partial dismissal under

Case 1:05-cv-00294-GMS    Document 74-2    Filed 06/23/2006    Page 13 of 19

1996 U.S. Dist. LEXIS 22506, *; Fed. Sec. L. Rep. (CCH) P99,268

Page 4

*Fed. R. Civ. P. 9(b)*. Plaintiff opposes the motion. For the reasons stated, the motion is granted in part and denied in part.

## BACKGROUND

This case involves allegations of misrepresentation and fraud in connection with the purchase of stock in Roberts Pharmaceutical Corporation ("Roberts"). Roberts is an international pharmaceutical company headquartered in Eatontown, New Jersey. Roberts has been a publicly traded company since 1990, and its shares are traded over-the-counter on the NASDAQ [*2] National Market System. Plaintiff names as defendants Roberts, and its three principal financial officers: President and Chairman Robert A. Vukovich; Vice-President, Treasurer and Chief Financial Officer Anthony Maris; and Chief Operating Officer Robert W. Loy. The fifty-five page amended Complaint generally alleges that during a period beginning in March and extending until at least June, 1995, defendants

employed devices, schemes, and artifices to defraud, and engaged in acts, practices, and a course of conduct while in possession of material adverse non-public information with the purpose and effect of falsely assuring investors of Roberts' value, performance, and continued substantial growth and of maintaining an artificially inflated market price for Roberts common stock. Defendants' misconduct included the making of, or the participation in the making of, untrue statements of material facts, and their failures to state material facts necessary in order to make the statements made about Roberts, its products, operating and financial condition, and future business prospects, in the light of the circumstances under which they were made, not misleading. Defendants' conduct [*3] operated as a fraud and deceit upon the purchasers of Roberts common stock during the [proposed] class period.

(Compl. P 107.)

Plaintiff seeks to have those investors who purchased Roberts stock during the class period (November 7, 1994 to May 31, 1995) certified as a class pursuant to *Rule 23 of the Federal Rules of Civil Procedure*. Plaintiff also seeks to recover damages against defendants in favor of the putative class members as well as experts' and attorneys' fees. (Id. at p. 53.)

It is undisputed that plaintiff purchased 2,000 shares of Roberts common stock on March 16, 1995, at $ 37.75 per share. On May 31, 1995 (the end of the proposed class period), the price per share had dropped to $ 19.37. Plaintiff alleges that during the period between May 2, 1995 and May 22, 1995, Vukovich engaged in "a massive insider selling program" in which he sold 235,000 shares of stock for proceeds in excess of $ 6,000,000.00 while in the possession of adverse material information not disclosed to investors. (Compl. P 6.)

Defendants seek dismissal of plaintiff's claims on the basis that: (1) the Complaint fails to allege an actionable misrepresentation or omission; (2) plaintiff [*4] has not set forth any ground for alleging scienter for the alleged fraud; (3) plaintiff's claims lack the specificity required under *Fed. R. Civ. P. 9(b)*..

## DISCUSSION

[HN1] A motion to dismiss a complaint under *Fed. R. Civ. P. 12(b)(6)* will be granted when, taking the allegations in the complaint and all reasonable inferences therefrom as true, the plaintiff can prove no set of facts which would entitle him to relief. See *Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986)*. Legal conclusions in the guise of factual allegations, however, are not presumed to be true. *Papasan v. Allain, 478 U.S. 265, 286, 92 L. Ed. 2d 209, 106 S. Ct. 2932 (1986); Kirchgessner v. Wilentz, 884 F. Supp. 901, 908 (D.N.J. 1995)*. The Court may also consider any undisputedly authentic documents submitted with the motion if plaintiff's claims are based upon the documents. *In re Donald J. Trump Casino Secs. Litig., 7 F.3d 357, 368 n.9 (3d Cir. 1993)*, (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)*, cert. denied, *510 U.S. 1178, 114 S. Ct. 1219, 127 L. Ed. 2d 565 (1994)*. [*5]

In the instant case, defendants move for dismissal on the ground that plaintiff has failed to allege an actionable claim. Under defendants' reading, defendants' statements concerning Roberts were immaterial to reasonable investors, and at most, constituted nothing more than "puffing" or statements expressing confidence and optimism about the company. Defendants also contend that they were under no duty to put a negative "spin" on each datum of information disclosed.

