## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------  x
                                                       :
IN RE MOLSON COORS BREWING              :     Civil Action No. 1:05-cv-00294-KAJ
COMPANY SECURITIES LITIGATION    :     (Consolidated)
                                                       :
------------------------------------------------------  x
```

## DEFENDANTS' REPLY BRIEF IN SUPPORT
## OF THEIR MOTION TO DISMISS THE COMPLAINT

OF COUNSEL:

Michael R. Young
Antonio Yanez, Jr.
Darren G. Gibson
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

Charles F. Richards, Jr. (#701)
Jeffrey L. Moyer (#3309)
Elizabeth C. Tucker (#4468)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19899
(302) 651-7700
Fax: (302) 651-7701
Email:  richards@rlf.com
        moyer@rlf.com
        tucker@rlf.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

SUMMARY OF ARGUMENT ............................................................................. 1

ARGUMENT ........................................................................................................ 2

I. The Complaint Identifies No Misrepresentation of Material Fact ................. 3

    A. The Synergies ...................................................................................... 3

    B. Coors' Pre-Merger Performance ......................................................... 7

    C. The Brazil Business ............................................................................. 12

    D. Executive Departures ........................................................................... 15

II. The Complaint Does Not Adequately Allege Scienter .................................. 16

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*In re Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) ........................................13, 16

*In re Aetna Inc. Sec. Litig.*, 34 F. Supp.2d 935 (E.D. Pa. 1999)........................................16

*In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS,
    2006 WL 1715168 (W.D. Mo. June 19, 2006) ...........................................................17

*In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp.2d 574 (D.N.J. 2005).......................19

*Blum v. Semicon. Pack. Materials Co.*, No. C.A. 97-7078, 1998 WL 254035
    (E.D. Pa. May 5, 1998) ........................................................................................................9

*Brashears v. 1717 Capital Mgmt., Nationwide Mut. Ins. Co.*,
    No. Civ.A. 02-1534-KAJ, 2004 WL 1196896 (D. Del. May 21, 2004) ..................2

*In re Bristol Meyers Squibb Sec. Litig.*, No. Civ. A.00-1990(SRC), 2005 WL 2007004
    (D.N.J. Aug. 17, 2005)..........................................................................................................6

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ..................3, 4, 9

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) .........10, 15

*In re Cell Pathways Inc., Sec. Litig.*, No. 99-725, 2000 WL 805221
    (E.D. Pa. June 20, 2000) .....................................................................................................6

*In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp.2d 314 (S.D.N.Y. 2001) .................17

*Cowit v. Roberts Pharm. Corp.*, No. 95-1506, 1996 WL 460098
    (D.N.J. June 18, 1996) .........................................................................................................6

*In re Digital Island Sec. Litig.*, 223 F. Supp.2d 546 (D. Del. 2002)..................................19

*In re Digital Island Sec. Litig.*, 357 F.3d 322 (3d Cir. 2004) .............................................19

*In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993).................................13

*Elliott Assocs., L.P. v. Hayes*, 141 F. Supp.2d 344 (S.D.N.Y. 2000) .................................18

*EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865 (3d Cir. 2000) .................................7

*In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp.2d 407 (D.N.J. 2005) .....................10, 17

*Fla. St. Bd. Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645 (8th Cir. 2001) .................16

*Freed v. Universal Health Servs., Inc.*, No. Civ. A. 04-1233, 2005 WL 1030195
    (E.D. Pa. May 3, 2005) ............................................................................10

*GSC Partners CDO Fund v. Washington*, 368 F.3d 228
    (3d Cir. 2004) ..............................................................5, 7, 16, 17, 18, 19

*In re Honeywell Int'l, Inc. Sec. Litig.*, 182 F. Supp. 2d 414 (D.N.J. 2002) ........................6

*In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) .................18

*In re Interpool, Inc. Sec. Litig.*, No. Civ. 04-32(SRC), 2005 WL 2000237
    (D.N.J. Aug. 17, 2005) ............................................................................20

*In re Invision Techs., Inc., Sec. Litig.*, No. C04-03181, 2006 WL 538752
    (N. D. Cal. Feb. 22, 2006) .......................................................................17

*Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178 (3d Cir. 2001) .............................11

*Key Equity Investors, Inc. v. Sel-Lab Mktg., Inc.*, No. Civ. A. 04CV1675DMC,
    2005 WL 3263865 (D.N.J. Nov. 30, 2005) ...............................................7

*In re Lattice Semicon. Corp. Sec. Litig.*, No. C04-03181, 2006 WL 538756
    (D. Or. Jan. 3, 2006) ...............................................................................17

*In re Loewen Group Inc. Sec. Litig.*, No. Civ. A. 98-6740, 2003 WL 22436233
    (E.D. Pa. July 16, 2003) .......................................................................13, 18

*Marsden v. Select Med. Corp.*, No. Civ. A.04-4020, 2006 WL 8891445
    (E.D. Pa. Apr. 6, 2006) .........................................................................6, 19

*In re Merck Co. Sec., Deriv. & ERISA Litig.*, No. 05-1151,
    2006 U.S.Dist. LEXIS 2345 (D.N.J. Jan. 20, 2006) ....................................4

*In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261 (3d Cir. 2005)...............................13

*In re Milestone Scientific Sec. Litig.*, 103 F. Supp. 2d 425 (D.N.J. 2000)........................6

*In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314 (3d Cir. 2002) .....................................4

*In re NeoPharm, Inc. Sec. Litig.*, No. 02 C 2976, 2003 WL 262369
    (N.D. Ill. Feb. 7, 2003) .........................................................................12

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000).....................................................16

*Phillips v. LCI Int'l, Inc.*, 190 F.3d 609 (4th Cir. 1999) ..................................................19

*In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493 (W.D. Pa. 2002) ......................................20

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002). .............. ....2, 15

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)....................................................................18

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) ...........................................17

*Sheehan v. Little Switzerland*, 136 F. Supp. 2d 301 (D. Del. 2001) ....................................7

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527
    (S.D. Ohio 2000).............................................................................................................19

*In re Stonepath Group, Inc. Sec. Litig.*, 397 F. Supp. 2d 575 (E.D. Pa. 2005).................17

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) ...........................19

*Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42 (D. Del. 2002) ............ .....12

*In re Viropharma, Inc. Sec. Litig.*, No. Civ. A. 02-1627, 2003 WL 1824914
    (E.D. Pa. Apr. 7, 2003) .................................................................................. ....... .....17

*Weiner v. Quaker Oats Co.*, 129 F.3d 310 (3d Cir. 1997).....................................................13

*Zucker v. Quasha*, 891 F. Supp. 1010 (D.N.J. 1995).............................................................9

**STATUTES**

15 U.S.C. § 78u-5(c) (2000) ....................................................................................... ...........5

Defendants Molson Coors Brewing Company ("Molson Coors"), Peter H. Coors, W. Leo Kiely III, Charles M. Herington, Franklin W. Hobbs, Randall Oliphant, Pamela Patsley, Wayne Sanders, Albert C. Yates, Timothy V. Wolf, Peter Swinburn, David G. Barnes, Peter M.R. Kendall, and Daniel J. O'Neill respectfully submit this reply brief in further support of their motion to dismiss plaintiffs' complaint.