Plaintiff interprets the "misleading" statements and "deceitful" conduct of defendants as misrepresentations and/or omissions of material information in violation of Rule 10b-5, 17 C.F.R. § 140.10b-5. n1 Plaintiff claims that the Complaint adequately pleads with particularity under *Fed. R. Civ. P. 9(b)* and that defendants acted with scienter. Plaintiff also asserts that she has standing to assert claims for defendants' conduct that occurred throughout the class period.

1996 U.S. Dist. LEXIS 22506, *; Fed. Sec. L. Rep. (CCH) P99,268

Page 5

n1 Plaintiff also asserts a claim under § 20(a) of the Securities Exchange Act, *15 U.S.C. § 78t(a)*, alleging that defendants were "controlling persons." Section 20(a) provides:

[HN2] Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

*15 U.S.C. § 78t(a) (1988)*.

[*6]

[HN3] In order to determine whether plaintiff's allegations can survive the motion to dismiss, the Court must analyze the statements of defendants and assess whether, in the context in which they were made, they were "material," that is, that they would have "assumed actual significance in the deliberations of the reasonable shareholder." *TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449, 48 L. Ed. 2d 757, 96 S. Ct. 2126 (1976)* (a "fact is material if there is a substantial likelihood that a reasonable [investor] would consider it important in deciding" whether to purchase shares); *Basic Inc. v. Levinson, 485 U.S. 224, 232, 99 L. Ed. 2d 194, 108 S. Ct. 978 (1988)* (expressly adopting materiality standard of *TSC*, for the § 10(b) and Rule 10b-5 context). Although materiality generally is a mixed question of law and fact to be decided by the trier of fact, *TSC, 426 U.S. at 450*, "only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are unactionable as [*7] a matter of law." *Shapiro v. UJB Financial Corp., 964 F.2d 272, 279-80 (3d Cir.), cert. denied, 506 U.S. 934, 121 L. Ed. 2d 278, 113 S. Ct. 365 (1992)*. As one court recently explained:

We must view a statement not in a vacuum but in the context of the entire document. The duty to read a statement in its setting has given rise to the "bespeaks caution" doctrine, which provides, when an offering document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the "total mix" of information the document provided investors. In other words, [HN4] cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law. The bespeaks caution doctrine merely restates the unremarkable proposition that while a misleading statement will not always lose its deceptive edge simply by joinder with others that are true, the true statements may discredit the other one so obviously that the risk of real deception drops to nil. As an analytical matter, the doctrine is equally [*8] applicable to allegations of both affirmative misrepresentations and omissions concerning soft information.

*In re Numerex Corp. Secs. Litig., 913 F. Supp. 391, 397 (E.D.Pa. 1996)* (citations and quotation marks omitted).

The parties dispute whether the following statements set forth in the Complaint and in Plaintiff's brief constitute misrepresentation or omission of information in violation of the applicable securities laws and regulations. Plaintiff distinguishes between alleged misrepresentation of "hard" and "soft" information. n2 In addition, plaintiff alleges defendants failed to disclose material information, which omission is actionable. Finally, plaintiff seeks to hold defendants accountable for statements made by Wall Street analysts because such analysts relied "in substantial part" upon allegedly misleading statements made by defendants. (Compl. PP 57-58, 62-63, 66-69, 78-79.)

n2 [HN5] "The term soft information refers to statements of subjective analysis or extrapolation, such as opinions, motives, and intentions, or forward looking statements, such as projections, estimates, and forecasts." *Craftmatic Secs. Litig. v. Kraftsow, 890 F.2d 628, 642 (3d Cir. 1989)*. The Court of Appeals for the Third Circuit has held that "opinions, predictions and other forward-looking statements are not *per se* unactionable under the securities laws. Rather, such statements of "soft information" may be action-

Case 1:05-cv-00294-GMS    Document 74-2    Filed 06/23/2006    Page 15 of 19

1996 U.S. Dist. LEXIS 22506, *; Fed. Sec. L. Rep. (CCH) P99,268

Page 6

able misrepresentations if the speaker does not genuinely and reasonably believe them." *In re Donald J. Trump, 7 F.3d at 369-71* (citing *Herskowitz v. Nutri/System, Inc., 857 F.2d 179, 184 (3d Cir. 1988),* cert. denied, *489 U.S. 1054, 103 L. Ed. 2d 584, 109 S. Ct. 1315 (1989).*

In the instant case, the Court is unable to discern clearly the actual differences between the statements. However, for purposes of this motion, the Court shall accept the division as provided.