## SUMMARY OF ARGUMENT

Probably the most striking aspect of plaintiffs' opposition brief is what it does *not* say. That is, notwithstanding our challenge that it seek to do so, plaintiffs' opposition brief does not specify even a single false statement before the Molson and Coors merger. Thus, the opposition brief –

- Clings to the suggestion that somehow the Molson Coors statements about synergies were improper, but cannot refute the truth of the statements as demonstrated by the undisputed fact that the synergies are being achieved.

- Suggests that Coors' pre-merger financial performance was somehow exaggerated, but cannot refute that every single reported number and statement was correct.

- Suggests that the "overall tone" of the statements about Brazil was "positive," but can find nothing actually false or misleading except for the desperate suggestion that the unrelenting negative news about Brazil was somehow "overshadowed."

- Criticizes the pre-merger failure to accrue for Coors' executive departures, but cannot bring itself to argue that the prospect of the departures was "probable" (as required by GAAP) insofar as plaintiffs

themselves assert that it was a very real possibility that merger might

not go through.

Of course, lurking in the background is the shadowy confidential witness, who plaintiffs'

opposition makes crystal clear did not in fact attend any of the meetings plaintiffs now

purport to describe.

According to the complaint, this is supposed to be a securities fraud case.

But plaintiffs cannot identify a single statement that was false. The complaint should be

dismissed.

## ARGUMENT

The first order of business is to clear up plaintiffs' incorrect presentation

of the law. It is not correct, as plaintiffs assert, that the court must "accept as true all of

the factual allegations contained in the complaint."[1] The law in the Third Circuit, as

elsewhere pursuant to the Private Securities Litigation Reform Act, is that in a securities

case courts are "not required to credit bald assertions" in a complaint:

> [C]ourts are not required to credit bald assertions or legal
> conclusions improperly alleged in the complaint. Similarly, legal
> conclusions draped in the guise of factual allegations may not
> benefit from the presumption of truthfulness.

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (citations

omitted).[2] Accordingly, pursuant to the Reform Act courts are to consider the entire text

---

[1] Plaintiffs' Answering Brief in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint ("Opp. Br.") at 18 n.6.

[2] *See also Brashears v. 1717 Capital Mgmt., Nationwide Mut. Ins. Co.*, No. Civ. A. 02-1534-KAJ, 2004 WL 1196896, at *4 (D. Del. May 21, 2004) (Jordan, J.) ("Thus, 'unless plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and the [PSLRA], they may not benefit from inferences flowing from vague or unspecific allegations – inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis '") (discussing scienter pleading

of SEC filings and other documents "integral to or explicitly relied upon" by the complaint in determining whether falsity is sufficiently alleged. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). As the Third Circuit has explained:

> What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Id.* at 1426.

With that correction as a departure point, this brief tracks the organization of our opening brief. The first point is that plaintiffs can find no false statement. The second point is that the complaint fails to allege scienter.

## I. THE COMPLAINT IDENTIFIES NO MISREPRESENTATION OF MATERIAL FACT.

The Court will recall that statements regarding four aspects of Molson Coors are at issue: (1) synergies, (2) Coors' pre-merger performance, (3) the Brazil business, and (4) severance payments to departing executives. Each is discussed in turn.

## A. The Synergies

On the synergies point, two things are undisputed. The first is the substantive statement at issue: "the Merger would create specific cost saving synergies" of "$50 million in the first year, $90 million in the second year, and $175 million in the third year."[3] The second is that the statement is true. It is undisputed by plaintiffs that, as Molson Coors has publicly stated, by the end of the third quarter of 2005 it had

---

requirements) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 224 (3d Cir. 2002))

[3]  Compl. ¶ 5; *see also* Opp. Br. at 8-9, 18-19

"achieved approximately $37 million" in synergy savings and was "well on [its] way to exceeding [its] $50 million" goal for 2005.[4]  The company has more recently announced that the 2005 synergies actually *exceeded* expectations with a total of $59 million realized, and that the three-year goal of $175 million in synergies was likely to be surpassed as well.[5]

Rather than taking on the truth of these statements – which plaintiffs do not even attempt aside from a single throw-away line for which they offer no support[6] – plaintiffs resort to their misinterpretation of the law.  Thus, faced with the factual truth of the synergies, plaintiffs present as their central argument simply the proposition that "[t]he Complaint alleges otherwise, and this factual dispute cannot be resolved here."[7] But that is wrong.  The Reform Act requires a complaint to specify the reasons challenged statements are misleading, and the law in this Circuit is that the Court may consider SEC filings and other documents relied upon by the complaint in making that determination.[8]  Here, plaintiffs cannot even argue that the synergies statements were false to begin with, let alone that we had some basis for believing them to be untrue.

---

[4]    April 6, 2006 Affidavit of Michael R. Young ("Young Aff.") Exh. 22 at 6 (11/1/05 Molson Coors Earnings Conf. Call) (cited in Compl. ¶ 148).