[*9]

Under the category of "hard" information, plaintiff alleges the following:

. Vukovich stated in a letter to the shareholders in the company's 1993 Annual Report that Roberts' operations involved "fewer risks and lower capital investment than most research-driven pharmaceutical companies." (Compl. PP 47, 108(a); Pl.'s Br. at 16.)

. Vukovich also stated in the same letter that Roberts was "bereft of cost centers -- and overhead -- of larger companies" and operated as a "lean and cost-efficient company." (Compl. PP 47, 108(a); Pl.'s Br. at 16.)

. Vukovich stated on November 7, 1994, in announcing its third quarter 1994 results that Roberts' "marketing enhancement programs are continuing to have a beneficial impact on operating results in the U.S., Canada, and United Kingdom. While our revenue base continues to broaden and expand and operating results are improving, we are increasing our focus and commitment in our R&D pipeline products." (Compl. PP 60, 108(e); Pl.'s Br. at 16.)

Under the category of "soft" information, plaintiff includes:

. On March 15, 1995, in announcing its 1994 results, Vukovich stated that "our continuing increases in revenues, profits, [*10] and shareholders' equity is [sic] further evidence that our strategic planning is firmly based, sharply focused and well-executed." (Compl. PP 73, 108(i); Pl.'s Br. at 17.)

. The 1994 annual report that stated that Roberts "anticipate[d] another year of growth in 1995" and that "our new product development program coupled with our strategic acquisition and licensing activities will continue to produce benefits for our customers and shareholders." (Compl. PP 92, 108(1); Pl.'s Br. at 17.)

. Vukovich stated on May 6, 1994, in announcing results for the first quarter of 1994, that Roberts was experiencing "ongoing progress" and "a well-balanced growth along many areas of our business focus." (Compl. P 108(c); Pl.'s Br. at 17-18.)

Plaintiff alleges that defendants made the following material omissions:

. Sales of Roberts' products were declining sharply and would not offset expense increases in marketing. Roberts' sales trends and profitability were "overstated" and "failed to take into account increasing costs." (Compl. P 109(a) and (j).)

. Roberts was in a contract dispute with its largest customer and shareholder, Yamanouchi; similar revenues from contract research [*11] with other firms did not exist. (Id. P 109(b) and (e).)

. Roberts lost a key sales executive and Roberts' new product lines would require "huge new costs in hiring and training sales personnel." In addition, Roberts' marketing of existing products would have to be suspended while the sales force was retrained. Contrary to prior announcements, Roberts could not monitor its sales force and was thus unable to accurately project revenues and costs. (Id. P 109(c), (d) and (g).)

. Roberts had to write off $ 2.4 million for the fourth quarter of 1994, reducing revenues and earnings for the quarter and the year. (Id. P 109(f).)

. Roberts did not have full rights to market the product Noroxin. Furthermore, delays and competition would not likely make this product profitable for Roberts. Roberts' acquisition of two other products were also not likely to "produce significant profits." (Id. P 109(h) and (i).)

Finally, plaintiff alleges that statements made by certain Wall Street analysts but "attributable to information provided by Roberts" include:

. Robert W. Baird's statement on November 8, 1994, that "infrastructure and overhead costs will not increase [*12] proportionately" to expand marketing operations; and his similar statement of March 16, 1995, that "infrastructure and overhead costs will not likely increase proportionately" so that "operating leverage is playing a key role in earnings expansion and should continue to do so in the coming years." (Id. P 108(g).)

. Jennifer LaVin's statement on January 26, 1995, that Roberts' "profitable base business" now provides sufficient cash flow to expand its sales force, to continue to fund further acquisitions and to support the company's

broadening product pipeline"; and her "retention of Merrill Lynch's favorable ratings reported on March 16, 1995, following direct conversations with company management." (Id. P 108(g).)

The securities laws upon which plaintiff bases her allegations are well-known. [HN6] Section 10(b) of the Securities and Exchange Act of 1934 provides:

> It shall be unlawful for any person . . . to use or employ, in connection with the purchase or sale of any security . . ., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for [*13] the protection of investors.