[5]    Young Aff. Exh. 24 at 30 (3/10/06 Molson Coors Form 10-K).

[6]    Opp. Br. at 19 ("Plaintiffs contest whether these synergies were achieved").

[7]    Opp. Br. at 20-21 (citations omitted).

[8]    *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002).

The sole case cited by plaintiffs in opposition on this point – *In re Merck Co. Securities, Derivative & ERISA Litig.*, No. 05-1151, 2006 U.S. Dist. LEXIS 2345 (D.N.J. Jan. 20, 2006) – in fact is not to the contrary.  That case explicitly recognized that charts prepared by defendants based on SEC filings could "be substantively considered in support of their Motion to Dismiss," though the court chose not to consider those documents for their truth because they were being offered for a more limited purpose.  *Id.* at *14-19.

Plaintiffs adopt as a fall-back position that the synergy-related statements were misleading "even if the synergies were achieved at some later point" because defendants promised "immediate tangible benefits."[9] But here, again, the statement is demonstrably true. In context, the "immediate tangible benefits" explicitly refers to the synergies in the three years following the merger:

> We expect the merger transaction to deliver immediate tangible benefits to shareholders through substantial synergies, including estimated annual cost savings resulting from the merger of approximately U.S.$50 million in the first year after the merger transaction, an incremental U.S.$40 million in the second year after the merger transaction (for a total savings of U.S.$90 million in the second year), and an incremental U.S.$85 million in the third year after the merger transaction (for a total savings of U.S.$175 million in the third year).[10]

Nor, as set forth in our opening brief, would the synergy-related statements support a securities claim even if not borne out as they are protected by the Reform Act's safe harbor for forward-looking statements accompanied by "meaningful cautionary language." *See* 15 U.S.C. § 78u-5(c)(1)(A) (2000); *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 242-43 (3d Cir. 2004). Plaintiffs do not dispute that the statements as to synergies were forward-looking and accompanied by cautionary language.[11] Rather, plaintiffs maintain that the cautionary language was not "meaningful" because defendants failed to identify "specific factors" which "made the

---

[9]   Opp. Br. at 19, 21

[10]   Young Aff. Exh. 3 at 5 (Joint Proxy Statement).

[11]   Opp. Br. at 21-23.

synergies unlikely to occur."[12]  But the "specific factors" that could have caused the

synergies not to materialize were disclosed in the proxy statement, including:

> integrating successfully each company's operations,
> technologies, products and services; reducing the costs
> associated with each company's operations; coordinating
> sales, distribution and marketing efforts to effectively
> promote the products of the combined company; …
> assimilating the personnel of both companies and
> persuading employees that the business cultures of both
> companies are compatible; and building employee morale
> and motivation.[13]

---

[12]  Opp. Br. at 23.  Plaintiffs separately argue that the synergy-related statements are actionable because they were made with "actual knowledge" of their falsity or without a "reasonable basis."  But plaintiffs have not, and cannot, allege facts showing these statements were made with actual knowledge of falsity or anything even close because they are demonstrably true.  *See In re Milestone Scientific Sec. Litig.*, 103 F. Supp. 2d 425, 464 (D.N.J. 2000) ("The Amended Complaint, however, does not identify, much more allege, any facts to support the conclusory allegation that the Defendants had actual knowledge of the falsity of the forward-looking statements pleaded in the Amended Complaint.")  Plaintiffs' cases, in contrast, each involved facts indicating that forward-looking statements were made without basis (which, again, cannot possibly be alleged here) or did not involve forward-looking statements at all.  *See Marsden v. Select Med. Corp.*, No. Civ. A.04-4020, 2006 WL 891445, at *9 (E.D. Pa. Apr. 6, 2006) ("the challenge to these statements is one of omission of present facts"); *In re Honeywell Int'l, Inc. Sec. Litig.*, 182 F. Supp. 2d 414, 418-23 (D.N.J. 2002) (defendants "seriously misrepresented" expected cost savings of merger while having knowledge of "artificially inflated [] revenues," an "upsurge in past due accounts receivable," lost customers, product shortages, and "improper[] reversing millions of dollars of merger reserves"); *In re Bristol Myers Squibb Sec. Litig.*, No. Civ. A.00-1990(SRC), 2005 WL 2007004, at *55-*59 (D.N.J. Aug. 17, 2005) ("Defendants had actual knowledge" that positive statements describing new drug as "blockbuster" were false based on internal memos and "FDA's view of the risks and benefits."); *In re Cell Pathways Inc., Sec. Litig.*, No. 99-725, 2000 WL 805221, at *11 (E.D. Pa. June 20, 2000) (finding safe harbor inapplicable where "plaintiffs have alleged that [defendant] made material omissions of existing facts"); *Cowit v. Roberts Pharm. Corp.*, No. 95-1506, 1996 WL 460098, at *4 (D.N.J. June 18, 1996) (optimistic projections despite declining sales, loss of "key sales executive" and "largest customer," revenue write-offs, and loss of marketing rights for key product).

[13]  Young Aff. Exh. 3 at 47 (Joint Proxy Statement).

Additional factors identified by plaintiffs – severance payments to departing executives,

increasing distribution costs, and expenses relating to the Brazilian operations – were

discussed elsewhere in the proxy.[14]

**B.    Coors' Pre-Merger Performance**

           Plaintiffs' arguments in support of their allegations as to Coors' pre-

merger performance are no better.