15 U.S.C. § 78j(b) (1981).

[HN7] SEC Rule 10b-5, promulgated under authority of Section 10(b), makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact" such that prospective purchasers or sellers of securities are misled. *17 C.F.R. Section 240.10b-5 (1992)*. Thus, to state a claim under § 10(b) and Rule 10b-5, a private plaintiff must plead (1) a false representation of (2) a material (3) fact; (4) the defendant's knowledge of its falsity and his intention that the plaintiff rely on it; (5) the plaintiff's reasonable reliance on defendant's false representation; and (6) the plaintiff's resultant economic loss. See, e.g., *Shapiro, 964 F.2d at 280; Lewis v. Chrysler Corp., 949 F.2d 644, 649 (3d Cir. 1991); In re Donald J. Trump, 7 F.3d at 369-71* (plaintiff must plead under § 10 and Rule 10b-5 that defendants made material omissions and/or misrepresentations, that plaintiff reasonably relied on them, and that defendants acted with knowledge or recklessness).

[HN8] An omitted fact is deemed to be material if there is a "substantial likelihood [*14] that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC, 426 U.S. at 449*. A defendant is not required to disclose all known information, but only information that is "necessary to make other statements not misleading." *In re Donald J. Trump, 7 F.3d at 366*. A court must evaluate whether the statement or omission was misleading at the time it was made. Id. "Fraud by hindsight," in which a plaintiff tries to impose liability on management for unrealized economic predictions, is not actionable. *Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1040 (6th Cir. 1991)*. Thus, the key issue in evaluating omissions is whether there is a substantial likelihood that the disclosure would have been viewed by the reasonable investor as having "significantly altered the 'total mix' of information" available to that investor. *Craftmatic, 890 F.2d at 639* (citation omitted).

Plaintiff relies primarily upon *Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083, 115 L. Ed. 2d 929, 111 S. Ct. 2749 (1991)*. There the Supreme Court [*15] considered the materiality of directors' statements that a merger price was "fair" and that it offered "high" value to minority shareholders, and found that the statements were material because the plaintiffs provided evidence showing that the assumptions offered by the directors to support those conclusions were arguably false. *Id. at 1094-95*. Because these assumptions were false, the plaintiff would be permitted to proceed to discovery to demonstrate that the statement was knowingly false or misleadingly incomplete. *Id. at 1095*. Plaintiff argues that dismissal in the instant case is clearly unwarranted in light of the numerous allegedly false and misleading statements issued by defendants, which statements were relied upon by plaintiff and the proposed class to their detriment. Plaintiff also relies upon the alleged omissions that purportedly defrauded the market to the detriment of plaintiff.

Defendants rely upon the Court of Appeals for the Fourth Circuit which, in addressing a claim based upon statements such as "the DOE Services Group is poised to carry the growth and success of 1991 well into the future," stated:

> [HN9] The whole discussion [*16] of growth is plainly by way of loose prediction, and both the range of rates cited, as well as the time for their achievement, are anything but definite. No reasonable investor would rely on these statements, and they are certainly not specific enough to perpetrate a fraud on the market. Analysts and arbitrageurs rely on facts in determining the value of a security, not mere expressions of optimism from company spokesmen. The market gives the most credence to those predictions supported by specific statements of fact, and those statements are, of course, actionable if false or misleading.

*Raab v. General Physics Corp., 4 F.3d 286, 290 (4th Cir. 1993)* (quoting *Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1446 (5th Cir. 1993))*.

Defendants first argue that plaintiff lacks standing to assert claims for misleading statements and/or omissions

Case 1:05-cv-00294-GMS    Document 74-2    Filed 06/23/2006    Page 17 of 19

1996 U.S. Dist. LEXIS 22506, *; Fed. Sec. L. Rep. (CCH) P99,268                                 Page 8

that occurred after the purchase of her stock on March 16, 1995. This is so, defendants argues, because plaintiff cannot establish detrimental reliance, actual or otherwise, on any conduct of defendants following the purchase of her shares. However, under the "common scheme to defraud" theory, both pre-purchase [*17] and post-purchase statements may be examined on a motion to dismiss. As Judge Simandle explained in *Renz v. Shreiber*, 832 F. Supp. 766, 774 (D.N.J. 1993):

> We believe that the statements alleged here fall within this common scheme to defraud theory, and that [plaintiffs] can legitimately invoke this theory to confer standing upon them, the named putative class representatives, to assert claims based in part upon the statements made after [their purchase]. . . . [The] post-purchase statements (and omissions) could be viewed as evidence of a series of alleged interrelated misrepresentations made over the entire Class Period. In essence, the defendants are accused of deliberately downplaying, if not completely misleading the public about, the seriousness of certain problems affecting [the company], and of issuing knowingly over-optimistic statements about the prospects for the second half of [the] fiscal year. . . . We believe plaintiffs here should be permitted to proffer the post-purchase statements and omissions as circumstantial evidence of fraudulent intent with respect to the pre-purchase statements, even though plaintiffs here cannot assert reliance, [*18] actual or otherwise, on the post-purchase statements. This court therefore will consider all of the challenged statements in reviewing defendants' motion to dismiss.