           Before getting to the specifics – Texas and Aspen Edge – we want to

address head-on plaintiffs' intimation that we somehow misrepresented performance

while knowing things were going badly. By our count, plaintiffs point to six supposed

pre-merger statements: (1) Coors was "experiencing above-consensus growth and

profitability" (second quarter 2004); (2) Coors was "outperforming the market" (second

quarter 2004); (3) Coors had experienced "an increase of 4.6% over net sales reported in

2Q:03" (second quarter 2004); (4) Coors experienced "improving trends in several key

areas of business" (second quarter 2004); (5) negative business factors were "largely

temporary" (second and fourth quarters 2004) or "merely temporary" (third quarter

---

[14] *See* Young Aff. Exh. 3 at 48, 51-53, 98-99, 201-02, 247-48 (Joint Proxy Statement); August 9, 2006 Affidavit of Michael R. Young ("Young Reply Aff.") Exh. 1 at 252 (Joint Proxy Statement). Plaintiffs are incorrect to the extent they assert that the sufficiency of cautionary language "is a fact question that cannot be resolved at this stage of the litigation." (Opp. Br. at 23.) Courts regularly decide such questions on motions to dismiss. *See, e.g., GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 242 (3d Cir. 2004); *Key Equity Investors, Inc. v. Sel-Lab Mktg., Inc.*, No. Civ. A. 04CV1675DMC, 2005 WL 3263865, at *7 (D.N.J. Nov. 30, 2005). And plaintiffs' cases say nothing different; in fact, they have nothing whatsoever to do with this case. Those cases involved statements that either were not accompanied by cautionary language or were not forward-looking to begin with. *See EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 877 (3d Cir. 2000) (forward-looking statements "were not accompanied by any cautionary language"); *Sheehan v. Little Switzerland*, 136 F. Supp. 2d 301, 311-12 (D. Del. 2001) (addressing whether a subsequent "proxy statement contain[ing] cautionary language" had "any curative effect" on prior omissions of then-existing facts as to proposed merger).

2004); and (6) Coors would "be lapping significant volume declines" (fourth quarter 2004).[15]

As to the first two, we never said them. The supposed quotations about "experiencing above-consensus growth and profitability" and "outperforming the market" are something plaintiffs have apparently made up. And as to the remaining statements, each was true as a matter of historical fact. The numbers were the numbers. Thus it was true, at the time it was said, that Coors had experienced "a 4.6 percent increase [in net sales] from second quarter 2003."[16] It was true, at the time it was said, that Coors had experienced "improving trends in several key areas of business."[17] It was true, at the time it was said, that Coors had experienced negative business factors that were "largely" temporary.[18] And it was true, at the time it was said, that Coors would "be lapping significant volume declines,"[19] as it reported increased sales in the fourth quarter of 2004

---

[15]  Opp. Br. at 4-7, 25-26; *see also* Compl. ¶¶ 65, 70, 73(b).

[16]  Young Aff. Exh. 10 at 6 (7/22/04 Coors Form 8-K, Press Release).

[17]  Young Aff. Exh. 10 at 6 (7/22/04 Coors Form 8-K, Press Release) ("Improved pricing in our major markets, solid margin and profit growth in the U.K., continued strong performance of our Coors Light business in Canada, and favorable foreign exchange rates drove higher operating income in the quarter "); *see also* Young Aff. Exh. 8 at 28 (8/6/04 Coors Form 10-Q).

[18]  As a threshold matter, the supposed statements do not even appear in two of the three documents to which plaintiffs point, either in words or in substance. *See* Young Aff. Exh. 25 (10/28/04 Coors Press Release); Young Reply Aff. Exh. 2 (02/09/05 Molson Coors Press Release); *see also* Young Reply Aff. Exh. 5 (10/28/04 Coors Earnings Conf. Call); Young Aff. Exh. 28 (02/09/05 Molson Coors Earnings Conf. Call). As to the third, it is true that the SEC filing disclosed that certain negative factors were "largely temporary." Young Aff. Exh. 10 at 6 (7/22/04 Coors Form 8-K, Press Release); Young Aff. Exh. 8 at 28 (8/6/04 Coors Form 10-Q) But this did not seek to describe all negative factors affecting Coors' business. Rather, in context, it referred to isolated, one-time events that were, in fact, temporary – "a higher tax rate this year versus a one-time reduction in our effective tax rate last year, as well as higher diluted shares outstanding this year." Young Aff. Exh. 10 at 6 (7/22/04 Coors Form 8-K, Press Release)

[19]  Young Aff. Exh. 25 at 1 (10/28/04 Coors Press Release).

"partially driven by the comparison to lower sales in the fourth quarter of 2003."[20] To be sure, it is also true that we disappointed everyone (including ourselves) when we experienced *subsequent* results, for the first quarter 2005, which when reported allegedly caused the stock price drop upon which the complaint focuses at such length. But that was performance in a time period *subsequent* to the statements upon which the complaint relies. Nor did the securities laws place upon us a duty to provide interim updates as to how the quarter was going before the final numbers were available at quarter end.[21]

Further, in trying to make out an argument for fraud, plaintiffs ignore the very words of the statements themselves. For example, plaintiffs criticize the numerically correct statement about "improving trends in several key areas of business" insofar as the statement supposedly omitted a disclosure that "overall business was weak."[22] But such an argument ignores the very sentence in which the statement appears. In fact, the very same sentence does speak to "overall results" – and says that they were "negatively impacted."[23] The fact is that these statements go out of their way to report,

---

[20] Young Reply Aff. Exh. 2 at 1 (02/09/05 Molson Coors Press Release).

[21] *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410,1432 (3d Cir. 1997) ("[A]n accurate report of past successes does not contain an implicit representation that the trend is going to continue, and hence does not, in and of itself, obligate the company to update the public as to the state of the quarter in progress."); *see also Blum v. Semicon. Pack. Materials Co*, No. C.A. 97-7078,1998 WL 254035, at *2-3 (E.D. Pa. May 5, 1998) ("[T]he failure to mention in the press release that fourth quarter earnings would be below expectations, while the fourth quarter was still in progress, cannot state a cause of action for stock fraud"); *Zucker v. Quasha*, 891 F. Supp. 1010, 1015 (D.N.J. 1995), *aff'd*, 82 F.3d 408 (3d Cir. 1996) ("Courts have been reluctant, however, to impose liability based upon a corporate official's failure to disclose financial data for a fiscal quarter in progress.").

[22] Opp. Br. at 6.

[23] Compl. ¶ 166; Young Aff. Exh. 10 at 6 (7/22/04 Coors Form 8-K, Press Release).