*Id. at 774* (citations and footnotes omitted).

Similarly, the Court shall examine the pre-purchase and post-purchase statements alleged by plaintiff in evaluating the motion to dismiss.

As noted supra, [HN10] whether a particular statement or omission is "material" is a "mixed question of law and fact, and the delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts is peculiarly for the trier of fact." *Shapiro*, 964 F.2d at 280 n.11. Thus, dismissal of purported misrepresentations and omissions is generally reserved for circumstances where the "alleged misrepresentations are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." Id.

Here, the Court is reluctant to thus characterize many of the statements and omissions alleged to be misleading at this stage of the case. Many of the statements, for example, require additional facts and a wider context to determine whether they are [*19] actionable as a matter of law. n3 Other statements, such as Vukovich's May 6, 1994, statement that Roberts was experiencing "ongoing progress" and "well-balanced growth" initially appear to have been justified in light of the company's success in 1994. However, plaintiff's claim appears to assert that these statements, and others made later that year, were misleading in light of the material omissions that, for example, Roberts' sales were declining, it had lost a key sales executive, and its sales force required new training. Still other statements ("We anticipate under year of growth in 1995" and "our new product development program . . . will continue to produce benefits . . . for our shareholders") involve optimistic predictions which may be actionable if the speaker "does not genuinely and reasonably believe them," *In re Donald Trump*, 7 F.3d at 368 (citations omitted), an assessment which the Court is unable to make at this juncture. Under these particular facts as viewed in the light most favorable to plaintiff, the Court cannot find that the defendant's alleged statements and/or omissions are not actionable as a matter of law. Although several of the statements [*20] might constitute mere "puffing," others are not "so obviously unimportant" to a reasonable investor that they might not violate the securities laws.

---

n3 Included would be the comparative statements such the statements of Vukovich that Roberts enjoyed "fewer risks and lower capital investment than most research-driven pharmaceutical companies," (Compl. PP 47, 108(a)); and that Roberts was "bereft of cost centers -- and overhead -- of larger companies." (Compl. PP 47, 108(a).) This statement compares Roberts to other unnamed companies doing similar business; in the absence of any facts to assess whether these statements were known to be either false when made or made recklessly, the Court is presently unable to determine that these statements are not actionable as a matter of law. Of course, the Court may determine, following discovery, that these statements were nothing more than accurate descriptions of Roberts that were made on the basis of historical facts as they were understood at the time.

Case 1:05-cv-00294-GMS    Document 74-2    Filed 06/23/2006    Page 18 of 19

1996 U.S. Dist. LEXIS 22506, *; Fed. Sec. L. Rep. (CCH) P99,268

Page 9

Defendants' [*21] argument that the omissions were not material because Roberts was under no duty to disclose the omitted facts is persuasive but not compelling. [HN11] When a company makes a public statement, it "triggers a duty to include such information as would prevent the statements from misleading a reasonable investor." *Jaroslawicz v. Engelhard Corp., 704 F. Supp. 1296, 1299 (D.N.J. 1989)*. Defendant argues that many if not all of the alleged omissions are taken out of context, which, when viewed in a broader light, reveal the statements to be nothing more than accurate descriptive statements of company operations, or explanations for why the company enjoyed record growth. Defendants' argument highlights the difficulty of the task that the Court faces in evaluating whether, under the 12(b)(6) standard, a jury might find a particular omission misleading to a reasonable investor and whether a defendant was under a duty to disclose certain facts at certain times, and, if so, to determine the contours of that duty. Here, the Court finds that plaintiff has set forth sufficient facts that, when viewed in the light most favorable to plaintiff, would establish a violation of securities laws. [*22] In order words, the Court is unable to declare as matter of law that, had defendants disclosed the omitted information, it would not have significantly altered the total mix of information available to Roberts' investors. n4 *Craftmatic, 890 F.2d at 639* (citation omitted).

   n4 Because the Court shall deny the motion to dismiss the § 10(b) claims, it shall likewise deny the motion to dismiss the § 20 (a) claims. See *Shapiro, 964 F.2d at 279* (viability of the § 20(a) claims generally depends upon the resolution of the § 10(b) claims).