segment by segment, exactly what was going on as to various parts of the Coors' business. Plaintiffs cannot find a false statement because there is none.[24]

   In those rare moments when the complaint actually tries to get specific, it can point only to two things: Texas and Aspen Edge. Texas, plaintiffs argue, was having a terrible year with the sales down at least 5%.[25] Aspen Edge, plaintiffs argue, was incorrectly described as "gaining volume" when in fact sales were supposedly so horrific

---

[24] The allegations as to Coors' pre-merger performance (and the others in the complaint) also are not bolstered by the confidential witness allegations, which are utterly insufficient under the Reform Act. Plaintiffs basically concede that their so-called confidential witness did not himself participate in the "meetings of senior management" he purports to describe. (Opp. Br. at 24.) The best plaintiffs muster is that the confidential witness received information "directly from a member of Coors' senior management who attended the meetings." (Opp. Br. at 24.) Beyond that, plaintiffs arguments as to what "CW" actually heard is almost a study in vagueness. Perhaps, from "CW's" perspective, that is understandable: Plaintiffs concede that the complaint fails to supply any detail as to when the so-called confidential witness worked at Coors or why senior management discussions were shared with him. Rather, they ask the Court to "infer . . . that the [confidential witness] worked at Coors during the relevant time" and that he was privy to the information he purports to describe (albeit second-hand) because he held a "position that entailed frequent discussions with one or more members of senior management." (Opp. Br. at 24.) And plaintiffs do not even attempt to point to any additional Reform Act-required detail in the complaint – such as how the discussion at these meetings casts doubt on Coors' pre-merger performance, who attended which meetings, when the meetings took place, or where they were held – because it is not there.

As set forth in our opening brief, confidential witness allegations like these fail as a predicate for securities claims. *See Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147-48, 155-56 (3d Cir. 2004); *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 426-27 (D.N.J. 2005); *Freed v. Universal Health Servs., Inc.*, No. Civ. A. 04-1233, 2005 WL 1030195, at *6-8 (E.D. Pa. May 3, 2005). And while plaintiffs seek to distinguish these cases as involving informants "not as high-ranking, or as well described" (Opp. at 30), precisely the details required by the Third Circuit's decision in *California Public Employees' Retirement System v. Chubb Corp.* (and the other cases) are similarly lacking here. Plaintiffs allege no specifics – as opposed to suggesting inferences – indicating when the so-called confidential informant "was employed by" Coors, the dates he "acquired the information" he purports to possess, how "he had access to that information," or other particulars indicating that the confidential informant "would possess the information alleged" – which is what the Reform Act requires. *Chubb*, 394 F.3d at 155.

[25] Opp. Br. at 26.

that Coors was "forced … to start buying back the product and reimbursing wholesalers for any of the product that went out of date."[26]

Neither shows securities fraud. As to Texas, Coors had been candidly reporting problems for years. Thus, in the third quarter of 2003, Coors reported that Texas, "and specifically north Texas, continue[d] to be a challenge."[27] Later, Coors reported that volume declines in the second quarter of 2004 were tied to trends "in select markets – particularly in Pennsylvania and Texas – where we face unique local issues."[28] And Coors emphasized at around the same time that the company "face[d] a really challenging competitive situation in Texas for going on a year" and that "the pictures in [Pennsylvania] and Texas [were] not overnight fixes."[29]

As to Aspen Edge, plaintiffs concede that reports of volume gains were "technically true."[30] Nonetheless, plaintiffs assert that securities fraud took place insofar as Coors agreed to buy back out-of-date Aspen Edge product. But a decision to take back out-of-date product is not at all remarkable. And even if it were, plaintiffs do not even try to make an argument that this business decision was meaningful to Aspen Edge sales, much less Coors' overall business. In fact, in the last reported quarter before the merger, Aspen Edge was candidly described as accounting for only "slightly more than one percentage point" of total sales.[31]

---

[26]  Opp. Br. at 25.

[27]  Young Reply Aff. Exh. 3 at 6 (10/23/03 Coors Earnings Conf. Call).

[28]  Young Aff. Exh. 8 at 28 (8/6/04 Coors Form 10-Q); *see also* Compl. ¶ 65.

[29]  Young Reply Aff. Exh. 4 at 6, 7 (7/22/04 Coors Earnings Conf. Call).

[30]  Opp. Br. at 25.

[31]  Young Reply Aff. Exh. 5 at 2 (10/28/04 Coors Earnings Conf. Call). Plaintiffs' cases are not to the contrary. Each involved outright misstatements or critical omissions as to matters of real significance – which are not alleged here. *See Johnston v. HBO Film Mgmt., Inc.*, 265

**C.    The Brazil Business**

As to the Brazilian business, the theme is the same – plaintiffs cannot point to a single false statement. Indeed, here plaintiffs concede that the Molson Coors statements "unequivocally communicated" problems but plaintiffs then argue that these unequivocal communications were somehow "wholly overshadowed" by the "overall tone" of the documents and the specter of "positive things to come."[32]

Frankly, we have a hard time figuring out what plaintiffs are talking about. Set forth below is an example of the pre-merger description of Brazil results with the negative information in bold and the positive information in italics. We leave it to the Court to independently assess which "overshadows" the other:

> Brazil net sales revenue **decreased** 13 percent in local currency as a result of the 9.6 percent **drop** in volume, slightly **adverse** mix and **tax increases** not passed on to the consumer, offset by marginal price increases.
> ***
> Given recent **declines** in volume and market share losses in Brazil, Molson revised its long-term forecast. The resulting **decline in the value** of Kaiser brought a **210 million impairment charge**, **reducing** goodwill by 130 million, and other intangible assets by 80 million.
> ***
> … I think in the Brazilian situation, there's – from my perspective and I kind of speak from the **cautiousness** around the table, *we are all seeing great inroads being made* and we are all reluctant to talk about them. Because **we don't have the credibility to talk about Brazil getting better**, getting better and we want to – we are all cheering that Brazil gets better and we all know the programs that

---

F.3d 178, 192-93 (3d Cir. 2001) ("defendants misrepresented that Michael Douglas would participate in the production of two to four films," when he was not even under contract); *Tracinda Corp. v. DaimlerChrysler AG*, 197 F. Supp. 2d 42, 57-58 (D. Del. 2002) (defendants admitted that transaction publicized as "merger of equals" resulting in "joint ownership" was never intended to be such); *In re NeoPharm, Inc. Sec. Litig.*, No. 02 C 2976, 2003 WL 262369, at *13 (N.D. Ill. Feb. 7, 2003) (series of positive reports as to "critical" clinical trials followed by cryptic, partial disclosure of problems).