The Court is not persuaded that the Complaint suffers from a lack of particularity under *Fed. R. Civ. P. 9(b)*. As the Shapiro court summarized:

   [HN12] Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff [*23] acted upon it to his damage. Despite these stringent requirements, the courts should be sensitive to the fact that application of the Rule prior to discovery may permit sophisticated defrauders to successfully conceal the details of their fraud. They should also respect the "general simplicity and flexibility of the Federal Rules of Civil Procedure. . . . In Craftmatic, however, we recognized that: Particularly in cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. Thus, courts have relaxed the [particularity] rule when factual information is peculiarly within the defendant's knowledge or control. Nevertheless, we also held that at the very least plaintiffs must allege that the necessary information lies within defendants' control.

*Shapiro, 964 F.2d at 284* (citations and quotation marks omitted).

In the instant case, plaintiff has identified the alleged misstatements, the dates and the speakers involved, and has alleged that Vukovich, the insider, sold approximately 10% of his Roberts shares while in the possession of adverse information not disclosed to investors, which information [*24] when disclosed allegedly resulted in the shares' loss in value. Plaintiff alleged that Vukovich sold 235,000 shares for proceeds of over six million dollars just two days after filing the 1994 Annual report announcing that 1995 would be "another year of growth," an announcement that appears to have been modified 9 days later when it appeared that 1995 would not be another year of growth for Roberts. (Compl. PP 108-10.) The Court finds that the Complaint is sufficient to withstand dismissal under Rule 9(b) at this stage of the case.

As to whether the statements by Wall Street analysts are actionable under Rule 9(b), however, the Court finds in favor of defendants and shall grant the motion to dismiss based on these allegations.

Defendants rely, in part, upon *Raab, 4 F.3d at 286*, and *In Re Medimmune, Inc. Secs. Litig., 873 F. Supp. 953, 965 (D. Md. 1995)*, which both held that statements of market analysts are not actionable "unless the plaintiffs can plead with particularity who among defendants supplied the information, how it was supplied, and how defendants could have controlled the content of the statement." *In re Medimmune, 873 F. Supp. at 965* [*25] (citing Raab). Defendants also rely upon *In Re Time Warner, Inc. Secs. Litig., 9 F.3d 259, 264-65 (2d Cir. 1993), cert. denied, 114 S. Ct. 1397 (1994)*. There, the Court affirmed the dismissal under *Fed. R. Civ. P. 9(b)* of several claims that were premised upon various unattributed statements made to analysts. The Court reviewed the case law and found that "none of the[] cases sanctions the pleading of fraud through completely unattributed statements, even when the plaintiff alleges on in-

Case 1:05-cv-00294-GMS    Document 74-2    Filed 06/23/2006    Page 19 of 19

1996 U.S. Dist. LEXIS 22506, *; Fed. Sec. L. Rep. (CCH) P99,268

Page 10

formation and belief that the unattributed statement was made by an agent of the defendant." Id.

In the instant case, the statements alleged in the Complaint are attributed only to "information provided by Roberts." Moreover, plaintiff does not allege that the statements were false. Instead, plaintiff appears to argue that the statements were provided by some or all of the defendants, were somehow misleading to investors, and that defendants failed to correct the misleading character of the statements in light of what defendants allegedly knew at the time. Unlike the statements made by defendants in their annual reports, however, the Wall Street statements [*26] fail to satisfy the standard for particularity. In addition, the statements themselves do not appear to be much more than general assessments of Roberts' operations ("overhead costs will not likely increase proportionately"; Roberts has a "profitable base business" and "broadening product pipeline") that appear to have been either true when made or sufficiently qualified as to render them of limited value to a reasonable investor. See *Time Warner, 9 F.3d at 265* ("Investors tend to discount information in newspaper articles and analysts reports when the author is unable to cite specific attributable information from the company."). Accordingly, the Court shall grant the motion to dismiss that portion of the claim based upon the alleged fraud conducted by defendants through their unattributed statements made to Wall Street analysts.

IT IS on this 14th day of June, 1996, **ORDERED** that the motion of defendants for dismissal under *Fed. R. Civ. P. 9(b)* of that portion of the Complaint, P 108(g), based upon statements allegedly made to Wall Street analysts be and is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the motion of defendants for dismissal [*27] under *Fed. R. Civ. P. 12(b)(6)* be and is hereby **DENIED**.

MARY LITTLE PARELL

United States District Judge