[32]  Opp. Br. at 28.

have been put in place but we just want to wait and see it
and then talk about it.[33]

Yet another of plaintiffs' supposed examples of good news "overshadowing" bad is the

following:[34]

> Starting with volume, total Molson beer volume [in the
> fourth quarter of 2004] **decreased** 7.5 percent from a year
> earlier, with ... Brazil volume **down** 11.1 percent in the
> quarter. ... And Brazil revenue **down** 8.3 percent.
>
>            ***
>
> Brazil business **losses** were smaller than the past two
> quarters, primarily driven by season sales increases, cost
> structure improvements, and the time of expenses. Still,
> volume and share **continued to decline** year-over-year in
> the latest quarter and our local Kaiser team has focused
> heavily on improving the performance of the Brazilian
> business.
>
>            ***
>
> Our first order of business is to focus on our core markets,
> investing for growth on our leading brands. Our near term
> goals are ... *to continue the near and long-term potential
> for our Kaiser business in Brazil.*[35]

It merits emphasis that these quotations are not from the proxy statement; they are, rather,

from analyst calls and the statements were actually oral statements to analysts.

---

[33] Young Aff. Exh. 27 at 4-5, 17 (10/28/04 Molson Earnings Conf. Call) (emphasis added).

[34] Opp. Br. at 10.

[35] Young Aff. Exh. 28 at 5-6 (2/9/05 Molson Coors Earnings Conf. Call) (emphasis added). Yet
another defect in plaintiffs' Brazil-based allegations to the extent premised on supposedly
"positive things to come" is that the challenged statements constitute inactionable puffery
which cannot form the basis of a securities claim. *See In re Advanta Corp. Sec. Litig.*, 180
F.3d 525, 538 (3d Cir. 1999); *In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 273 n.11 (3d
Cir. 2005); *In re Loewen Group Inc. Sec. Litig.*, No. Civ. A. 98-6740, 2003 WL 22436233, at
*14-*16 (E.D. Pa. July 16, 2003). Plaintiffs seek to distinguish *Advanta* as involving
statements "more vague" than the supposedly "affirmative assurances" at issue here. (*See*
Opp. Br. at 28.) But the kinds of general statements of optimism here – "improved trends,"
"great inroads" – are directly comparable to those in *Advanta*. 180 F.3d at 537-38 ("best in
the industry" credit quality, "excellent growth and returns"). Nor do the cases plaintiffs cite in
opposition – *Weiner v. Quaker Oats Co.*, 129 F.3d 310 (3d Cir. 1997), and *In re Donald J.
Trump Casino Sec. Litig.*, 7 F.3d 357 (3d Cir. 1993) – lead to any different conclusion. The
statements of opinion in those cases were found to be inactionable too. *See Weiner*, 129 F.3d
at 320-21; *Donald J. Trump*, 7 F.3d at 368-73.

Apparently the analysts did not view good news about Brazil as "overshadowing" the bad. One analyst took away from the discussion that "Molson's Brazilian business would be difficult to fix."[36]

As to the remaining allegations regarding Brazil, they are just as weak. With respect to the impairment allegations, plaintiffs do not dispute that Molson recorded a C$210 million impairment charge some four months before the merger and reported that additional charges were possible. Still, plaintiffs assert that the charge should have been larger, principally because Molson Coors' "subsequent $500 million impairment charge" demonstrates as much.[37] But there was no "subsequent $500 million impairment charge." The $500 million figure instead deals with likely and unlikely tax liabilities in Brazil (ranging from the probable to the remote) and has nothing to do with the impaired value of any assets.[38] In any event, subsequent adjustments would not themselves suggest a problem with the earlier impairment charge, as GAAP expressly contemplates that changed circumstances may require a write-down of assets properly recorded in an earlier period: That is the whole point of GAAP-mandated annual impairment analysis.[39] Plaintiffs further assert that changes to the "business climate" in Brazil and "an unanticipated level of competition" should have prompted an additional charge.[40] But they nowhere explain why that is so or exactly what kind of charge their supposed GAAP analysis would support. And plaintiffs persist in asserting that defendants characterized

---

[36] Young Aff. Exh. 5 at 15 (01/14/05 Bernstein Analyst Report).

[37] Opp. Br. at 29.

[38] Compl. ¶ 119; *see also* Young Reply Aff. Exh. 6 at 27 (05/11/05 Molson Coors Form 10-Q).

[39] *See* Young Aff. Exh. 29 ¶¶ 26, 28 (Financial Accounting Standards Board, Statement of Financial Accounting Standards No. 142, June 1, 2004)

[40] Opp. Br. at 30

the C$210 million impairment charge as "a function of current period costs," even though

that's not what we said. The actual statement was that losses were attributed to "current

period costs" and the impairment charge was attributed to "declining volumes and loss of

market share" which caused Molson to "revise[] its forecast of net cash flow from

operations in Brazil."[41]

        With respect to the tax accrual, finally, plaintiffs do not even try to point

to anything in the complaint indicating why an accrual beyond $176 million was

necessary. All plaintiffs say is that "GAAP required [defendants] to do more."[42] The

Reform Act requires more than such bald assertions.[43] *See Cal. Pub. Employees' Ret.*

*Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004); *In re Rockefeller Ctr. Props., Inc.*

*Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

## D.    Executive Departures

        As to executive departures, plaintiffs concede that the possibility of

change-of-control payments to departing Coors employees was disclosed in the proxy

statement.[44] Plaintiffs seek to have the Court disregard the departure information with

the characterization it was contained in a "brief note."[45] We confess ignorance of any

---

[41]  Young Aff. Exh. 14 at 7 (11/24/04 Coors Form S-3).

[42]  Opp. Br. at 30.

[43]  Plaintiffs' separate assertion that the proxy statement failed to disclose the "amount of such contingencies or a range of such loss" is wrong. (Opp. Br. at 31.) The proxy statement not only disclosed the possibility of the Brazilian tax liabilities, but also that Molson had accrued $152 million for those liabilities going back to March 31, 2004 (later increased to $176 million by Molson Coors). *See* Young Reply Aff. Exh. 1 at 221 (Joint Proxy Statement); Young Aff. Exh. 3 at Annex 53, R-18 (Joint Proxy Statement) (reporting in Canadian dollars); *see also* Young Reply Aff. Exh. 6 at 27 (05/11/05 Molson Coors Form 10-Q). Nor do plaintiffs point to specifics in the complaint supplying reasons indicating that subsequently disclosed potential liabilities should have been disclosed earlier.

[44]  Opp. Br. at 32.

[45]  Opp. Br. at 32.

aspect of the securities laws which excuses shareholders from reading brief notes as well as longer ones; and, whatever its length, the proxy's description was certainly complete. It identified key Coors executives entitled to change-of-control payments, the various components of the payments, their potential amounts, and that change-of-control payments to other employees might be required.[46] As to plaintiffs' argument that we knew before the merger that key executives would be leaving, that argument is refuted by the complaint itself. While conceding that, under GAAP, accrual of the change-of-control payments was required only if they were "probable," the complaint itself affirmatively makes the point that almost until the end it looked like "the merger would fail."[47]

## II.    THE COMPLAINT DOES NOT ADEQUATELY ALLEGE SCIENTER.

Plaintiffs concede that on a 10(b) claim they must either plead facts showing "strong circumstantial evidence of conscious misbehavior or recklessness" or that "defendants had both motive and opportunity to commit fraud."[48] As to the former, plaintiffs pretty much concede that the complaint doesn't do it.[49] As to the latter,

---

[46]    Young Aff. Exh. 3 at 98-99 (Joint Proxy Statement).

[47]    Compl. ¶ 59.

[48]    *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004); *see also* Opp. Br. at 34.

[49]    Plaintiffs do half-heartedly argue that the Court may infer that the individual defendants "knew of facts that contradicted their public statements" because they were "high-ranking officers and executives." (Opp. Br. at 24.) But even one of plaintiffs' own cases rejects these types of allegations. *See In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 954 (E.D. Pa. 1999) (rejecting scienter allegations "based solely on [defendants'] status as an outside director, member of the Finance Committee, and consultant to [the Company]"); *see also In re Advanta, Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) ("Generalized imputations of knowledge do not suffice, regardless of defendants' positions within the company.") And plaintiffs' remaining cases involved additional factual allegations supporting scienter not present here. *See Fla. St. Bd. Admin v. Green Tree Fin. Corp.*, 270 F.3d 645, 665 (8th Cir. 2001) (allegations that defendants knew of "great" deviations between "actual experience" and accounting assumptions, supported by citations to internal data); *Novak v. Kasaks*, 216 F.3d

- 16 -

plaintiffs assert three supposed motives for fraud: (1) to quiet "strong public opposition

to the Merger," (2) to maintain control by the Molson and Coors families, and (3) to

secure "substantial proceeds" and board positions.[50]

        The first supposed motive – to quash opposition to the merger – fails as a

matter of law. Numerous courts have held that an allegation of price inflation to

complete a merger does not suffice to show scienter.[51] Plaintiffs' cases do not suggest

otherwise.[52] As an aside, this supposed motive itself is contradicted by defendants'

---

300, 304 (2d Cir. 2000) ("specific allegations" citing to "[i]nternal Company documents" in direct conflict with public statements); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) ("[C]omplaint contains detailed allegations as to what defendants knew on a daily, weekly and monthly basis … while at the same time making public statements that painted a different picture."); *In re Viropharma, Inc. Sec. Litig.*, No. Civ. A. 02-1627, 2003 WL 1824914, at \*9 (E.D. Pa. Apr. 7, 2003) (specified non-public clinical trial reports contained "data that contradicted [defendants'] statements"); *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 326 (S.D.N.Y. 2001) (facts indicating relationships closer than "the typical arms-length business transaction" with corporate client that facilitated fraud)

[50] Opp. Br. at 35-36. Plaintiffs further assert the execution of Sarbanes-Oxley certifications by some defendants somehow constitutes evidence of scienter in itself. (*See* Opp. Br. at 38-39.) That's not the law. *See In re Invision Tech., Inc., Sec. Litig.*, No. C04-03181, 2006 WL 538752, at \*7 n.3 (N.D. Cal. Feb. 22, 2006) (rejecting scienter allegations "based upon [defendants] Sarbanes-Oxley certifications"). And it is difficult to see how the mere execution of a legally-mandated certification by itself establishes fraudulent intent. Nor do the cases plaintiffs cite say anything different as they involved additional facts supporting recklessness not alleged here. *See In re Lattice Semicon. Corp. Sec. Litig.*, No. CV04-1255-AA, 2006 WL 538756, at \*18 (D. Or. Jan. 3, 2006) (specific allegations that defendants took steps which amounted to "apparent ratification" of fraud); *In re Am. Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS, 2006 WL 1715168, at \*5 (W.D. Mo. June 19, 2006) (Sarbanes-Oxley certifications only "a factor" when combined with allegations of specific accounting irregularities)

[51] *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (allegations that defendant "would not have been able" to complete acquisition without inflated securities "insufficient" to plead scienter); *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 428 (D.N.J. 2005) ("Scienter cannot be established by merely alleging that Defendants inflated Exxon's earnings in connection with the acquisition of Mobil by a stock-for-stock transaction."); *In re Stonepath Group, Inc. Sec. Litig.*, 397 F. Supp. 2d 575, 592 (E.D. Pa. 2005) ("[P]laintiffs have not established scienter" by alleging "that defendants artificially maintained high stock prices to complete an acquisition.").

[52] Neither of the cases cited by plaintiffs holds that the completion of a stock-for-stock merger is sufficient motive by itself to plead scienter in a case like this one. (*See* Opp. Br. at 37.) The court in *Rothman* found that allegations of motive based on a stock-based acquisition

supposed parallel fraud to inflate Molson stock: It makes no sense that defendants would be trying to facilitate the merger by inflating the price of Coors over Molson while simultaneously propping up the price of Molson stock.

As to the second supposed motive – the desire to retain control – plaintiffs do not refute that, as a matter of law, "desires to retain control of the corporation as officers and directors do not create a 'strong inference' of fraudulent intent."[53] Further, even were the law otherwise, there is no motive attributable to an attempt to retain control here. It is undisputed that the Molson and Coors families through their stock ownership had control locked up.[54]

The third supposed motive – the procurement of "substantial proceeds" and the retention post-merger of board positions – likewise fails. Courts have repeatedly rejected such motives as too generic to sustain a securities fraud claim. As one court has observed, "In every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a

---

supported scienter only "in combination with the other allegations" showing recklessness, which are utterly lacking here. *See Rothman v. Gregor*, 220 F.3d 81, 85-86, 93-94 (2d Cir. 2000) (plaintiffs identified meaningful inconsistencies between accounting treatment of future software royalties and specific sales figures cited in the complaint, as well as violations of internal accounting policies). And to the extent *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003), case can be read to suggest that completing stock-for-stock acquisitions is itself a sufficient motive, it is in direct conflict with the law of this Circuit. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (allegations that defendant "would not have been able" to complete acquisition without inflated securities "insufficient" to plead scienter).

[53] *In re Loewen Group, Inc. Sec. Litig.*, No. Civ. A. 98-6740, 2003 WL 22436233, at *18 (E.D. Pa. July 16, 2003); *see also Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344, 359 (S.D.N.Y. 2000), *aff'd*, 26 Fed. Appx. 83 (2d Cir. 2002) ("Executives and controlling shareholders typically seek to maximize their equity control over a company. Such a generalized motive is not sufficiently concrete for purposes of inferring scienter.") (quotations omitted).

[54] *See* Compl. ¶ 20; Young Aff. Exh. 3 at 59, 141, 342 (Joint Proxy Statement).

successful transaction. Such allegations alone cannot give rise to a 'strong inference' of fraudulent intent."[55]

All of this, moreover, is without even getting to the fact that the complaint fails to specify each defendant's role in the supposed fraud, which is clearly required under the Reform Act.[56] Nor do plaintiffs observations about the "group pleading doctrine" lead to any different conclusion.[57] Plaintiffs' own cases make the point that "group pleading" is no substitute for allegations linking each defendant to wrongdoing. As stated by one:

> Recklessness is pled against the Outside Directors as a group, based on their position, without any attempt to link specific individuals to specific instances of reckless conduct. We have held that such "catch-all" or "blanket" assertions do not satisfy the particularity requirements of Rule 9(b) and the PSLRA, and must be disregarded.

*In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 281-82 (3d Cir. 2006).[58] Even at the most basic level of pleading securities fraud – specifying what each individual did wrong – this complaint fails.

---

[55] *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004); *see also In re Digital Island Sec. Litig.*, 357 F.3d 322, 329-31 (3d Cir. 2004) (CEO's "lucrative employment contract" with the acquirer "cannot, in and of itself, establish a strong inference of motive "); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 622 (4th Cir. 1999) ("[A]ssertions that a corporate officer or director committed fraud in order to retain an executive position, or retain such a position with the merged company, simply do not, in themselves, adequately plead motive.").

[56] *See In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004); *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 584 (D.N.J. 2005).

[57] Opp. Br. at 33.

[58] The other cases cited by plaintiffs explicitly premise findings that scienter is sufficiently pled on allegations linking each defendant to wrongdoing. *See Marsden v. Select Med. Corp.*, No. Civ. 04-4020, 2006 WL 891445, at *18 (E.D. Pa. Apr. 6, 2006) ("This Court, however, need not resolve the question of whether the group pleading doctrine can survive in light of the PSLRA's heightened pleading standards because Plaintiffs have made sufficiently specific claims as to each individual's involvement in the alleged wrongdoing."); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527, 541-42 (S.D. Ohio 2000) ("numerous

## CONCLUSION

For the reasons set forth above, defendants respectfully request that the

consolidated amended complaint be dismissed with prejudice.[59]


OF COUNSEL:

Michael R. Young
Antonio Yanez, Jr.
Darren G. Gibson
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019-6099
(212) 728-8000

*Charles F. Richards, Jr./
by Elizabeth C. Tucker (#4468)*
Charles F. Richards, Jr. (#701)
Jeffrey L. Moyer (#3309)
Elizabeth C. Tucker (#4468)
Richards, Layton & Finger, P.A.
One Rodney Square
Wilmington, DE 19899
(302) 651-7700
Fax: (302) 651-7701
Email:   richards@rlf.com
            moyer@rlf.com
            tucker@rlf.com

*Attorneys for Defendants*

Dated:  August 10, 2006

3331525 10
RLF1-3046819-1

---

specific allegations that a number of officers and directors sold a large amount of [company] stock," among other things); *In re Rent-Way Sec. Litig.*, 209 F. Supp. 2d 493, 519 (W.D. Pa 2002) ("detailed fraudulent scheme" in which defendants personally directed or made artificial journal entries and ignored warnings of accounting improprieties from internal accountants and outside auditors).

[59]   Courts in this Circuit dismiss complaints with prejudice under Reform Act where, as here, "plaintiffs request leave to amend while opposing a motion to dismiss but offer no representation as to new information or amendments that would cure the defects in the pleading." *In re Interpool, Inc. Sec. Litig.*, No. Civ. 04-321(SRC), 2005 WL 2000237, at *18 (D.N.J. Aug. 17, 2005).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2006, copies of Defendants'

Reply Brief in Support of their Motion to Dismiss the Complaint were served upon the following

counsel of record in the manner indicated:

### BY CM/ECF

Seth D. Rigrodsky
Brian D. Long
Milberg Weiss Bershad & Schulman LLP
919 North Market Street, Suite 980
Wilmington, Delaware 19801

Elizabeth C. Tucker (#4468)
Tucker@rlf.com

RLF1-3000625-1